Kevin D. Smith (State Bar No. 113633)
ksmith@wshblaw.com
Steven R. Disharoon (State Bar No. 273170)
sdisharoon@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
1401 Willow Pass Road, Suite 700
Concord, California 94520-7982
Phone: 925 222 3400 ♦ Fax: 925 356 8250

Attorneys for Defendants UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC (*erroneously sued as RASIER CA, LLC*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, an individual using a pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., RASIER, LLC; RASIER CA, LLC,<br><br>Defendants. | Case No. 3:19-cv-03310-JSC<br><br>**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>Date:      9/12/19<br>Time:      9:00 a.m.<br>Crtrm.:   F (15th Floor)<br><br>The Hon. Jacqueline S. Corley<br><br>Trial Date:          None Set |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................1

    I.     INTRODUCTION ................................................................1

    II.    STATEMENT OF THE ISSUES TO BE DECIDED .................2

    III.   STATEMENT OF THE CASE .................................................2

        A.    Allegations Dispositive to This Motion ........................2

        B.    Allegations of the Attack and Theories of Liability Against Uber ...............3

    IV.   LEGAL STANDARD ............................................................5

    V.    ARGUMENT .........................................................................5

        A.    There Can Be No Vicarious Liability Here Since (1) There Is No Ostensible Agency, and (2) Regardless, the Assailant's Conduct Was Well-Outside the Course and Scope of Any Agency ............5

            1.    The law does not support liability for this type of third-party crime ................5

            2.    The ostensible agency theory is foreclosed by judicial admissions ................7

                a)    Elements of ostensible agency ........................7

                b)    Plaintiff admits Uber did not authorize the Assailant ............7

                      i.    The Complaint establishes the lack of authority ................7

                        ii.   The Assailant's misuse of decals is not authorization ................8

                        iii.  Allegations regarding background checks and safety representations say nothing about ostensible agency ................9

                c)    Justifiable reliance is not adequately pled ................9

                  d)    The remaining allegations cannot support ostensible agency ................10

              i.      Claims for changes in technology say nothing about agency, and are barred by California law ........................................................................10

              ii.     Uber's alleged "disruption" of social norms is not actionable ...........................................................12

       3.      Even if the Assailant was an agent, Uber cannot be liable................13

   B.     The Negligence Claim – Based on a Common Carrier Theory – Fails........14

   C.     Additionally, the Motion Should Be Granted as to Punitive Damages........16

   D.     Leave to Amend Should Be Denied ..............................................................18

VI.     CONCLUSION ..........................................................................................................18

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

4

## **CASES**

5  *Alatraqchi v. Uber Techs., Inc.*,
    No. C-13-03156 JSC, 2013 WL 4517756 (N.D. Cal. Aug. 22, 2013) ................................. 8

6

*Alma W. v. Oakland Unified School Dist.*,
7      123 Cal.App.3d 133 (1981) ........................................................................................... 13

8  *Anaya v. Machines de Triage et Broyage*,
    No. 18-CV-01731-DMR, 2019 WL 359421 (N.D. Cal. Jan. 29, 2019) ........................... 16

9

*Ann M. v. Pacific Plaza Shopping Center*,
10      6 Cal.4th 666 (1993) ............................................................................................... 9, 16

11  *Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 5

12

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
13      874 F.3d 1064 (9th Cir. 2017) ...................................................................................... 10

14  *Azoulai v. BMW of N. Am. LLC*,
    No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ........................... 9

15

*Balfour, Guthrie & Co. v. Hansen*,
16      227 Cal.App.2d 173 (1964) ........................................................................................ 9-10

17  *Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................16

18

*City Products Corp. v. Globe Indemnity Co.*,
19      88 Cal.App.3d 31 (1979) ..............................................................................................17

20  *College Hospital Inc. v. Superior Court*,
    8 Cal.4th 704 (1994) ....................................................................................................17

21

*Conrad v. Experian Info. Sols., Inc.*,
22      No. 16-CV-04660 NC, 2017 WL 1739167 (N.D. Cal. May 4, 2017) ............................... 8

23  *Conti v. Watchtower Bible & Tract Soc'y of New York, Inc.*,
    235 Cal.App.4th 1214 (2015) ................................................................................. 6, 12

24

*Cruz v. Home Base*,
25      83 Cal.App.4th 160 (2000) ..........................................................................................17

26  *Delfino v. Agilent Technologies, Inc.*,
    145 Cal.App.4th 790 (2006) .......................................................................................... 7

27

*Delgado v. Trax Bar & Grill*,
28      36 Cal.4th 224 (2005) ................................................................................................... 6

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

*Dodaro v. Standard Pacific Corp.*,
    No. EDCV0901666VAPDTBX) 2012 WL 12948706 (C.D. Cal., Mar. 26, 2012) ........... 10

*Emery v. Visa Internat. Serv. Ass'n*,
    95 Cal.App.4th 952 (2002) ......................................................................................... 8

*Falls v. San Francisco etc. R.R. Co.*,
    97 Cal. 114 (1893) ..................................................................................................... 15

*Farmers Ins. Group v. County of Santa Clara*,
    11 Cal.4th 992 (1995) ................................................................................................ 13

*Feldman v. Allstate Ins. Co.*,
    322 F.3d 660, 666 (9th Cir. 2003) ................................................................................ 2

*Flores v. Autozone West, Inc.*,
    161 Cal.App.4th 373 (2008) ....................................................................................... 10

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) ...................................................................................... 18

*Hildebrant v. City & Cty. of San Francisco*,
    69 Cal.App. 590 (1924) .............................................................................................. 15

*Hutcheson v. Eskaton FountainWood Lodge*,
    17 Cal.App.5th 937 (2017) ........................................................................................... 8

*J.L. v. Children's Inst., Inc.*,
    177 Cal.App.4th 388 (2009) ..................................................................................... 6, 7

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*,
    12 Cal.4th 291 (1995) ........................................................................................... 13, 14

*Lopez v. S. Cal. Rapid Transit Dist.*,
    40 Cal. 3d 780 (1985) .................................................................................................. 6

*Margaret W. v. Kelley R.*,
    139 Cal.App.4th 141 (2006) ...................................................................................... 5-6

