UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>        Defendants. | Case No. 19-cv-03310-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 13, 19, 20 |

Jane Doe brings tort claims against Uber after she was assaulted by a former Uber driver posing as a current Uber driver. Uber and its wholly owned subsidiaries Rasier, LLC and Rasier CA, LLC (collectively "Uber") move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Dkt. No. 13.) After careful consideration of the parties' briefing and having had the benefit of oral argument, the Court GRANTS Defendants' motion to dismiss, with leave to amend. While Plaintiff has plausibly alleged ostensible agency, she has not plausibly alleged that the assailant was acting within the scope of his ostensible agency when he assaulted Plaintiff. Nor has she plausibly alleged that she had a common carrier/passenger relationship with Uber in connection with the assault.

## BACKGROUND

### A.    Complaint Allegations

On August 14, 2018, Jane Doe asked her boyfriend to call an Uber for her as Doe's phone had low battery. (Complaint at ¶ 49.) Doe's boyfriend was not with her, so she did not know which driver Uber had assigned to pick her up. (*Id.*) The car that approached Doe had an Uber

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4 & 14.)

decal on the car's windshield.  (*Id.* at ¶ 50.)  Doe got into the car because she saw the Uber decal and "she believed, perhaps mistakenly, that the driver said her boyfriend's name when she approached the car."  (*Id.*)  After she entered the vehicle, the driver activated the child-proof locks on the car's doors, drove to a remote location, and raped and partially strangled Jane Doe.  (*Id.* at ¶ 46.)  The assailant then began to drive to another location, but Doe escaped and was rescued by a passing motorist.  (*Id.*)

Months before Doe's assault, Uber had learned that the assailant, while an authorized Uber driver, had behaved disturbingly while giving another woman a ride in an Uber.  (*Id.* at ¶ 52.)  Upon investigation, the assailant told Uber that he had driven the passenger off her route, flirted with her, and taken her to a horse stable.  (*Id.*)  Uber suspended the assailant's access to the Uber app, thus taking away his ability to sign on and pick up riders as an Uber driver.  (*Id.* at ¶ 53.)  However, Uber did not attempt to retrieve the Uber decal that Jane Doe recognized the day she entered the assailant's car.  (*Id.*)

The assailant is currently facing criminal charges that could result in a life sentence.  (*Id.* at ¶ 47.)

### B.     Procedural Background

Jane Doe is Plaintiff's pseudonym.  Her complaint pleads two claims for relief: (1) assault, battery, and false imprisonment by ostensible agent, and (2) negligence.  Plaintiff filed these state law claims in federal court based on diversity of citizenship.  28 U.S.C. § 1332.  Plaintiff is a citizen of Mexico and alleges that the amount in controversy exceeds $75,000. (Dkt. No. 1 at ¶ 6.)

Defendants Uber, Rasier, LLC and Rasier CA, LLC filed the underlying Motion to Dismiss on July 24, 2019 based on Plaintiff's failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 13.)  The motion is fully briefed and came before the Court for a hearing on September 26, 2019.  (Dkt. No. 13, 19, 20.)

## DISCUSSION

Plaintiff contends that Uber is liable based on two theories of liability: first, Uber is vicariously liable for Jane Doe's assault, battery, and false imprisonment by its ostensible agent, and second, Uber was negligent and owed her a heightened duty of care as a common carrier.

2

**A.     The Assault, Battery, and False Imprisonment Claim**

Plaintiff's first claim for relief seeks to hold Uber vicariously liable for her assailant's assault based on ostensible agency. Uber contends that the claim fails because Plaintiff has not alleged facts that plausibly support a finding that the assailant was Uber's ostensible agent and, even if so, the assailant was acting outside the scope of such agency as a matter of law.

**1.     Ostensible Agency**

Ostensible agency occurs "when the principal intentionally, or by want of care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. The principal (Uber) is liable in tort for the acts of ostensible agent (the assailant) when (1) the principal intentionally or carelessly creates the impression that an individual is the principal's agent; (2) the plaintiff reasonably believes that the individual is the principal's agent; and (3) the plaintiff is harmed because of her reasonable reliance on such belief. *Whitlow v. Rideout Mem'l Hosp.,* 237 Cal.App.4th 631, 636 (2015).

