UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>          Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>          Defendants. | Case No. 19-cv-03310-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 33 |

Jane Doe brings tort claims against Uber and its wholly owned subsidiaries Rasier, LLC and Rasier CA, LLC (collectively "Uber") after she was assaulted by a former Uber driver posing as a current Uber driver. The Court previously dismissed Plaintiff's claims with leave to amend. (Dkt. No. 29.)  Uber now moves to dismiss Plaintiff's First Amended Complaint for failure to state a claim and lack of jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 33.)  After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS IN PART and DENIES IN PART Uber's motion to dismiss.  Plaintiff's tort claims based on ostensible agency are dismissed as is her common carrier negligence claim, but her negligence claim is adequately pled and the Court cannot say that it is preempted as a matter of law.

## DISCUSSION

Plaintiff's First Amended Complaint ("FAC") pleads four claims for relief: (1) false imprisonment by an ostensible agent; (2) assault and battery by an ostensible agent; (3) breach of the duty of utmost care; and (4) negligence. Uber contends that these claims fail as matter of law

because they are based on the same allegations that the Court already found insufficient to state a claim when it granted Uber's prior motion to dismiss.  Further, Uber insists that to the extent Plaintiff has pled an ordinary negligence claim (which it disputes), the claim is barred by California law since there was no special relationship between the parties and the Court lacks jurisdiction to impose liability because it would interfere with matters within the California Public Utilities Commission jurisdiction.

### A. Plaintiff's Agency Based Claims

The Court previously dismissed Plaintiff's assault, battery, and false imprisonment claim based on an ostensible agency theory because while Plaintiff had plausibly pled an ostensible agency relationship, Plaintiff had not plausibly alleged facts that supported a finding that the assailant was acting within the scope of his ostensible employment when he assaulted Plaintiff. (Dkt. No. 29.)   In doing so, the Court relied upon the California Supreme Court's holding in *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 296 (1995).  *Lisa M*. held that an employee's "willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts." *Id.* at 296-97.  For the employer to be held liable for such conduct, however, the tort must have been "engendered by" or "arise from" the employment.  *Id*. at 298.

Plaintiff insists that scope of employment analysis does not apply to ostensible agency torts because they are based on the doctrine of estoppel.   While it is true that the "[l]iability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,'" it does not follow that an employer could be liable for acts of an ostensible agent, but not the same acts committed by an employee or agent.  *Kaplan v. Coldwell Banker Residential Affiliates*, Inc., 59 Cal. App. 4th 741, 747 (1997).   Indeed, "[u]nder the common law doctrine of respondeat superior, a principal or employer is vicariously liable for the acts of an agent or employee committed in the course of employment." *Lathrop v. HealthCare Partners Med. Grp*., 114 Cal. App. 4th 1412, 1421 (2004), as modified on denial of reh'g (Feb. 11, 2004).  Plaintiff does not cite to any authority which suggests otherwise.

2

Instead, Plaintiff cites to the statutes governing ostensible agency—California Civil Code Sections 2300, 2317, 2334. But again, there is nothing in the statutes—or the case law—which suggests that an employer's liability for acts of its ostensible agent are greater than its liability for the acts of its employee or agent. *See, e.g.*, Cal. Civ. Code § 2334 (stating that "[a] principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof."); *see also van't Rood v. Cty. of Santa Clara*, 113 Cal. App. 4th 549, 573 (2003) ("A principal cannot be held [liable] when an actual agent acts beyond the scope of his actual or ostensible authority."). Indeed, under California Civil Code § 2330 "[a]n agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." *See also Persson v. Smart Inventions, Inc.*, 125 Cal.App.4th 1141, 1167 (2005) ("[A] private corporation is generally liable under the doctrine of respondeat superior for torts of its agents or employees committed while they are acting within the scope of their employment.").)

Nor is the Court persuaded by Plaintiff's argument that the tort here was foreseeable because it is closely related to the nature of Uber's business and it arose directly out of the opportunities created by Uber's business operations. As the court in *Lisa M* concluded, a "sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions." *Lisa M.*, 12 Cal.4th at 301. The allegation that complaints of sexual assaults by Uber drivers have occurred at high rates does not support a reasonable inference that any such assault arises out of the business. *Id*. at 301 ("The technician's decision to engage in conscious exploitation of the patient did not arise out of the performance of the examination, although the circumstances of the examination made it possible."). That is, "the assault [was] . . . the independent product of [the assailant's] aberrant decision to engage in conduct unrelated to his duties. In the pertinent sense, therefore, [the assailant's] actions were not foreseeable from the nature of the work he was employed to perform." *Id*. at 302-03.

