

Julie L. Hussey
JHussey@perkinscoie.com
D. +1.858.720.5750
F. +1.858.720.5850

11452 El Camino Real
Suite 300
San Diego, CA 92130-2080

T +1.858.720.5700
F +1.858.720.5799
PerkinsCoie.com

November 8, 2021

Hon. Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Joint Letter Brief re Plaintiff's Deposition and IME in Doe v. Uber, et al., Case No. 3:19-cv-03310-JSC*

Your Honor:

The parties submit this joint letter brief regarding (1) Defendants' request that the Court order Plaintiff to travel to California (or another mutually agreeable location in the U.S.) to appear in-person for her deposition and a mental health examination; and provide guidance on (2) Plaintiff's counsel's refusal to seek authorization from the fiancé of the Plaintiff, a nonparty, to accept a deposition subpoena on his behalf to appear for a remote deposition in Guadalajara.

**Defendants' Position:** Plaintiff is a Mexican citizen who resides in Guadalajara. She filed this suit in the Northern District of California. Plaintiff alleges that while visiting the U.S. she entered the car of a man whom she mistakenly believed to be her Uber driver, and he assaulted her. Plaintiff's fiancé ordered a ride for her through the Uber App and provided her with the license plate number of the car, but she unfortunately did not utilize the information that Uber provided to him (and he provided to her) to confirm the car before entering the vehicle. Her fiancé is also a Mexican citizen and resident of Guadalajara. Plaintiff's primary alleged injuries are PTSD and emotional distress.

Plaintiff refuses to travel from Mexico to the Bay Area or anywhere in the United States to be deposed in this case. Earlier this year, she traveled to the Bay Area and gave testimony in the

criminal case against her assailant.[1] Uber has offered, in an effort to address any reasonable concerns Plaintiff may have, to conduct Plaintiff's deposition and mental health examination in the Bay Area, in another city in California (e.g., San Diego or Los Angeles) or even another state in the U.S.[2] Yet Plaintiff still refuses to travel to the U.S. and insists that Uber's counsel either travel to Guadalajara where she resides or take the deposition remotely. Obviously, Plaintiff is a key witness.

Plaintiff's counsel intends to be in the same room as Plaintiff during her deposition should the deposition go forward remotely, and thus outside of the presence of Uber's counsel or video. This deposition will also likely require an interpreter. This is unworkable for a key party deposition, especially where discovery has been contentious. While counsel for Uber has conducted dozens of depositions remotely, never has one gone forward with a witness alone with their counsel in a room with opposing counsel appearing remotely.

Uber's expert requests that the mental health examination be administered in the U.S. in a setting where the examining expert can meet with Plaintiff in person, conduct an interview, and properly administer any necessary written tests. Uber believes that an in-person mental health examination would also be most efficient, given that an interpreter is required. A mental health examination is critical for Uber to be able to properly evaluate Plaintiff's primary damages claim — emotional distress and PTSD. While Zoom can be a good substitute for many things, it does not allow one to fully see the body language of the witness.

Uber respectfully requests that the Court order the Plaintiff to travel to California to have her deposition and mental health examination completed in-person.

**Plaintiff's Deposition**. Plaintiffs are routinely deposed in the jurisdiction where they file suit. It is well established that "the deposition of a plaintiff must generally be taken in the forum in which the plaintiff filed suit, unless the plaintiff can show good cause that the deposition should take place at another location." *Sony Corp. v. Vizio, Inc.*, No. SACV081135RGKFMOX, 2009 WL 10674940, at *2-3 (C.D. Cal. Oct. 9, 2009) (ordering plaintiff Sony's deposition to be taken in California rather than Taiwan because Sony chose the Central District as the forum for its suit against Vizio); *see also Perdana Cap. Inc. v. Chowdry*, No. C 09-1479 RS (JL), 2010 WL 11475933, at *2 (N.D. Cal. Sept. 2, 2010). "To avoid the application of this rule, a plaintiff has the burden of proving that undue hardship or exceptional or compelling circumstances justify his refusal to travel to his chosen forum." *Mullins v. Premier Nutrition Corp.*, No. C–13–01271–RS (DMR), 2014 WL 4058484, at *1 (N.D. Cal. August 14, 2014). "A party may unilaterally

---

[1] Following a criminal trial, the assailant was convicted of kidnapping, assault with force likely to cause great bodily injury (i.e., strangulation), and dissuading a witness, but not rape.