*Maria D. v. Westec Residential Sec. Inc.*,
    85 Cal.App.4th 125 (2000) ......................................................................................... 13

*Marshall v. United Airlines*,
    35 Cal.App.3d 84 (1973) ............................................................................................ 15

*Mary M. v. City of Los Angeles*,
    54 Cal.3d 202 (1991) .................................................................................................. 14

*Mazur v. eBay Inc.*,
    No. C 07-3967 MHP, 2008 WL 618988 (N.D. Cal. Mar. 4, 2008) .............................. 9

*MCI Commc'ns Servs., Inc. v. Sec. Paving Co., Inc.*,
    No. 115CV01940LJOJLT, 2016 WL 1436521 (E.D. Cal. Apr. 12, 2016) ....................16

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

*Modisette v. Apple Inc.*,
  30 Cal.App.5th 136 (2018) ................................................................................ 11, 12

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ..................................................................................... 5

*O'Neil v. Crane Co.*,
  53 Cal.4th 335, 464 (2012) ..................................................................................... 11

*Opperwall v. State Farm Fire & Cas. Co.*,
  No. 17-CV-07083-YGR, 2018 WL 1243085 (N.D. Cal. Mar. 9, 2018) ...................... 5, 16

*Rearden LLC v. Crystal Dynamics, Inc.*,
  286 F.Supp.3d 1076 (N.D. Cal. 2018) ......................................................................... 5

*Roman Catholic Bishop v. Superior Court*,
  42 Cal.App.4th 1556 (1996) .................................................................................. 6, 7

*Scannell v. County of Riverside*,
  152 Cal.App.3d 596 (1984) .............................................................................. 17-18

*Schneider v. California Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ................................................................................. 16

*Shaterian v. Wells Fargo Bank, N.A.*,
  829 F.Supp.2d 873 (N.D. Cal. 2011) ......................................................................... 17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir.) .............................................................................................. 5

*Squaw Valley Ski Corp. v. Superior Court*,
  2 Cal.App.4th 1499 (1992) ...................................................................................... 14

*Univ. of S. California v. Superior Court* ("*USC*"),
  30 Cal.App.5th 429 (2018) ...................................................................................... 12

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ..................................................................................... 5

*Z.V. v. County of Riverside*,
  238 Cal.App.4th 889 (2015) ...................................................................................... 7

## **STATUTES**

California Civil Code, Section 3294 ............................................................................ 16, 17

California Civil Code, Section 2100 ................................................................................ 14

California Civil Code. Section 2168 ................................................................................ 14

Federal Rule of Civil Procedure 12 .............................................................................. 1, 5

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1

2

**OTHER**

Sam Kamin & Viva R. Moffat, Trademark Laundering…,
    73 Wash. & Lee L. Rev. 217 (2016) ....................................................................10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

DEFENDANTS' MOTION TO DISMISS

1

## NOTICE OF MOTION

2     TO ALL PARTIES: Please take notice that, on September 12, 2019, at 9:00 a.m. in

3   Courtroom F of the above court, located at 450 Golden Gate Avenue, San Francisco, CA 94102,

4   Defendants UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC (erroneously

5   sued as RASIER CA, LLC) (collectively "Uber") will and hereby do move to dismiss the

6   Complaint filed herein by Plaintiff JANE DOE ("Plaintiff"), including all counts, as well as claims

7   for punitive damages.

8     This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), and is

9   supported by this notice, the memorandum of points and authorities that follows, the operative

10  complaint and other relevant pleadings, matters of which this Court may take judicial notice, and

11  any other appropriate materials, authorities, and argument as may be considered by the Court.

12

## MEMORANDUM OF POINTS AND AUTHORITIES

13  **I.     INTRODUCTION**[1]

14     Plaintiff is the victim of a horrific crime, and the Assailant, who has no connection to

15  Uber, is justifiably facing criminal prosecution.  Uber has deep sympathy for Plaintiff.  But, as the

16  Complaint concedes, Uber did not cause the violation committed against her, nor was it in any

17  way affiliated with the Assailant who did.  See Compl., ¶¶ 51-53.  Accordingly, Uber is not legally

18  responsible for the Assailant's deplorable actions as a matter of law.

19     Plaintiff pursues civil liability against Uber for an unrelated Assailant's crimes based on

20  multiple theories spanning two claims for relief.  In the first, Plaintiff asserts Uber should be

21  vicariously liable for the crimes committed by an unaffiliated Assailant based on a misplaced

22  "ostensible agency" theory.  But California law rejects such liability, even if the Assailant was

23  actually an agent of Uber at the time of the incident.  Plaintiff asserts other allegations relating to

24  Uber's background checks, safety representations, and control over intellectual property (namely,

25  Uber decals).  Even if accepted as true, however, none are clearly tied to any claim for relief, and

26

27     [1] Factual allegations are at times presented as true, given the standard applicable to

28  motions to dismiss (see below), but Uber denies all claims against it.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1  none could support liability in any event.

2          In the second claim for relief, Plaintiff asserts general negligence, based on a common

3  carrier theory of liability, asserting she was an intended passenger of Uber, who in turn she claims

4  was a carrier.  But Uber is not a carrier of any kind.  Nor was Plaintiff a passenger of any driver

5  with any type of relationship to Uber.

6          Therefore, as shown below, the Complaint fails to state a claim upon which relief can be

7  granted, requiring dismissal of all counts.  In addition, claims for punitive damages should be

8  dismissed.

9  **II.     STATEMENT OF THE ISSUES TO BE DECIDED**

10         A.      Whether Plaintiff's Complaint fails to state a claim for relief, or any basis for

11  punitive damages, since it admits Uber had no affiliation with the Assailant at the time of the

12  attack, and California precedent precludes liability for the third-party crime at issue, especially

13  given the lack of notice, agency, or causation, and the fact Plaintiff was not a passenger at the time

14  of the attack.

15         B.      Whether leave to amend should be denied as futile, given the fact there is no set of

16  facts Plaintiff can plead that would allow relief for her damages, in light of her admissions that

17  Uber was not affiliated with the Assailant at the time of the assault, nor in any way responsible for

18  or caused his actions.