**i.     Principal Intentionally or Carelessly Creates Impression of Agency**

The first element of ostensible agency requires the principal to intentionally or negligently allow others to believe the agent has authority. *Kaplan v. Coldwell Banker Residential Affiliates, Inc.,* 59 Cal.App.4th 741, 747 (1997). However, "[o]stensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists." *J.L. v. Children's Inst., Inc.,* 177 Cal.App.4th 388, 404 (2009).

Although ostensible agency cannot be inferred solely from the actions of the agent, the law does not require the principal to make explicit representations about the agent's authority. *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000). The agent's authority can be inferred from the circumstances and can be proved via circumstantial evidence. *Id.* at 480. Plaintiff has plausibly alleged that Uber at least negligently allowed others to believe that the assailant was an authorized Uber driver. First, through its advertising, Uber intentionally encouraged its customers to identify the Uber decal as indicating that a driver with a decal is a safe and authorized Uber driver. (Dkt. No. 1 at ¶¶ 23, 29, 30-35, 42-45.) Second, Uber

3

provided the assailant with the Uber decal and then failed to take any action to reclaim the decal after it suspended the assailant's app access. (Dkt. No. 1 at ¶¶ 40; 53.) These allegations are sufficient at the pleading stage to support a plausible inference that Uber created the impression that the assailant was Uber's agent.

Uber's reliance on *Emery v. Visa Internat. Serv. Ass'n,* 95 Cal. App. 4th 952 (2002), for the proposition that its failure to reclaim the assailant's Uber decal cannot support ostensible agency as a matter of law is misplaced. There, the court held on summary judgment that the record evidence did not support an inference that Visa had done anything to create an impression that the cheating merchants were Visa's agents. *Id.* at 961. The allegations here—made in a very different context—do support such an inference. Further, the opinion sentence on which Uber relies—"[t]he mere display of the [purported principal's] logo, trade name, or trademark is simply not enough to establish an agency by ratification" *id*. at 961-62—referred to the evidence being insufficient to support a finding that the foreign merchants were acting for Visa. Again, under the very different and specific circumstances alleged here, the allegations are sufficient to support an inference that Uber negligently created the impression that the assailant was an authorized Uber driver.

### ii. Plaintiff Reasonably Believes in Agency

For the reasons discussed above regarding whether Plaintiff has alleged sufficient facts to support an inference that Uber's actions created a belief that the assailant was its agent, Plaintiff has also plausibly alleged that such belief was reasonable. *Whitlow,* 237 Cal.App.4th at 636.

Uber's insistence that it is not as a matter of law "justifiable to rely on someone's brandishing of a logo as evidence of an agency" is wrong. (Dkt. No. 13 at 17); s*ee Kaplan,* 59 Cal.App.4th at 747 (concluding that there was a triable issue of fact as to ostensible agency because the plaintiff indicated that he relied on "[t]he venerable name, Coldwell Banker, the advertising campaign, the logo, and the use of the word 'member' to believe that a franchisee was the ostensible agency of Coldwell Banker." ).

Uber's contention that Plaintiff's belief was not reasonable because her injuries resulted from a chance encounter with a predator improperly draws inferences in Uber's favor. Plaintiff

4

alleges that it was not a chance encounter, but instead an encounter that arose, at least in part, by Uber by creating an impression that the driver decal connotes safety and authorization and then failing to retrieve the decal from a driver Uber knew to be a danger. The Court must accept these allegations at this stage of the proceedings. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

### iii. Plaintiff was Harmed because of Her Belief in Agency

The final element requires Jane Doe to establish that she was harmed *because of* a reasonable reliance on her belief that the assailant was acting as the agent of Uber. *Whitlow,* 237 Cal.App.4th at 636.

Uber argues that Plaintiff's reliance is inadequately pled because "Uber never made any representations to Plaintiff about any affiliation with the [a]ssailant, meaning there were no such representations on which Plaintiff could rely (let alone rely justifiably)." (Dkt. No. 13 at 16.) As explained above, the Court cannot conclude as a matter of law that it was unreasonable for Plaintiff to rely on the assailant's display of the Uber decal.

\*\*\*

Construing the facts in the light most favorable to Plaintiff, Plaintiff has plausibly alleged ostensible agency.