So too here. Plaintiff's allegations suggest that the assailant formulated the intent to

3

assault her *after* she got into the vehicle: "before Jane Doe got into his vehicle, the driver did not know that Jane Doe was at the mall, was unaware that she was about to enter his car, and had not yet formed an intent to kidnap, assault, or rape her or anyone else…[but] when he looked in his rearview mirror, he said 'wow' because he was pleased that an attractive woman had gotten into his car, alone." (Dkt. No. 30 at ¶ 61.)  As in *Lisa M.*, "[Uber], by [virtue of the ostensible agency relationship] and providing the [ubiquitous Uber decals], may have set the stage for his misconduct, but the script was entirely of his own, independent invention." *Id.* at 306

Accordingly, Uber's motion to dismiss Plaintiff's false imprisonment, assault, and battery claims by an ostensible agent is granted.  This dismissal is without leave to amend as the Court previously granted leave to amend these claims and further leave would be futile.

**B. Plaintiff's Negligence Claims**

Plaintiff pleads two negligence claims: (1) negligence based on the duty to use the utmost care, and (2) negligence.  Plaintiff's first negligence claim essentially repleads Plaintiff's common carrier negligence claim as it alleges that Uber violated California Civil Code § 2100 which states that common carriers owe passengers "the utmost care and diligence for safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."  The Court previously dismissed Plaintiff's common carrier negligence claim because Plaintiff had not plausibly alleged facts that supported an inference that Uber had a common carrier/passenger relationship with Plaintiff at the time of the assault which warranted a heightened duty of care.  Plaintiff has not cured these pleading defects in her FAC and her opposition brief does not argue otherwise; instead, it focuses on an ordinary negligence theory of liability as well as a theory of liability based on another unspecified "special relationship." (Dkt. No. 35 at 18.[1])  The Court therefore dismisses Plaintiff's third claim for relief based on a common carrier theory of liability.  This dismissal is also without leave to amend as the Court previously gave Plaintiff leave to amend this claim such that further leave to amend would be futile.

Turning to Plaintiff's negligence claim, Uber insists as a threshold matter that Plaintiff has

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  not pled an ordinary negligence claim because although her fourth claim for relief is entitled
2  "negligence" it alleges that "Uber had a special relationship with Plaintiff Jane Doe in that it held
3  itself out as offering safe rides to the public, and it accepted her ride request, agreed to provide her
4  with safe ride to her destination" and is thus not based on an ordinary negligence duty of care.
5  (FAC at ¶ 101.)  While Plaintiff insists in her opposition brief that her claim is one for ordinary
6  negligence, Uber counters that the Court cannot consider this argument because her FAC does not
7  allege a breach of the duty to use "ordinary care" or "due care"—the hallmarks of an ordinary
8  negligence claim. The Court declines to find that Plaintiff was required to use any particular magic
9  language to plead her ordinary negligence claim.  Given her argument that her fourth claim for
10 relief for "negligence" was just that—a claim for negligence—and that the Court specifically left
11 open the door to such a claim, the Court concludes that Plaintiff has pled an ordinary negligence
12 claim (as well as her common carrier negligence claim).

Uber raises two arguments against Plaintiff's ordinary negligence claim: (1) it cannot be liable because Plaintiff has not adequately alleged misfeasance, and (2) the California Public Utilities Commission (CPUC) bars any such claim.  Neither argument can be resolved at the pleading stage.

**1) Plaintiff has Adequately Alleged Negligence by Misfeasance**

A negligence claim under California law requires: (1) "the existence of duty (the obligation to other persons to conform to a standard of care to avoid unreasonable risk of harm to them)"; (2) "breach of duty (conduct below the standard of care)"; (3) "causation (between the defendants act or omission and the plaintiff's injuries)"; and (4) damages. *Merrill v. Navegar*, 26 Cal. 4th 465, 500 (2001).  Plaintiff insists that her theory of negligence is based on misfeasance; that is, that a legal duty arose from Uber's affirmative acts because it "through [its] own action (misfeasance) has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person." *Melton v. Boustred*, 183 Cal. App. 4th 521, 531 (2010); *see also Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001) ("It is well established [] that one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct

5

1  (including the reasonably foreseeable negligent conduct) of a third person."). Plaintiff contends
2  that Uber created the very risk of harm Plaintiff "suffered through its use of poorly screened
3  drivers, its uncontrolled distribution of its decals, and its representations about the safety of riding
4  in Uber-marked vehicles." (Dkt. No. 35 at 16:1-2 (citing FAC ¶¶ 10-29, 36-44, 48-55, 65, 96,
5  104).) Plaintiff identifies her allegations that Uber created a seismic shift in the transportation
6  industry through its novel process for matching riders with drivers and that Uber increased the risk
7  to riders as it did so by making stick-on or tape-on paper decals which were the cornerstone of the
8  matching process. (FAC ¶¶ 23-29; 36-47.)