[2] In an effort to accommodate Plaintiff, Uber noticed Plaintiff's deposition at defense counsel's offices in Palo Alto, California -- which is within the jurisdiction, yet not in San Mateo, and selected a placeholder date before the December 3 discovery deadline.

November 8, 2021
Page 3

choose the place for deposing the opposing party, subject to the granting of a protective order by the Court pursuant to Federal Rule of Civil Procedure 26(c)(2) designating a different place." *Lexington Insurance Co., et al. v. Commonwealth Insurance Co., et al.*, 1999 WL 33292943, at *9 (N.D. Cal. September 17, 1999).

*First*, Plaintiff is the key witness in this litigation that is pending in federal court. She chose to file suit in the Northern District of California. She is also being represented by counsel located in the Northern District. *Second*, as the court in *Lexington* observed, having the plaintiff's deposition be taken in the district where the action is being litigated "not only permits predictability in prospective litigation, it also pragmatically permits the trial court to resolve disputes which may take place during the course of depositions without undue expenditure of time." 1999 WL 33292943, at *9. Uber anticipates that there may be disputes regarding the scope of Plaintiff's deposition which could be more expeditiously resolved if the deposition were to take place in California, rather than in a foreign country that is not subject to the Court's jurisdiction. *Third*, the deposition is likely to require an interpreter which could make a remote deposition arduous and prone to errors in the transcription. *Fourth*, Uber objects to conducting the deposition remotely when Plaintiff's counsel intends to be in the same room as Plaintiff during her deposition – outside of the presence of Uber's counsel. To date Uber's counsel has not attended any Uber witness depositions in person simply because of the perceived unfairness of having someone in the same room with the witness (and outside of the presence of opposing counsel) during a remote deposition.

*Fifth*, Plaintiff also cannot demonstrate undue hardship or exceptional circumstances for deviating from the standard rule and having her deposition proceed in California. Plaintiff's sole argument in opposition to Uber's request is that she should not be made to travel to the Bay Area because it is the site of her trauma. Setting aside the fact that Plaintiff would have to appear for trial in this case in San Francisco, and that she has already appeared for a criminal trial in San Mateo County Superior Court, this argument fails because Uber has offered to depose Plaintiff in Los Angeles, San Diego, or any another mutually agreeable location in California (or the broader United States). Plaintiff has simply refused any of these reasonable alternative locations. In fact, Uber recently learned that Plaintiff traveled to Chicago, Illinois as recently as October.[3] This further undermines her position.

Plaintiff asserts that because all other depositions in this case have taken place by Zoom, this one should too. But Plaintiff fails to mention some key facts: (1) Plaintiff requested to take two depositions in person, both Uber employees located in other states that could not be compelled to travel to California; (2) one of the two witnesses underwent surgery only weeks earlier and her health condition barely allowed her to be deposed, yet alone travel; (3) these depositions were

---

[3] Upon request, Uber can provide the Court with evidence of Plaintiff's recent travels to the U.S. for an in-camera inspection to preserve the anonymity of Plaintiff's identity.

during the height of the COVID-19 pandemic when no one was flying, certainly not witnesses with health issues; (4) if Plaintiff had chosen to depose any other Uber witnesses in person, Plaintiff would have been required to travel to the witnesses in other states — not the other way around — under the Federal Rules of Civil Procedure. Notably, not one single witness in this case has been deposed with any counsel in the same room as the witness (and outside of the presence of opposing counsel) because of the appearance of impropriety.

By bringing a lawsuit in the Northern District of California, Plaintiff availed herself of the benefits and privileges of the U.S. federal court system and must accept the corresponding discovery obligations, which include appearing for her deposition and mental health exam in-person.

**Independent Medical Evaluation.** In the Ninth Circuit, "[t]he general rule is that a plaintiff must submit to an examination in the venue where the action is filed." *Leal v. Siegel*, No. C05-00959 JW, 2006 WL 2263905, at *1 (N.D. Cal. Aug. 8, 2006) (citation omitted); *Rugh v. Liberty Mut. Fire Ins. Co.*, No. 2:10-CV-01078-GMN, 2011 WL 776212, at *2 (D. Nev. Mar. 1, 2011) ("the independent medical examination should occur in the forum where the examiner is subject to this court's jurisdiction."); *Ramirez v. Winter Blues, Inc.*, No. 320CV00002SLGDMS, 2020 WL 8175607, at *4 (D. Alaska Dec. 30, 2020) (ordering IME in Anchorage, Alaska rather than Homer, Alaska despite the plaintiff's resistance due to covid concerns and icy roads).