19  **III.    STATEMENT OF THE CASE**

20         **A.     <u>Allegations Dispositive to This Motion</u>**

21         Plaintiff filed this Complaint against Uber[2] on June 12, 2019.  Dkt. 1.  As Plaintiff is a

22  citizen of Mexico, and domiciled there, she filed in U.S. District Court on the basis of diversity

23  jurisdiction.  Compl. ¶¶ 2, 6, 48.  All claims for relief are based in California tort law, and are

24  therefore governed by the substantive law of this state.  E.g., *Feldman v. Allstate Ins. Co.*, 322

25  F.3d 660, 666 (9th Cir. 2003).

26  _____

27         [2] As indicated in the Notice, the three "Uber" defendants are each moving to dismiss.
They join in this single motion for the sake of judicial economy, and since they are treated by the

28  Complaint as a single, interchangeable entity.  E.g., Compl. ¶¶ 5, 66, 79.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

While Uber will address all material allegations against it, to demonstrate the lack of legal merit to the claims and that they cannot be salvaged by amendment, a small handful of them are dispositive in Uber's favor. These include the following:

• The Assailant was not authorized to use the Uber App or affiliated in any way with Uber at the time of the incident. Compl., ¶ 53.

• Plaintiff was not using the Uber App at the time of the incident, Compl., ¶ 49, and the safety features in place on the App are for active users of the App, Compl., ¶ 42 (these safety features include the ability to (1) monitor the driver's location, (2) identify the make, model, color, and license plate of the driver's vehicle, and (3) contact police through use of a panic button).

• Uber takes its intellectual property seriously and aggressively protects it, and noticeably absent from the Complaint are any allegations that Uber was aware the Assailant was posing as an authorized driver, or that it had any notice of his illicit use of the Uber decal (which anyone can print off the internet). Compl., ¶¶ 26-28, 37.

• Uber takes rider safety seriously and, as noted, has implemented numerous measures to ensure that those authorized to drive under the App adhere to strict requirements. However, Uber does not have any control over ***non***-authorized individuals or third-party criminal conduct, such as that of the Assailant's, and the Complaint does not allege otherwise. Compl., ¶¶ 29-36.

• The Complaint admits Plaintiff mistakenly believed the Assailant was the driver of the car her fiancé had summoned. Compl., ¶¶ 49-51.

These allegations firmly establish that the Complaint does not, and cannot, support liability against Uber, since it had no connection to the Assailant, and Plaintiff was not a customer or passenger of any Uber-affiliated driver, at the time of the incident. Uber cannot be held responsible for assaults by random members of the public, especially individuals who have no current affiliation or connection with the company.

**B.**     **Allegations of the Attack and Theories of Liability Against Uber**

On August 14, 2018, Plaintiff's fiancé used the Uber App to summon a driver for her, and she ultimately chose to enter a vehicle that did not match the identifying information for the summoned driver. See Compl., ¶¶ 49-50. The driver of that vehicle was the Assailant, who, it can

-3-

DEFENDANTS' MOTION TO DISMISS

1   be inferred, was prowling for women who appeared to be waiting for a ride-hailing rider, given

2   Plaintiff's claims that the Assailant misappropriated Uber's intellectual property (Uber decals) to

3   achieve his nefarious goals.  See Comp., ¶ 50.

4       After Plaintiff entered the car, the Assailant imprisoned, battered, and raped her, before she

5   was able to escape.  Compl., ¶ 46.  Uber joins Plaintiff in lauding the efforts of local law

6   enforcement to capture the Assailant, who is now awaiting trial that could lead to a sentence of life

7   in prison.  See Compl., ¶ 47.

8       As noted above, the Complaint admits that the Assailant was not authorized to use the

9   Uber App at the time of the incident.  Compl., ¶ 53.  This critical fact admitted by the Plaintiff

10  precludes any recovery against Uber, as Plaintiff admits that Uber did not exercise any control or

11  agency over the Assailant.  As the Complaint admits, in an immediate response to a June 8, 2018

12  incident in which the Assailant had allegedly flirted with a rider and drove outside a normal route,

13  Uber "suspend[ed]" the Assailant's access to the Uber Driver App and took away his ability to

14  sign on to it.  Compl., ¶ 53.  The Complaint notes that it "turns out" (i.e., was not known before)

15  the Assailant had a preexisting criminal history, but never alleges Uber had notice of same.  See

16  Compl., ¶ 56.  In any event, as admitted, Uber ended any business relationship with the Assailant

17  more than two months before the attack.  Compl., ¶ 52, 53.

18      Nevertheless, Plaintiff claims that Uber's allegedly lax background checks allowed the

19  Assailant to "masquerade as an Uber X driver."  Compl., ¶ 57.  This is a conclusory allegation that

20  does not withstand scrutiny since background checks are entirely irrelevant to whether someone

21  decides to fraudulently misrepresent themselves as being a contractor, an agent, or otherwise

22  affiliated in some way with another company or individual.

23      The Complaint asserts similar conclusions regarding misappropriation of Uber decals,

24  claiming the Assailant was able to acquire them due to his past authorization to use the Uber App.

25  Compl., ¶ 56.  Inconsistently, however, the Complaint asserts that anyone (not just someone

26  previously authorized to use the App) can download an Uber decal from the internet.  Compl., ¶

27  37.  As will be shown, the fact Uber cannot perfectly police misuse of its intellectual property

28  cannot be used as a basis for holding it civilly liable for the results of such misuse.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

## IV.   LEGAL STANDARD

A complaint is subject to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it fails to state facts that are "plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A mere possibility of liability is insufficient: allegations that are "merely consistent with a defendant's liability… stop[] short of the line between possibility and plausibility of entitlement to relief."  *Rearden LLC v. Crystal Dynamics, Inc.*, 286 F.Supp.3d 1076, 1079 (N.D. Cal. 2018) (citing *Iqbal*, 556 U.S. at 678) (quotations omitted); see also *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (while "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party… [t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit") (citations omitted).

A Rule 12(b)(6) motion also is the proper vehicle to challenge damages that are not sufficiently pled.  *Opperwall v. State Farm Fire & Cas. Co.*, No. 17-CV-07083-YGR, 2018 WL 1243085, at *5 (N.D. Cal. Mar. 9, 2018) (citing cases); see also *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (adjudication of damages claims is "better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion").