### 2. Scope of Employment

Even if the assailant was Uber's ostensible agent/employee, Uber is only vicariously liable for torts committed within the scope of the ostensible agency. *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 296 (1995). An employee's "willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts." *Id.* at 296-97. For the employer to be held liable for such conduct, however, the tort must have been "engendered by" or "arise from" the employment. *Id.* at 298. "An employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work." *Id.* The liability requirement that the tort be engendered by or arise from the work is not but-for causation; "that the employment brought tortfeasor and victim together in time

5

and in place is not enough." *Id.* at 298. Instead, to fall within the scope of employment "the incident leading to injury must be an 'outgrowth' of the employment; the risk of tortious injury must be inherent in the working environment; or typical of or broadly incidental to the enterprise [the employer] has undertaken." *Id.*

Another way California approaches the issue is to determine whether the tort was foreseeable from the employee's duties. *Id.* at 299. "The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought." *Id.* The rule reflects that "losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business." *Farmers Ins. Grp. v. Cty. of Santa Clara,* 11 Cal. 4th 992, 1006 (1995).

*Lisa M.* disposes of any argument that the assault here was engendered by or arose from the assailant's ostensible employment. In *Lisa M.*, a hospital technician completed an ultrasound on a pregnant patient, left the patient's room, and then returned to the room and sexually assaulted the patient by pretending that his conduct was required to determine the baby's gender. *Lisa M.*, 12 Cal.4th at 298. In determining whether the technician's conduct fell within the scope of his employment, the court "ask[ed] first whether the technician's acts were engendered by or an outgrowth of his employment." *Id.* at 300 (internal citation and quotation marks omitted). The court concluded that they were not, reasoning that a "sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions," *id.* at 301, and in the circumstances before the court the "the opposite was true."

> A technician simply took advantage of solitude with a naïve patient to commit an assault for reasons unrelated to his work. [The technician's] job was to perform a diagnostic examination and record the results. The task provided no occasion for a work-related dispute or any other work-related emotional involvement with the patient. The technician's decision to engage in conscious exploitation of the patient did not arise out of the performance of the examination, although the circumstances of the examination made it possible.

*Id.* at 301. The court concluded that "the flaw in plaintiff's case for Hospital's respondeat superior liability is not so much that [the technician's] actions were personally motivated, but those

6

personal motivations were not generated by or an outgrowth of workplace responsibilities, conditions or events." *Id.* at 302.

Even if the assailant was an actual Uber employee as opposed to an ostensible agent, and drawing all reasonable inferences in Plaintiff's favor, the complaint does not plausibly allege that the sexual assault arose from the assailant's job to drive Plaintiff to her chosen destination. As in *Lisa M.*, the task provided no occasion for a work-related dispute or any other work-related emotional involvement with the passenger. That is, the assailant's "personal motivations were not an outgrowth of workplace responsibilities, conditions or events." *Id.*

*Lisa M.* also disposes of liability under a foreseeability focus. The court concluded that the technician's assault was not foreseeable from the technician's duties notwithstanding the physically intimate nature of the work:

> Here, there is no evidence of emotional involvement, either mutual or unilateral, arising from the medical relationship. Although the procedure ordered involved physical contact, it was not of a type that would be expected to, or actually did, give rise to intense emotions on either side. We deal here not with a physician or therapist who becomes sexually involved with a patient as a result of mishandling the feelings predictably created by the therapeutic relationship, but with an ultrasound technician who simply took advantage of solitude, access and superior knowledge to commit a sexual assault. . . The assault [was] . . . the independent product of [the technician's] aberrant decision to engage in conduct unrelated to his duties. In the pertinent sense, therefore, [the technician's] actions were not foreseeable from the nature of the work he was employed to perform.

*Id.* at 302-03. The same is true of the allegations here, even more so given that the work duties do not involve any physical contact whatsoever. The assault was the independent product of the assailant's aberrant decision to engage in conduct unrelated to his duties.

Indeed, California "courts have rarely held an employee's sexual assault or sexual harassment of a third party falls within the scope of employment." *Daza v. Los Angeles Cmty. Coll. Dist.*, 247 Cal. App. 4th 260, 268-69 (2016) (holding that guidance counselor's alleged sexual assault of student not within counselor's scope of employment and collecting cases). While California courts "have imposed vicarious liability based on 'the unique position of police officers with their ability to arrest and use deadly force,' coupled with their 'substantial degree of

authority' and the use of that authority over the . . . plaintiff," *id.* at 269, those circumstances are not and cannot be alleged here.