9  Uber counters that Plaintiff's allegations are too vague to support a claim for misfeasance
10 and her argument that Uber should have done something more to retrieve the decal or that its
11 process for screening drivers was negligent is at best a claim for nonfeasance not misfeasance.
12 Not so. "[M]isfeasance exists when the defendant is responsible for making the plaintiff's
13 position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the
14 defendant has failed to aid plaintiff through beneficial intervention." *Lugtu*, 26 Cal. 4th at 716.
15 Plaintiff has plausibly alleged that Uber did something that put her in a worse position—namely,
16 that it changed the transportation industry to encourage people (women in particular) to get into
17 vehicles with strangers based on the presence of a decal in a car window and provided assurances
18 about the safety of riding in these Uber decaled vehicles, but did not control the distribution of the
19 decals. These allegations are sufficient to plausibly support an inference that Uber's actions
20 created a foreseeable risk of harm to Plaintiff.

21 **2) Plaintiff's Claim is not Barred by Section 1759**

22 The Court thus turns to Uber's argument that Plaintiff's negligence claim is barred by
23 California Public Utilities Code Section 1759 because the CPUC has regulatory authority over the
24 subject matter of Plaintiff's claim (Uber's dissemination of its decals) and any order from this
25 Court would hinder or interfere with the CPUC's exercise of that regulatory authority.

26 As a threshold matter, Plaintiff insists that Uber has waived this argument by failing to
27 make it in its initial motion to dismiss. Federal Rules of Civil Procedure 12(g)(2) technically
28 prohibits successive motions to dismiss raising arguments that could have been made in a prior

1  motion. Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a
2  motion under this rule must not make another motion under this rule raising a defense or objection
3  that was available to the party but omitted from its earlier motion."). Uber's motion, however, is
4  directed at a claim that was not pled in Plaintiff's prior version of the complaint—the ordinary
5  negligence claim. Neither party addresses why the preemption argument would not apply equally
6  to Plaintiff's negligence claim based on common carrier liability—which was in both versions of
7  the complain—and the ordinary negligence claim. Regardless, the Court exercises its discretion
8  "to consider the new arguments in the interests of judicial economy." *Amaretto Ranch Breedables,*
9  *LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437, at *2 (N.D. Cal. July 8, 2011).[2]

Section 1759 of the California Public Utilities Code provides that

> [n]o court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or *to enjoin, restrain, or interfere with the commission in the performance of its official duties*, as provided by law and the rules of court.

Cal. Pub. Util. Code § 1759(a) (emphasis added). The California Supreme Court has set forth a three-part test to determine whether an action is barred by § 1759: (1) whether the CPUC has authority to adopt a policy on the subject, (2) whether it has exercised that authority, and, finally, (3) whether the court action "would hinder or interfere with that policy." *San Diego Gas & Elec. Co. v. Sup. Ct. ("Covalt")*, 13 Cal.4th 893, 923-35 (1996). There is no dispute that the first and second parts of the *Covalt* test are satisfied here. The CPUC has authority to adopt policies regulating Transportation Network Companies (TNC) of which Uber is one and has exercised that authority. *See* Cal. Pub. Util. Code § 5431(c) ("'Transportation network company' means an organization, including, but not limited to, a corporation, limited liability company, partnership, sole proprietor, or any other entity, operating in California that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle."); *Goncharov v. Uber Techs., Inc.*, 19 Cal. App. 5th 1157,

---

[2] The Court is not persuaded by Uber's perfunctory impossibility standing argument (raised only by footnote) and thus declines to find that Uber can raise the claim serially under Rule 12(b)(1) as a subject matter jurisdiction issue.

1170 (2018) ("the CPUC has authority to adopt regulatory policies concerning transportation companies and has exercised that authority" over Uber).

The issue is whether the third factor—whether court action would hinder or interfere with CPUC's policy—is satisfied. Uber insists that any finding that Uber is liable for a third-party's "acquisition or misuse of its trade dress would have the effect of undermining, hindering, or otherwise frustrating the CPUC's efforts to ensure all TNCs make their trade dress readily available." (Dkt. No. 33 at 21:19-22.) In particular, Uber identifies two CPUC orders which it contends "mandat[e] that Uber make its trade dress publically available."[3] (Dkt. No. 33 at 20:9.)