In *Leal*, the plaintiff filed an excessive force civil rights action against the City of San Jose, the County of Santa Clara, and various law enforcement and correctional officers based on claims that he was assaulted and sustained injuries. The plaintiff, who was a resident of Los Angeles, refused to appear for an independent medical examination in Palo Alto which the defendants had scheduled. *Leal*, 2006 WL 2263905, at *1. The plaintiff argued that it was "intimidating and humiliating to require him to travel, at his own expense, to the location where he was attacked." *Id.* However, the Court rejected this argument and ordered the plaintiff to pay his own travel expenses and submit to an independent medical examination in Palo Alto rather than Los Angeles because that is the venue where the action was filed. *Id. Here, Uber just wants Plaintiff to return to California to have her mental health examination completed -- not even necessarily the venue of this action.*

Plaintiff alleges PTSD and emotional distress. Plaintiff has already indicated that she intends to present expert testimony from a psychiatrist on this issue. A mental health examination is critical for Uber to be able to properly evaluate the nature and extent of Plaintiff's claimed non-economic damages. The examination should be administered in the U.S. in a proper clinical setting where the expert is able to meet with Plaintiff, conduct a thorough interview, assess her emotional state and properly administer any necessary tests. In addition, an in-person mental health examination would be most efficient, given the need for an interpreter — who will accompany Uber's expert.

November 8, 2021
Page 5

Plaintiff's position that Uber must meet and confer regarding the nature and scope of the exam before agreeing to its location is "putting the cart before the horse." Plaintiff has stated that "[i]n general terms, we do agree that Uber is entitled to conduct a mental health examination of plaintiff." (Exhibit 1).  The parties do not currently have a dispute as to the nature and scope of the mental health exam.  If the parties are unable to reach agreement on these issues in the future, Uber will seek appropriate relief from the Court.  However, the location of the mental health examination will likely determine which expert Uber engages to conduct the mental health examination and what that expert's recommendations will be in terms of proposed testing.  Some experts will not travel to Mexico.  Therefore, the location of the mental health examination is a threshold question that needs to be addressed.

Ultimately, Plaintiff chose to bring the action in California and should therefore have to appear for an in-person examination in California.  Uber is flexible with respect to what city in California the examination should take place in and is open to having the examination completed in another part of the U.S. as a backup option (i.e., Chicago, since Plaintiff may already be comfortable with travelling there as evidenced by her recent trip).  But Plaintiff is obviously a key witness who seeks a multi-million-dollar compensatory damage award from this lawsuit.  Her deposition and her mental health examination are important, and they must take place in-person to avoid prejudice to Uber.

Deposing and evaluating this key party witness in person will yield additional information that is not available through a Zoom deposition.  The scope of discovery sought by Plaintiff has been unbridled.  Meanwhile, Plaintiff seeks to keep the discovery which Uber requests out of the reach of this jurisdiction.  Uber is entitled to discovery too.

Plaintiff's counsel points to other potential depositions in Mexico as a reason everyone should travel to Mexico, but, unless something changes quickly, Uber may elect not to depose any of Plaintiff's three identified treating physicians that are located in Mexico.  And Plaintiff has refused to identify **any** other witnesses such as friends and family in Mexico that have knowledge of the incident or Plaintiff's alleged injuries, which may be the subject of a future discovery brief.  If Uber's counsel were to travel to Mexico, it would solely be to accommodate Plaintiff's preference.[4]

Uber respectfully requests that the court order Plaintiff to travel to a mutually agreeable location in California for her deposition and a mental health examination to be completed in-person.

**Deposition of Plaintiff's Fiancé.**  Plaintiff's counsel has represented for months that they intend to represent Plaintiff's fiancé at his deposition and that they would voluntarily produce him in

---

[4] Only one of the three providers that Uber subpoenaed in Mexico responded to Uber's subpoena and produced records.  Uber recently served a deposition notice for this provider to simply preserve its right to take this deposition.  However, Uber may ultimately elect to withdraw this deposition notice.

November 8, 2021
Page 6

Mexico.  Uber trusted this representation and did not initiate the process for the issuance of letters of request/letters rogatory to compel this foreign deposition as a result.  Uber requested that Plaintiff's counsel confirm the availability of Plaintiff's fiancé for his deposition on November 22, 2021 via Zoom.  In light of the dispute regarding the location of Plaintiff's deposition and mental health examination, Plaintiff's counsel suddenly took the position that Plaintiff's fiancé — the person that requested the ride and sent Plaintiff the license number — will not voluntarily appear for his deposition unless both he and Plaintiff are deposed via Zoom.  This is clear gamesmanship.  This non-party should not be able to dictate how or where the Plaintiff's deposition takes place.  Uber appreciates that the Court cannot compel Plaintiff's fiancé to sit for his deposition since he is not a party to this litigation and is located in Mexico.  However, if Uber is forced to rely on the issuance of letters of request/letters rogatory and serve the fiancé through the Hague Evidence Convention, this process is lengthy.  Uber prefers to avoid this, but if this is Plaintiff's counsel's position, Uber respectfully requests that the Court either 1) allow the fiancé's deposition to occur after the current discovery deadline, or 2) issue an order precluding Plaintiff's fiancé from testifying as a witness at trial.

**Plaintiff's Position:**

**Plaintiff's Deposition**: During a telephone conference this past summer, Plaintiff's counsel told Uber's counsel that Plaintiff did not want to travel to the Bay Area for a deposition because of the trauma she had experienced here. When Uber's counsel said they wanted to depose Plaintiff, her fiancé and the mental health professionals that Plaintiff saw in Guadalajara, Plaintiff's counsel noted that time was running short in terms of the discovery cutoff, and suggested that the parties work together and possibly schedule a time to travel to Guadalajara and take all of the depositions during one trip. Uber did not respond to that proposal. Plaintiff reiterated this offer in an email dated October 1 (Exhibit 1.)

On November 3, Uber served a formal notice for Plaintiff to give a deposition on November 23, in Palo Alto, California. The next day, Plaintiff's counsel notified Uber that it was objecting to the deposition, that the matter should be presented to the Court and that Plaintiff would seek a protective order if need be. (Exhibit 3.)

Good cause exists for the issuance of a protective order that states Plaintiff is not required to travel to the Bay Area (or the United States) for her deposition. **First**, it is undisputed that she suffered a horrific trauma here. While she unquestionably has to testify about the things that happened to her, making her travel to the United States to give this testimony would foreseeably add stress and cause emotional harm. This distinguishes her situation from those of all of the cases cited by Uber. **Second**, Plaintiff notified Uber of her position months ago, and has offered to appear for an either in-person or remote deposition in Guadalajara. She also offered to enter into any stipulations to make that possible. Plaintiff's counsel tried to work with Uber's counsel, to schedule an efficient time for Uber to depose Plaintiff and four other witnesses who reside in

November 8, 2021
Page 7

Guadalajara, but Uber ignored that invitation. **Third**, while Uber has every right to depose Plaintiff, it already has the benefit of hours of recorded statements that she gave to officers of the San Mateo Police Department, the SART nurses and the testimony that she gave during the criminal trial of her assailant (a proceeding that Uber's counsel monitored). **Fourth**, all of the depositions given in this case to date have been remote and there have been no problems in terms of getting testimony on the record. Plaintiff's counsel sought to depose Uber employees (party deponents) in person, but when Uber's counsel objected on various grounds – *including for the sake of the health of one deponent* – Plaintiff's counsel immediately agreed to conduct the depositions remotely. Sauce for the goose should be sauce for the gander. Now, however, Uber insists that Plaintiff's deposition occur in the United States, despite reasonable concerns about the effect that may have on her mental health. **Fifth**, Plaintiff's counsel has affirmatively stated that they will abide by all laws, rules and ethical guidelines when they defend Plaintiff's deposition (as they always do). It should go without saying, for example, that her counsel would never engage in any off-the-record communication of any kind with the Plaintiff while the deposition was on the record.

**Independent Medical Evaluation:** As a starting point, Uber has failed to meet-and-confer on this issue. On October 8, Plaintiff informed Uber that she would stipulate to a mental health examination without the need for an order of the Court, but conditioned that stipulation on reaching an agreement with Uber about the nature and scope of the examination:

> Uber first needs identify who it intends to conduct the exam and what the exam will entail. We do not agree, for example, that the examiner can conduct any test or procedure that he or she wants during the exam. For example, we would not agree to the battery of tests associated with neuro-psychological exam as Jane Doe does not claim to have suffered a brain injury. Moreover, assuming you select a psychiatrist who has a currently active clinical practice, then it is extremely likely (almost certain) that he or she is has been conducting remote sessions with his or her patients during the pandemic.
>
> In any event, assuming the parties did agree to some specific testing, that can be done remotely. That has been happening routinely during the pandemic. (Exhibit 1 [also notifying Uber that Plaintiff's expert consultant had examined her remotely].)

Uber never responded to Plaintiff's request that it specify the nature and scope of the exam. It has not issued a written demand for an IME. Thus, this issue is not ripe for the Court's consideration.

As to the location, any examination of Plaintiff will be a mental health examination only, not a physical exam. As Plaintiff said in her October 8 email to Uber, "This is not a physical exam where a doctor needs to test reflexes, pupillary response or range of motion." (Exhibit 1.) This distinguishes Plaintiff's situation from the cases cited by Uber, which all involved physical

November 8, 2021
Page 8

injuries and physical examinations. As noted, Plaintiff's expert consultant conducted her examination of the Plaintiff remotely. Finally, Uber provides no evidence, e.g., a declaration or a letter, from its retained mental health professional, to the effect that he or she needs to examine Plaintiff in person.

**Deposition of Plaintiff's Fiancé:** Uber does not make any specific request of the Court with respect to Plaintiff's fiancé, but does impugn Plaintiff's counsel. Uber claims that Plaintiff's counsel has reneged on a promise to voluntarily produce Plaintiff's fiancé for a deposition. That is false. Plaintiff's counsel does not represent him. They never made such a commitment.

During meet-and-confer, Plaintiff's counsel did inform Uber that they *probably* would represent the fiancé if deposed. Plaintiff's counsel, in an effort to reach a deal with Uber about the location of Plaintiff's deposition and to promote efficiency in the litigation, proposed that the parties work together, pick a convenient time for Uber's counsel to come to Guadalajara and depose Plaintiff, her fiancé and the three mental health professionals that Plaintiff saw in that city. Uber ignored that entreaty.  As Plaintiff's counsel wrote to Uber on October 26:

> [W]e will likely represent [the fiancé] if he is deposed. However, do you have any authority that he has to appear for a deposition voluntarily and without a subpoena? In the past meet-and-confer process we have suggested that Uber could take his deposition in Guadalajara at the same time frame it deposed plaintiff, and possibly the mental health counselors she saw, in that city. We believe that Mr. Padilla would be willing to appear voluntarily without a subpoena if Uber extended that courtesy to plaintiff. We would be disinclined to recommend that he do so if Uber forces plaintiff to come to the US for her deposition. (Exhibit 2.)

And as they told Uber's counsel the following day:

> You have known about [the fiancé] and his whereabouts since day one of this litigation. The discovery cut off will soon be upon us. We could probably convince Mr. Padilla to appear for a deposition remotely and without the need for a subpoena, but we never promised that, and we could not as that would be his decision, not ours. (Id.)

On November 3, Uber's counsel sent via email to Plaintiff's counsel a notice of the fiancé's deposition and a subpoena directed to him, and asked whether Plaintiff's counsel would accept service of the subpoena on the fiancé's behalf. Plaintiff's counsel responded truthfully: they do not have authority to accept service on his behalf. (Exhibit 3.)

Uber does not specifically ask the Court to do anything with respect to the fiancé's deposition, but does threaten to bring some future motion, possibly another attempt to delay the trial. As the attached exhibits show, however, Plaintiff's counsel have been forthright. They have done their

best to promote efficiencies in this litigation. They have repeatedly suggested that Uber's counsel work with them so that the company can conduct the depositions the company needs before the discovery cutoff. If Uber seeks specific relief on this issue, then Plaintiff shall respond appropriately.

**WALKUP, MELODIA, KELLY & SCHOENBERGER**

By:     */s/ Matthew D. Davis*
        MATTHEW D. DAVIS
        SARA M. PETERS
        ANDREW P. McDEVITT
        Attorneys for Plaintiff JANE DOE

**PERKINS COIE LLP**

By:     */s/ Julie L. Hussey*
        JULIE L. HUSSEY
        JULIAN FELDBEIN-VINDERMAN
        Attorneys for Defendants UBER
        TECHNOLOGIES, INC., RASIER, LLC
        and RASIER-CA, LLC