## V.   ARGUMENT

### A.   There Can Be No Vicarious Liability Here Since (1) There Is No Ostensible Agency, and (2) Regardless, the Assailant's Conduct Was Well-Outside the Course and Scope of Any Agency

#### 1.   The law does not support liability for this type of third-party crime

To understand why the Complaint advances the flawed ostensible agency theory, it is appropriate to address the California law that forecloses a claim, like this one, that attempts to hold a defendant liable for a third-party's criminal acts.  "Generally, one has 'no duty to act to protect others from the conduct of third parties.'"  *Margaret W. v. Kelley R.*, 139 Cal.App.4th 141, 150

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1   (2006) (citing *Delgado v. Trax Bar & Grill*, 36 Cal.4th 224, 235 (2005)); see also *Roman Catholic*

2   *Bishop v. Superior Court*, 42 Cal.App.4th 1556, 1564 (1996) ("A person is ordinarily not liable for

3   the actions of another and is under no duty to protect another from harm, in the absence of a

4   special relationship of custody or control.") (citations omitted).

5          Often, "the absence of a special relationship is dispositive." *Conti v. Watchtower Bible &*

6   *Tract Soc'y of New York, Inc*., 235 Cal.App.4th 1214, 1227 (2015).  But even when a special

7   relationship is found to exist, that "is only the beginning of the analysis[,]" because, "for there to

8   be a duty to prevent third party criminal conduct, that conduct must be foreseeable."  *Margaret W.*,

9   139 Cal.App.4th at 152 (citations omitted).  Foreseeability in this context "must be measured by

10  what the defendant actually knew," not what it allegedly "should have known."  *Id.* at 156.

11         The only "special relationship" mentioned in the Complaint is the common carrier theory

12  asserted as to the second claim for relief.  However, not only does that theory fail as a matter of

13  law (as discussed in Part V.B, *infra*), but a common carrier's duty as to third-party criminal

14  conduct is limited to passenger-on-passenger assaults that the defendant can foresee "***and has the***

15  ***ability… to prevent***."  *Lopez v. S. Cal. Rapid Transit Dist*., 40 Cal.3d 780, 791 (1985) (emphasis

16  added).  The random, third-party attack alleged here (1) was not committed by a passenger, (2)

17  was not committed against a passenger, (3) was unforeseeable, and (4) was impossible for Uber to

18  prevent given its lack of any type of relationship with, let alone control over, the Assailant.

19         Moreover, even when a special relationship exists, there is no duty on the defendant to

20  investigate or predict what might occur in the absence of notice of the criminal's potential to cause

21  harm.  See *id.* ("We are not aware of any case involving liability for third party criminal conduct

22  that has held that a special relationship creates a duty to investigate or that has charged a defendant

23  with making forecasts based on the information such an investigation might have revealed."); see

24  also *J.L. v. Children's Inst., Inc.*, 177 Cal.App.4th 388, 396 (2009) ("[E]ven when a defendant has

25  formed a special relationship with a plaintiff, courts uniformly hold that the defendant has no duty

26  to protect the plaintiff from unforeseeable third party criminal conduct.") (citing cases).

27  / / /

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1

2

        **2.    The ostensible agency theory is foreclosed by judicial admissions**

            **a)    <u>Elements of ostensible agency</u>**

3    Quite clearly, the Complaint has not, and genuinely cannot, allege that Uber knew of the

4    Assailant's scheme to misappropriate its intellectual property and defraud and violate Plaintiff.[3]

5    Thus, and in an effort to circumvent the above law that establishes Uber cannot be liable for the

6    third-party crime committed by the Assailant, the Complaint advances a claim for vicarious

7    liability based on an "ostensible agency" theory.

8    There are three elements to a claim of ostensible agency: (1) Plaintiff must have held "a

9    reasonable belief in the agent's authority," (2) "such belief must be generated by some act or

10   neglect by the principal sought to be charged," and (3) "the person relying on the agent's apparent

11   authority must not be negligent in holding that belief," i.e., the reliance must be justifiable.  *J.L.*,

12   177 Cal.App.4th at 403-04 (noting the equitable principles underlying the doctrine) (citations

13   omitted).  The Complaint falls far short of pleading all elements of this claim, and includes

14   judicial admissions that indicate amendment would be futile.

15       **b)    <u>Uber did not create any reasonable belief that the Assailant was</u>**

16           **<u>an authorized agent</u>**

17           **i.    The Complaint establishes the lack of authority**

18   It is important to emphasize that "[o]stensible agency cannot be established by the

19   representations or conduct of the purported agent; the statements or acts of the principal must be

20   such as to cause the belief the agency exists." *Id.* at 404.  "The principal must in some manner

21   indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and

22

_____

23       [3] Although Plaintiff does not advance "negligent hiring/retention" allegations, such claims
24   would fail due to this same lack of knowledge.  *Delfino v. Agilent Technologies, Inc.*, 145
     Cal.App.4th 790, 815 (2006); *Z.V. v. County of Riverside*, 238 Cal.App.4th 889, 902 (2015)
25   (plaintiff must show that a "person in a supervisorial position over the actor had prior knowledge
     of the actor's propensity to do the bad act."); *Roman Catholic Bishop*, 42 Cal.App.4th at 1565
26   ("There is nothing in the record to indicate Omemaga had a criminal history or had been
     previously implicated in sexual abuse of a minor. Thus the church could not have had antecedent
27   knowledge of Omemaga's purported criminal dangerousness.").  This emphasizes that Plaintiff
     has no meritorious avenue to amend her case against Uber.
28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1   subject to his control." *Hutcheson v. Eskaton FountainWood Lodge*, 17 Cal.App.5th 937, 958

2   (2017) (emphasis added).

3           Thus, Plaintiff needed to allege specific words or conduct through which Uber indicated

4   that the Assailant was authorized to act.  The Complaint admits precisely the opposite – that Uber

5   revoked from the Assailant any authority to use the Uber App, the Assailant did not have access to

6   the Uber App at the time of the incident, and, in response to Plaintiff's fiancé's request through the

7   rider version of the Uber App, a different individual was summoned to provide the requested ride.

8   See Compl., ¶¶ 49-51, 53.  At no point did Uber make any representation – explicitly or implicitly

9   – that the Assailant was in any way authorized to act on Uber's behalf.  This, alone, is sufficient to

10  warrant dismissing this claim, but Uber will address additional allegations to further demonstrate

11  that it cannot be liable as a matter of law.

12                  **ii.        The Assailant's misuse of decals is not authorization**

13          The fact the Assailant misused Uber's decals, posting them in his vehicle to masquerade as

14  an authorized driver, is not, by definition, an act of ***Uber***, and therefore cannot support liability.

15  As recognized by the California Appellate Court, "[t]he mere display of the [purported principal's]

16  logo, trade name, or trademark is simply not enough to establish an agency by ratification."

17  *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal.App.4th 952, 961-62 (2002).

18          In addition, the Complaint pursues inconsistent allegations on this subject: on the one

19  hand, Plaintiff claims Uber should force all drivers who use its App to apply the same distinctive

20  marks, while, at the same time, Plaintiff argues Uber needs to prevent the public from obtaining its

21  trademarked designs (namely, the Uber decal).  Compl., ¶¶ 23-29, 36-38, 41, 45.  These

22  inconsistent allegations further undercut Plaintiff's claims.  See, e.g., *Alatraqchi v. Uber Techs.,*

23  *Inc.*, No. C-13-03156 JSC, 2013 WL 4517756, at *5 (N.D. Cal. Aug. 22, 2013) (motion to dismiss

24  granted due to inconsistent allegations); *Conrad v. Experian Info. Sols., Inc.*, No. 16-CV-04660

25  NC, 2017 WL 1739167, at *5 (N.D. Cal. May 4, 2017) (finding that "[Plaintiff's] inconsistent

26  allegations fail to state a claim under the FCRA against [Defendant].").

27  / / /

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

iii.   **Allegations regarding background checks and safety representations say nothing about ostensible agency**

Likewise, the Complaint's scattershot allegations pertaining to Uber's driver retention standards, and reality of crime in society, Compl., ¶¶ 9-22, 39-40, as well as admittedly outdated safety representations, Compl., ¶¶ 30-31 (noting that Uber "*has* stated on its website…" not that it currently does so) (emphasis added), ¶¶ 33-34 (referring to representations from 4-5 years ago), cannot support ostensible agency, or any other theory of liability.  This is because (1) the Assailant was not in a relationship of any kind with Uber at the time of the incident (i.e., there is nothing a background check could have accomplished); and (2) nowhere does the Complaint allege Plaintiff read, let alone relied on, any of these outdated representations from at least three years prior that led her to believe she should enter a vehicle that was not the one her fiancé ordered for her.

Furthermore, the alleged safety representations – pertaining to "commit[ments]" to safety, keeping "safety in mind," employing "rigorous" safety procedures, and depicting images of women who "appear safe" – all fall well-within the types of speech protected by opinion/puffery principles.  See *id.* at ¶¶ 30, 31, 33-35; e.g., *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (collecting cases); *Mazur v. eBay Inc.*, No. C 07-3967 MHP, 2008 WL 618988, at *9 (N.D. Cal. Mar. 4, 2008) ("eBay represents that it 'carefully screens' for 'reputable' auction houses, but the modifier 'carefully' with respect to 'screened' and the adjective 'reputable' both indicate opinion and are therefore not actionable.").

c)   <u>**Justifiable reliance is not adequately pled**</u>

The final element of ostensible agency also cannot be satisfied, because Uber never made any representations to Plaintiff about any affiliation with the Assailant, meaning there were no such representations on which Plaintiff could rely at all (let alone rely justifiably).  Instead, the harm here resulted from a chance interaction with a predator, an inherent risk in society.  E.g., *Ann M. v. Pacific Plaza Shopping Center*, 6 Cal.4th 666, 678 (1993) ("Unfortunately, random, violent crime is endemic in today's society.") (overruled in part on other grounds).  Notably, courts in analogous contexts provide that justifiable reliance cannot be shown when the harm results from an objectively knowable risk.  E.g., *Balfour, Guthrie & Co. v. Hansen*, 227 Cal.App.2d 173, 196

1   (1964) (no fraud when the truth is known); *Dodaro v. Standard Pacific Corp.*, No.

2   EDCV0901666VAPDTBX) 2012 WL 12948706, at *15 (C.D. Cal., Mar. 26, 2012) (disclaimers

3   removed grounds for fraud).

4   Similarly, it is not, as matter of law, justifiable to rely on someone's brandishing of a logo

5   as evidence of an agency relationship between that person and the brand-owner.  Basic online

6   searches reveal a plethora of source-identifying logos.  E.g., Sam Kamin & Viva R. Moffat,

7   Trademark Laundering, Useless Patents, and Other Ip Challenges for the Marijuana Industry, 73

8   Wash. & Lee L. Rev. 217, n. 251 (2016) (noting that, in the context of the marijuana industry,

9   which is much smaller than the technology industry, a "Google Images search" revealed thousands

10  of potentially copyrighted logos); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, n. 3

11  (9th Cir. 2017) (copies of allegedly protected logos found through basic internet search).

12  Therefore, the fact the Assailant used logos available online to perpetrate his fraud, and eventual

13  attack, cannot form the basis of civil liability against Uber.

14  **d)   The remaining allegations cannot support ostensible agency**[4]

15  **i.   Claims for changes in technology say nothing about**

16  **agency, and are barred by California law**

17  As the Complaint admits, Uber put in place a number of safety features.  Compl., ¶ 42.

18  The allegation that these simply were not sufficient, and that Uber should have altered its business

19  model to forbid off-site ride hailing, e.g., Compl., ¶ 43, cannot support liability because California

20  courts do not force companies to change their otherwise lawful policies or technology when

21  criminal misconduct of an employee or third-party is at issue.

22  For example, in *Flores v. Autozone West, Inc.*, 161 Cal.App.4th 373 (2008), the plaintiff

23  claimed an employer had a duty to investigate whether prospective employees might have a prior

24  juvenile record, but the court rejected the alleged duty, stressing the difference between what the

25  defendant could have done and what it was legally required to do.  *Id.* at 384.  Another example is

---

[4] While it is unclear to Uber whether the remaining claims addressed in this section are meant to support the ostensible agency theory of liability, since they clearly do not go to the "common carrier" theory, Uber will address them here.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1   *Modisette v. Apple Inc.* 30 Cal.App.5th 136 (2018), in which a third-party misused a smartphone

2   app, leading to a fatal accident, which led to claims the app's manufacturer should have

3   implemented "lockout technology" to prevent its use while driving.  The court rejected the claim,

4   finding no legal duty (nor the proximate causation necessary) to require a defendant to install

5   specific technology to protect against misuse of a phone application.  *Id.* at 141-42.

6        Notably, the *Modisette* court found foreseeability of harm, and other factors supporting a

7   legal duty on Apple regarding misuse of its app, but was quick to clarify that "foreseeability is not

8   synonymous with duty."  *Id.* at 144 (citing *O'Neil v. Crane Co.*, 53 Cal.4th 335, 464 (2012)).

9   Rather, a legal duty "depends on the foreseeability of the risk ***and*** a weighing of policy

10  considerations for and against imposition of liability."  *Id.* (citations omitted; emphasis added).

11  Weighing these factors, the court found no legal duty.

12       Simply put, when a driver misuses a smart phone app, causing injury to another, the

13  designer of the app cannot be said to have "put the danger in play."  *Id.* at 146.  The danger is the

14  independent harm caused by the ***user*** of the technology/intellectual property (here, the Assailant),

15  which is too far attenuated from the ***design*** of that property, even if the harm would not have

16  occurred "but for" the existence and design of that property.  *Id.* at 154-55.

17       As with the failed claim for "lockout technology" in *Modisette*, the Complaint concludes

18  that Uber can and should employ the "technological capability" to prevent third-party misconduct,

19  here, by barring off-site ride requests.   Compl., ¶ 43.  The Complaint insists Uber must be forced

20  to alter its technology in this way, despite the tacit admission that doing so would prevent the

21  social benefit of helping to reduce drunk driving.  See Compl., ¶ 44 (acknowledging this purpose

22  of this feature of the Uber App).

23       Just as with Apple's app in *Modisette*, the design of Uber's intellectual property did not

24  create the true danger – the Assailant's decision to commit an atrocious crime.  The severity of his

25  crimes – which could lead to life imprisonment – only emphasizes the causal attenuation between

26  his conduct and the design of Uber's intellectual property.  Therefore, the same social policy

27  considerations at issue in *Modisette* must bar liability against Uber.

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

ii.      Uber's alleged "disruption" of social norms is not
actionable

Plaintiff also alleges throughout the Complaint that Uber "disrupted" social norms and public perception regarding the ride-hailing industry.  E.g., Compl., ¶ 51 (alleging that Uber "disrupted and changed the public's attitudes about riding in a stranger's private car").

Simply put, one cannot be held to the broad and amorphous duty alleged here regarding public perception, as that would impose overwhelming burdens on defendants, and create unworkable and unlimited standards of care.  See, e.g., *Conti*, 235 Cal.App.4th at 1228 (finding no duty on church, even if it had reason to believe one of its members was "capable of doing harm," due to the adverse public policy affects of such a duty); *Modisette*, 30 Cal.App.5th at 144-45 (similar finding that no duty can be imposed on Apple, even if it was foreseeable that its technology might be misused to harm third-parties); *Univ. of S. California v. Superior Court* ("*USC*"), 30 Cal.App.5th 429, 452-55 (2018).

The recent *USC* case is particularly instructive.  There, a student injured at a fraternity party sued the University, claiming its failure to enforce its own policies and applicable law regarding student alcohol consumption, and failure to shut down the party, led to her being injured by a fellow partygoer.  *Id.* at 436-37.  The allegations are analogous to those asserted by Plaintiff here: that Uber should have enforced (and improved) its safety features and policies, and shut down the ability of customers to summon rides while off-site, so as to prevent a third-party's criminal conduct.

The *USC* case rejected these arguments.  It found that the University owed no legal duty regarding the third-party harm inflicted on the plaintiff, despite the foreseeability of same and, as is alleged by Plaintiff here, a claimed connection between the defendant's conduct and harm.  *Id.* at 453-54.  The court found that any such connection between the harm and the University's failure to enforce safety policies was too "attenuated" given the intervening wrongful act of the third-party.  *Id.* at 454.

Uber's alleged "disruption" of social norms concerning traditional notions of ride-hailing also are far too attenuated to the crime committed by the Assailant.  Likewise, it would place far

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1  too great of a burden on Uber, other innovators, and society at large if, as soon as such innovation

2  is exploited or misused by criminals for their own deviant purposes, civil liability can be imposed

3  on the innovator.

### 3.    Even if the Assailant was an agent, Uber cannot be liable

5      California law does not support a claim of vicarious liability for assaults even by true

6  employees/agents when, as here, they are committed outside the scope and course of the alleged

7  employment and not for the benefit of the purported employer. *Farmers Ins. Group v. County of*

8  *Santa Clara*, 11 Cal.4th 992, 1004-05 (1995); *Lisa M. v. Henry Mayo Newhall Memorial Hospital*,

9  12 Cal.4th 291, 299 (1995) (only those incidences that are foreseeable and "fairly attributable to

10  an enterprise… should be allocated to the enterprise as a cost of doing business.").

11      In *Lisa M.*, a Hospital's ultra sound technician sexually assaulted a pregnant teenage

12  patient under the guise of determining the sex of her child.  Although the Court recognized that his

13  employment placed him in contact with the victim, it concluded that the technician's assault was

14  not engendered by or an outgrowth of his employment. *Id*. at 300.  The Court stated:

> [A] sexual tort will not be considered engendered by the employment unless its
> motivating emotions were fairly attributable to work-related events or conditions.
> Here the opposite was true: a technician simply took advantage of solitude with a
> naive patient to commit an assault for reasons unrelated to his work. Tripoli's job
> was to perform a diagnostic examination and record the results. The task provided
> no occasion for a work-related dispute or any other work-related emotional
> involvement with the patient. The technician's decision to engage in conscious
> exploitation of the patient did not *arise out of* the performance of the examination,
> although the circumstances of the examination made it possible.

20  *Id*. at 301 (citations omitted; emphasis in original).[5]

21      The assault alleged in this case is well-removed from even the situation presented in *Lisa*

22  *M*. that the California Supreme Court found was insufficient to permit vicarious liability.  Both

23  cases involve a lone wolf criminal assailant who committed heinous acts unrelated in any way to

---

5 Other instructive cases (of many) include (1) *Maria D. v. Westec Residential Sec. Inc*., 85
Cal.App.4th 125, 146-147 (2000) (on-duty security guard, armed and wearing a uniform, who
stopped and raped a motorist on a public road, was not acting within the scope of employment
because his motivating emotions were not attributable to any work-related conditions); and (2)
*Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133, 137-44 (1981) (custodian who
sexually assaulted a student was not acting within the scope of his employment since the
connection between his "duties" and the wrongful act were too far attenuated).

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ◆ FAX 925.356.8250

1    the tasks of his alleged job.  The case at bar is removed multiple steps further, given the Assailant

2    was not "on the clock" (in any sense of the phrase), and was not authorized to perform any tasks

3    with Uber whatsoever.

4            Even if the Assailant's previous authorized use of the Uber App made the assault

5    "possible" (and the Complaint admits the opposite since Uber decals can be obtained and misused

6    by anyone, not merely a prior authorized driver), his conduct "did not arise out of the performance

7    of" driving Plaintiff – it arose out of the Assailant luring Plaintiff into his car under false

8    pretenses.  Thus, Uber cannot be liable, even if the Assailant's was an employee or agent, since

9    the assault was motivated by his "personal motivations [that] were not generated by or an

10   outgrowth of workplace responsibilities, conditions or events."  *Id.* at 302.[6]

11              **B.      The Negligence Claim – Based on a Common Carrier Theory – Fails**

12           The second claim for relief rests on the theory that Uber is a common carrier who owed

13   Plaintiff a duty of utmost care regarding her safe carriage.  E.g., Compl., ¶ 75 (citing California

14   Civil Code, section 2100).  The theory fails as a matter of law.

15           First, "a common carrier within the meaning of Civil Code section 2168 is any entity

16   which holds itself out to the public generally and indifferently to transport goods or persons from

17   place to place for profit."  *Squaw Valley Ski Corp. v. Superior Court*, 2 Cal.App.4th 1499, 1508

18   (1992).[7]  The Complaint does not allege that Uber (as opposed to each individual driver)

19   transports any goods or people, and certainly not "generally and indifferently."  To the contrary,

20   the Complaint indicates that one must download the "Uber App" in order to summon a ride, e.g.,

21   Compl., ¶ 49, indicating conditions are placed on who and in what manner one can network rides

22   with a driver via the App.  This is not "general" and "indifferent" treatment, as anyone without the

23   —————————————

24           [6] There is an exception to this rule when an on-duty police officer uses his coercive
     authority to commit an assault, but the Supreme Court stated such would not include private
25   security guards or even off-duty police officers.  *Mary M. v. City of Los Angeles*, 54 Cal.3d 202,
     219-20 (1991).  Clearly, then, a driver of a vehicle (who, unlike security guards and off duty
26   police officers, are not known to have any coercive authority), should not be found to fall within
     the narrow exception to the general rule that no vicarious liability exists for acts of sexual
27   violence.

28           [7] Section 2168 defines common carrier; section 2100 sets the standard of care.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1   proper device, software, and other qualifications required by same cannot be linked to a driver.

2       Second, and more fundamental, even assuming *arguendo* that Uber was a common carrier,

3   that Uber and not the driver provides transportation, and that Plaintiff **intended** to become a

4   passenger by summoning a ride (through her fiancé), Plaintiff never actually became such a

5   passenger since the unauthorized Assailant intervened.  California law provides that intended

6   passengers who have not yet boarded are not under the care of a common carrier.  *Marshall v.*

7   *United Airlines*, 35 Cal.App.3d 84, 86-87, 92 (1973) (paying passenger injured while walking

8   from one plane to another did not have claim for common carrier, or any, liability against airline);

9   see also *Hildebrant v. City & Cty. of San Francisco*, 69 Cal.App. 590, 595 (1924) ("[O]ne who has

10  the control of or who is operating a car must do something by way of an invitation to one to board

11  the car before the relation of passenger and carrier is created so as to render the carrier liable in

12  damages under the passenger relation.").

13      The *Marshall* court recognized that common carrier liability attaches only when

14  passengers are actually in transit, and continues until they have safely departed the vehicle.

15  *Marshall*, 35 Cal.App.3d at 86.  The court recognized that the common carrier "rule properly

16  ceases with the reason for it; therefore, as a passenger's entrance to the carrier's station is

17  characterized by none of the hazards incident to the journey itself, the rigor of the rule above

18  announced [the rule of highest degree of care] is justly relaxed, in that at such a time and place the

19  carrier is bound to exercise only a *reasonable degree of care* for the protection of [its]

20  passengers." *Id.* at 86-87 (citing *Falls v. San Francisco etc. R.R. Co.*, 97 Cal. 114, 119 (1893))

21  (internal quotations omitted; emphasis and brackets by appellate court).

22      These authorities make clear that, even if a passenger pays a fare and intends to become a

23  passenger, until he or she actually becomes a passenger (i.e., has started to be "carried"), no

24  common carrier liability can attach.  Since, regardless of intent, Plaintiff never was carried by any

25  authorized transportation provider using the Uber Driver App, no common carrier liability can

26  apply.  As that is the only theory of liability for the negligence count, that claim for relief fails.[8]

27

28      [8] If Plaintiff argues that the negligence count is not limited to a common carrier theory, but

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

**C.    Additionally, the Motion Should Be Granted as to Punitive Damages**

To support punitive damages, Plaintiff needed to plead (and ultimately must prove by clear and convincing evidence) "that the defendant has been guilty of oppression, fraud, or malice." *Anaya v. Machines de Triage et Broyage*, No. 18-CV-01731-DMR, 2019 WL 359421, at *3 (N.D. Cal. Jan. 29, 2019) (citing Cal. Civil Code § 3294(a)).  Plaintiff's punitive damages claim fails because it is not sufficiently pled (even generally, let alone with heightened specificity), and also because no managing agent or equivalent is alleged to have committed the conduct purportedly warranting punitive damages.

There is a split among the district courts whether the elements of California Civil Code Section 3294(a) must be pled with heightened specificity following the Supreme Court decisions of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*, *supra*.  E.g., *MCI Commc'ns Servs., Inc. v. Sec. Paving Co., Inc.*, No. 115CV01940LJOJLT, 2016 WL 1436521, at *4-5 (E.D. Cal. Apr. 12, 2016); *Anaya*, 2019 WL 359421, at *4 ("The Ninth Circuit has yet to weigh in on whether conclusory pleading of punitive damages claims is appropriate in the wake of *Twombly* and *Iqbal*.").

However, a recent decision from the Northern District signals a trend towards the approach of requiring heightened allegations of punitive damages.  *Opperwall*, 2018 WL 1243085, at *5 ("[F]acts are insufficient when the plaintiff asserts 'nothing more than conclusory allegations' of oppression, fraud, or malice.").  If this Court adopts the same approach, the punitive damages claims here are patently insufficient since, as noted below, there is a single sentence purportedly supporting them – and, arguably, only by inference.  But even if this Court does not adopt a heightened requirement, the punitive damages claims fail under a basic pleading standard.

The only allegation in the Complaint arguably pertaining to punitive damages is found at paragraph 59, wherein Plaintiff concludes Uber acted with "conscious disregard" and committed

---

instead can be supported by other allegations in the Complaint, such arguments should fail.  First, the negligence count is clearly and exclusively based on a common carrier claim, and this motion is controlled by those pleadings.  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197, n. 1 (9th Cir. 1998).  Second, even if other allegations are considered with respect to this count, Uber has thoroughly addressed each above.

1   "despicable" conduct.  First, although these buzz words are commonly invoked in the punitive

2   damages context, they do not (even generally) aver the "base, vile, or contemptible" conduct

3   California requires for an award of punitive damages.  *College Hospital Inc. v. Superior Court*, 8

4   Cal.4th 704, 725 (1994).  Thus, a basis for punitive damages is not pled even generally.

5          In addition, the "conduct" at issue in paragraph 59 refers to Uber's alleged safety

6   representations/procedures.  As noted above, those allegations ultimately do not form the bases for

7   any of the claims for relief, which instead are predicated on theories of ostensible agency and

8   common carrier liability.  Therefore, the Complaint fails to plead any basis for punitive damages

9   with respect to the actual claims for relief.

10         Finally, the punitive damages claims fail for the independent reason that the Complaint

11  does not allege malice by a corporate employee with the requisite authority.  California's

12  substantive law on this issue was aptly summarized by the court in *Cruz v. Home Base*, 83

13  Cal.App.4th 160, 167 (2000):

> Corporations are legal entities which do not have minds capable of recklessness,
> wickedness, or intent to injure or deceive.  An award of punitive damages against
> a corporation therefore must rest on the malice of the corporation's employees.
> But the law does not impute every employee's malice to the corporation.  Instead
> the punitive damages statute requires proof of malice among corporate leaders:
> the "officer[s], director[s], or managing agent[s]."

18         This rule recognizes that "the imposition of punitive damages upon a corporation is based

19  upon its own fault.  It is not imposed vicariously by virtue of the fault of others."  *City Products*

20  *Corp. v. Globe Indemnity Co.*, 88 Cal.App.3d 31, 36 (1979).  When, as here, a corporate entity's

21  claimed liability is based on the acts of a purported employee/agent, the plaintiff must plead that

22  an "officer, [a] director, or [a] managing agent 'authorized or ratified the wrongful conduct ... or

23  was personally guilty of oppression, fraud, or malice.'"  *Shaterian v. Wells Fargo Bank, N.A*., 829

24  F.Supp.2d 873, 888 (N.D. Cal. 2011) (citing Cal. Civ. Code § 3294(b)).

25         The Complaint asserts no facts identifying which Uber corporate officer, director, or

26  managing agent committed any malicious, oppressive, or fraudulent conduct, or who allegedly

27  ratified or approved the Assailant's conduct.  The lack of these allegations against Uber as a

28  corporate entity doom the punitive damages claim under Section 3294(b).  *Scannell v. County of*

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1   *Riverside*, 152 Cal.App.3d 596, 614 (1984) (holding there could be no recovery for punitive

2   damages where plaintiff failed to plead that acts of employees of a corporation were done with

3   knowledge or under the express direction or ratification of an officer, director, or managing agent

4   of the corporation).

5       **D.    Leave to Amend Should Be Denied**

6       Following the granting of a Rule 12 motion, "[a] district court does not err in denying

7   leave to amend where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990

8   (9th Cir. 2009) (citations omitted).  Under such circumstances, "there is no need to prolong the

9   litigation by permitting further amendment." *Id.* (citations and quotations omitted).  Here, Uber

10  has demonstrated numerous fatal deficiencies in the claims against it, given that the harm at issue

11  was indisputably caused by third-party criminal activity for which there are several legal bars to

12  liability against Uber.  Accordingly, leave to amend should be denied.

13  **VI.    CONCLUSION**

14      Uber must stress the obvious – what happened to Plaintiff is tragic and horrific.

15  Fundamentally distinct from that recognition is that Uber cannot be held responsible for the

16  Assailant's third-party criminal acts.  Therefore, Uber respectfully requests the Court grant this

17  motion and deny leave to amend.

18

19  DATED:  July 24, 2019                    Respectfully submitted,

20                                           WOOD, SMITH, HENNING & BERMAN LLP

21                                           By:    /s/ *Steven R. Disharoon*

22                                                  KEVIN D. SMITH
                                                    STEVEN R. DISHAROON
23                                           Attorneys for Defendants, UBER TECHNOLOGIES,
                                             INC., RASIER, LLC and RASIER-CA, LLC
24                                           (erroneously sued as RASIER CA, LLC)

25

26

27

28