*Xue Lu v. Powell,* 621 F.3d 944 (9th Cir. 2010), does not require a different result. First, it is not apparent that the court held that the immigration officer was acting within the scope of his employment when he sexually assaulted the plaintiffs. In holding that the officer was acting within the scope of his employment, the court relied on a case involving a loan broker and a fraudulent loan application—not a sexual assault. *Id.* at 949 (discussing *Inter Mountain Mortgage, Inc. v. Sulimen*, 78 Cal.App.4th 1434, 1440 (2006)). Second, the actual holding of the court was that the government could not be liable for the officer's sexual assault. *Id.* at 949-50 (holding that "the torts for which the plaintiffs may be compensated by [the officer's] employer are the infliction of emotional distress and interference with their civil rights" rather than "sexual misconduct"). Third, *Xue Lu* is arguably analogous to the law enforcement sexual assault context given the power and authority an immigration officer has over immigration applicants. The facts alleged here are not.

The Court recognizes that *Doe v. Uber Technologies, Inc.*, 184 F.Supp.3d 774, 784 (N.D. Cal. 2016), reached a different conclusion, at least at the 12(b)(6) stage. This Court respectfully disagrees that such a holding can be squared with *Lisa M.* and the test it applies to sexual assault by employees on third parties. While the Court accepts as true that passengers expect Uber to perform background checks on its drivers to mitigate the risk of assault, including sexual assault, the same expectation is no doubt true, if not truer, for hospital employees left alone with patients in physically vulnerable positions. Further, that Uber encouraged passengers to feel safe in an Uber as part of its disruption of the taxi industry is just another way of saying that Uber passengers are in a vulnerable position. But *Lisa M.* holds that such vulnerability cannot be a basis for finding that a sexual assault assailant was acting within the scope of his employment. *Lisa M.* at 313-314; *see also Xue Lu*, 621 F.3d at 950 ("The liability of a private employer in California does not turn on the vulnerability of the victim but on the extent to which the tort of the employee is incident to his employment.").

1    Accordingly, drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not plausibly alleged facts that support a finding that the assailant was acting within the scope of his ostensible employment when he assaulted Plaintiff. The first claim for relief must therefore be dismissed.

### B. Common Carrier Negligence

Plaintiff's second claim is for common carrier negligence. Under California law "[e]veryone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." Cal. Civ. Code § 2168. "Hence, a common carrier within the meaning of Civil Code § 2168 is any entity which holds itself out to the public generally and indifferently to transport goods or persons from place to place for profit." *Squaw Valley Ski Corp. v. Superior Court,* 2 Cal.App.4th 1499, 1507 (1992). A common carrier owes passengers "the utmost care and diligence for safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." Cal. Civ. Code § 2100. They are "responsible for any, even the slightest, negligence and are required to do all that human care, vigilance, and foresight reasonably can do under all the circumstances." *Orr v. Pacific Southwest Airlines*, 208 Cal.App.3d 1467, 1472 (1989).

Uber first insists that it is not a common carrier because of conditions that are placed on who can use and be connected with drivers via the app; it argues that this process is not the "general" and "indifferent" treatment necessary to support a finding that Uber is a common carrier. The Court disagrees. Common carrier liability can attach even for transportation services that are "of possible use to only a fraction of the population." *Huang v. The Bicycle Casino, Inc.* 4 Cal.App.5th 329, 339 (2016) (holding that summary judgment was inappropriate because a genuine issue of material fact existed as to whether a casino shuttle bus was a common carrier.) In *Squaw Valley Ski Corporation v. Superior Court,* for example, the court held that a ski resort chair lift facility was a common carrier even though it was only accessible to fee-paying members of the public who had ski equipment and chose to avail themselves of the chair lift as a mode of transportation. *Squaw Valley Ski Corporation v. Superior Court,* 2 Cal.App.4th 1499, 1510 (1992).

9

In sum, Uber's status as an app-based transportation network does not preclude it as a matter of law from being held liable as a common carrier.

Uber next insists that because Plaintiff never actually became a passenger in an Uber vehicle, it was never a common carrier of Plaintiff and thus, it cannot be held liable under a heightened common carrier negligence theory. In other words, because Plaintiff was never driven by an authorized Uber driver on the day in question, no common carrier liability can attach. Plaintiff counters that the common carrier relationship was created at the time Uber accepted her boyfriend's ride request on her behalf regardless of whether she actually entered an Uber-authorized vehicle.

Under California law, common carrier liability does not attach for injuries to intended passengers who have not yet boarded or attempted to board the common carrier, and it has ended when the passenger has safely exited the carrier. *See McGettigan v. Bay Area Rapid Transit Dist.,* 57 Cal.App.4th 1011, 1018 (1997) ("the heightened degree of care is owed only while passengers are *in transitu,* and until they have safely departed the carrier's vehicle") (internal quotation marks and citation omitted); *Marshall v. United Airlines,* 35 Cal.App.3d 84, 86-87, 92 (1973) (holding that United Airlines did not have any liability to a plaintiff who had de-boarded her plane and was injured in a stairwell that was not owned by United Airlines even though she was on the way to a United-arranged connecting flight); *Orr*, 208 Cal.App.3d at 1472 (stating that common carrier liability "is owed while passengers are in transit and until they have safely departed the carrier's vehicle").

Plaintiff argues that Uber owed her a duty of care as a common carrier as soon as Uber accepted the ride request sent by her fiancé because by doing so, Uber had showed an intent to receive her as a passenger. That theory, however, is unsupported by California caselaw; indeed, it is foreclosed by *McGettigan*. There, the plaintiff purchased a Bay Area Rapid Transit ("BART") ticket and rode the train to the end of the line. An operator then told him he could catch a ride on a different BART train on the opposite side of the tracks. At some point, the plaintiff was found injured on the platform next to the tracks. He argued that BART violated its heightened common carrier duty by leaving him next to the track in an inebriated state. The appellate court held that

common carrier liability did not apply in these circumstances because such liability only attaches while passengers are in transit until they have safely departed the carrier's mode of transportation. 57 Cal. App. 4th at 1017. The court explained the reason for the limitation:

> The passenger while in actual progress upon his journey is exposed to countless hazards, gives himself wholly in charge of the carrier . . . But a rule properly ceases with the reason for it; therefore, as a passenger's entrance to the carrier's station is characterized by none of the hazards incident to the journey itself… the carrier is bound to exercise only a reasonable degree of care for the protection of his passengers.

*Id.* (quoting *Falls v. San Francisco*, 97 Cal. 114, 119 (1893)). Once the plaintiff had exited the BART train the relationship of carrier and passenger terminated, even though the BART operator told him to take a different BART train heading the other direction. If the BART passenger did not have a common carrier/passenger relationship with BART just after departing a BART train and while waiting on a BART platform for another train, then Plaintiff did not have a common carrier/passenger relationship with Uber while waiting outside a business for an Uber to pick her up.

The cases Plaintiff relies upon involve very different factual allegations. In *Gray v. City and County of San Francisco,* 202 Cal. App. 2d 319, 323 (1962), the plaintiff was injured while boarding a street car; an analogous situation here would be if Plaintiff had been injured while entering an Uber. *Ingham v. Luxor Cab Co.*, 93 Cal. App. 4th 1045, 1051 (2001), merely holds that "the duty of due care does not necessarily end when the passenger alights safely from the carrier's vehicle; it ends only when the passenger is discharged into a relatively safe space." Here, in contrast, Plaintiff never entered an Uber vehicle. In *Ward*, a century-old case, the plaintiff was injured on the carrier's platform by the carrier's speeding train. *Southern Pac. Co. v. Ward,* 208 F. 385 (9th Cir. 1913). Finally, Plaintiff's suggestion that her case is more akin to *Huang* reads too much into that case. The issue there was whether the casino shuttle was a common carrier; the court never analyzed whether there was a common carrier/passenger relationship while the plaintiff was boarding the casino shuttle. 4 Cal. App. 5th. at 338-40. In any event, the *Huang* plaintiff was injured while attempting to board the shuttle; again, not the facts of this case as Plaintiff was not injured while entering an authorized Uber vehicle.

*Orr v. Pac. Sw. Airlines*, 208 Cal. App. 3d 1467 (1989), another case Plaintiff cites, actually shows why Plaintiff's theory is not supported by California law.  In *Orr,* the plaintiff was injured while proceeding through the security checkpoint at an airport.  The court held that the heightened common carrier duty did not apply as the defendant airline had not restricted the plaintiff's mobility as she "remained free to roam through the terminal at will subject to security screening applicable to passengers and nonpassengers alike." *Id.* at 1474.  And the plaintiff's injury occurred in an area not in the airline's exclusive control. *Id*.  The same is true of the allegations here, drawing all reasonable inferences in Plaintiff's favor. When Uber accepted Plaintiff's fiancé's ride request, Plaintiff was not in Uber's exclusive control; she was free to go wherever she wanted or to not even attempt to board the Uber vehicle when it arrived.  And, as it tragically turned out, she never entered an authorized Uber vehicle.

Finally, Plaintiff claims that common carriers can be held liable for the intentional torts of third parties.  But in the cases cited by Plaintiff there is no question that the defendant had a heightened common carrier duty as the plaintiff was in transit at the time of injury. *See Andrews v. United Airlines, Inc*., 24 F.3d 39, 40 (9th Cir. 1994) (luggage falling out of overhead compartment on an airplane); *Berger v. S. Pac. Co*., 144 Cal. App. 2d 1, 3 (1956) (plaintiff assaulted by train employee while on train).  These cases are of no help to Plaintiff here.

Accordingly, Plaintiff has failed to allege facts that plausibly support an inference that Uber had a common carrier/passenger relationship which warranted a heightened duty at the time Plaintiff was assaulted.  The second claim for common carrier must therefore be dismissed.  Of course, that Plaintiff has not pled common carrier liability does not mean that Uber cannot be liable under an ordinary negligence theory.  *See Huang,* 4 Cal. App. 5th at 341.

### C. Punitive Damages

Finally, Uber moves to dismiss Plaintiff's punitive damages claim as inadequately pled.  Under California law, a plaintiff may recover punitive damages in connection with a non-contractual claim if she establishes by clear and convincing evidence that the defendant is guilty of (1) fraud, (2) oppression, or (3) malice. Cal. Civil Code § 3294(a). For an employer to be liable for those damages, it must have "had advance knowledge of the unfitness of the employee and

12

employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct . . . or [been] personally guilty of oppression, fraud, or malice." *Id.* 3294(b).

Plaintiff asserts that Uber prioritizes profits over its passengers and failed to take reasonable measures to protect against foreseeable harm caused by the distribution of the Uber decals. (Dkt. No. 1 at ¶ 41.)  She insists that such an allegation supports an inference of corporate malice which establishes Jane Doe's right to punitive damages because "Uber willfully, consciously, and despicably prioritized, and continues to prioritize, profits over the rights and safety of its own passengers." (Dkt. No. 19 at 20.)

In *Pacific Gas and Electric Co.,* the court noted "[p]unitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate." *Pacific Gas and Electric Co. v. Superior Court,* 24 Cal.App.5th 1150, 1173 (2018).  The court there held that there was a "triable issue of fact as to malice" related to whether PG&E was liable for a fire which arose when the powerline came into contact with a tree near their property.  *Id.* at 1170.  However, the same case held that "mere carelessness… of the defendant does not justify the imposition of punitive damages." *Id.*  Though Uber claims that Plaintiff has not adequately pled the malice required for an award of punitive damages, her complaint points to Uber's "intentional[] fail[ure]" to protect passengers, including Jane Doe. (Dkt. No. 19 at 29; Dkt. No. 1 ¶¶13-41, 52-59.)  Intentional failure to retrieve the decal could rise to a level of "extreme indifference" necessary to support an award of punitive damages.  Uber has not shown that Plaintiff's punitive damages claim fails as a matter of law.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss the first and second claims for relief with leave to amend.  Any amended complaint shall be filed within 30 days of this Order.

//
//
//

This Order disposes of Docket No. 13.

**IT IS SO ORDERED.**

Dated: November 22, 2019

_____
JACQUELINE SCOTT CORLEY
Magistrate Judge