Of relevance here, the September 23, 2013 CPUC order states that

> TNC vehicles shall display consistent trade dress (i.e., distinctive signage or display on the vehicle) when providing TNC services that is sufficiently large and color contrasted as to be readable during daylight hours at a distance of at least 50 feet. The trade dress shall be sufficient to allow a passenger, government official, or member of the public to associate a vehicle with a particular TNC (or licensed transportation provider). Acceptable forms of trade dress include, but are not limited to, symbols or signs on vehicle doors, roofs, or grills. Magnetic or removable trade dress is acceptable. TNC shall file a photograph of their trade dress with the Safety and Enforcement Division.

(Dkt. No. 33-2 at 8 (p. 31 of the CPUC order).) The April 26, 2016 order reiterates these requirements and requires the trade dress to be displayed in the front and rear of the vehicle. (*Id*. at 23 (p. 38 of the CPUC order).)

There is nothing in these orders, however, that requires Uber to publicly disseminate its decals. Uber argues on reply that because the CPUC has elected to post the decals on its website the public availability of the decals cannot support a negligence finding because such a finding

---

[3] Uber requests that the Court take judicial notice of two CPUC orders and two webpage printouts from the CPUC website. (Dkt. No. 33-2.) Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may "take judicial notice of a record of a state agency not subject to reasonable dispute." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004); *see also Overton v. Uber Techs., Inc.*, 333 F. Supp. 3d 927, 936 n.2 (N.D. Cal. 2018), aff'd, No. 18-16610, 2020 WL 1159269 (9th Cir. Mar. 10, 2020) (taking judicial notice of a CPUC webpage). Plaintiff does not oppose the request for judicial notice. Accordingly, the Court GRANTS Uber's unopposed request for judicial notice of the CPUC orders dated September 23, 2013 and April 26, 2016, as well as the two CPUC webpage printouts attached as Exhibits A-C to Uber's request for judicial notice.

1    would undermine the CPUC's decision to publicly post the decals.  Plaintiff, however, does not
2    challenge the public availability of the decals, but rather, contends that Uber should not have given
3    the decals to the assailant given his criminal history and that Uber should have retrieved the decals
4    when it terminated him as a driver based on his conduct.  Uber's insistence that the CPUC
5    prohibits it from withholding its decals is unsupported—the CPUC orders require TNC vehicles to
6    display the trade dress—they do not say anything about who the TNCs should provide the trade
7    dress to or what requirements a TNC can or should place on those authorized to utilize their trade
8    dress, or at least Uber has failed to identify any such language in the CPUC orders.

Uber's impossibility argument likewise goes too far—the issue is not whether Uber should do something to restrict the CPUC's dissemination of its trade dress, but instead, whether Uber should have done something more with respect to authorizing this individual as an Uber driver, and whether it is liable for failing to do something to restrict his ability to present himself as an Uber driver after it terminated him as a driver.  Whether he could have still printed the decals off the CPUC website is an evidence-based argument inappropriate for the pleading stage.

Finally, the cases upon which Uber relies are inapposite.   In *Goncharov v. Uber Techs., Inc*., 19 Cal. App. 5th 1157, 1174 (2018), the court found that plaintiff's claim was barred by section 1759 because "allowing the SAC to proceed would require the trial court to make factual findings regarding whether Uber falls within the charter-party carrier definition and, if so, which regulations would apply to its operations. A judicial determination on these issues would directly infringe upon the CPUC's ongoing rulemaking in this area."  There is no suggestion that the CPUC is engaged in ongoing rulemaking regarding the issues here.  *Covalt* is likewise unavailing. *See Covalt*, 13 Cal. 4th at 950 (holding that a negligence claim would be barred by Section 1759 because "an award of damages on that theory would plainly undermine the commission's policy by holding the utility liable for not doing what the commission has repeatedly determined that it and all similarly situated utilities were not required to do.")  Here, again, Uber has not shown as a matter of law that a finding that Uber should not have authorized the assailant to use its trade dress and should have retrieved the trade dress when it terminated him upon learning of his conduct would undermine any CPUC requirement.

9

Accordingly, drawing all inferences in Plaintiff's favor, as the Court must at the pleading stage, Uber has failed to show as a matter of law that Plaintiff's negligence claim is barred under Section 1759.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Uber's motion to dismiss. The motion is denied as to Plaintiff's negligence claim and granted in all other respects without leave to amend.

Uber's answer is due 21 days from the date of this Order.

The Court sets a Case Management Conference for June 18, 2020 at 1:30 p.m. A joint case management conference statement is due June 11, 2020.

**IT IS SO ORDERED.**

Dated: May 1, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge