UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-03310-JSC<br><br>**ORDER RE: UBER'S MOTION TO MAINTAIN CONFIDENTIALITY DESIGNATIONS**<br><br>Re: Dkt. No. 113 |

Jane Doe brings a negligence claim against Uber and its wholly owned subsidiaries Rasier, LLC and Rasier CA, LLC (collectively "Uber") after she was assaulted by a former Uber driver posing as a current Uber driver. In accordance with the parties' stipulated protective order, Uber has designated documents and testimony produced in discovery as confidential. (Dkt. No. 75.) Plaintiff challenges Uber's confidentiality designations for three deposition transcripts and Uber moves to maintain the confidentiality designation as required by Section 6.3 of the protective order.[1] (Dkt. No. 113.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and DENIES the motion to maintain the confidentiality designations. Uber has failed to demonstrate a risk of particularized harm if the at-issue testimony is public and thus has failed to demonstrate good cause to maintain the confidentiality designations.

**DISCUSSION**

As a general rule, "the public is permitted access to litigation documents and information

---
[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4 & 14.)

produced during discovery." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (internal citations and quotation marks omitted). However, pursuant to Federal of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order ... requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The district court has "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Although courts generally make a finding of good cause prior to issuing a protective order, a court need not do so if the parties stipulate to entry of a protective order. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). If the parties stipulate to a protective order without making a good cause showing, then the burden of proof as to the confidentiality of the documents at issue remains with the party seeking protection. *See id*. at 1211 n.1. Where a party challenges the confidential designation of certain documents with particularity, then "the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *In re Roman Catholic Archbishop*, 661 F.3d at 424.

The Ninth Circuit has set out the analysis that courts must engage in when considering whether to retain confidentiality over documents designated pursuant to a protective order:

> First, [a court] must determine whether 'particularized harm will result from disclosure of information to the public.' .... Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'

*In re Roman Catholic Archbishop*, 661 F.3d at 424 (internal quotations and citations omitted). The balancing test considers the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995):

1) whether disclosure will violate any privacy interests;
2) whether the information is being sought for a legitimate purpose or for an improper purpose;
3) whether disclosure of the information will cause a party

2

embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

*Glenmede Trust*, 56 F.3d at 483; *see In re Roman Catholic Archbishop*, 661 F.3d at 424 (directing courts to use these factors to determine whether good cause exists to maintain confidentiality designations).

Plaintiff challenges Uber's confidentiality designations with respect to the deposition testimony of three Uber witnesses: Wade Stormer, Billie Garrett, and Briana Lambert. Uber moves to maintain the confidentiality of nearly the entirety of these deposition transcripts because they include: (1) testimony which discusses the two alleged prior sexual assaults committed by Mr. Sherman; (2) testimony which "discusses Uber's confidential and proprietary internal systems and tools, strategies, investigation processes, procedures, findings, communications, and the recommendations of its investigative team as part of its identification of and response to reported safety incidents on Uber's platform"; and (3) testimony which would cause Uber or its employees embarrassment. (Dkt. No. 113 at 6.)

**A. Testimony About Prior Sexual Assault Incidents**

Uber insists that de-designating deposition testimony regarding the January and June 2018 incidents with Mr. Sherman "would constitute a serious invasion of third-party privacy expectations, hamper future incident investigations and attempts to gather data to improve public safety, and create a chilling effect on whether victims choose to report underlying assaults in the first place knowing their reports may be produced in unrelated litigation." (Dkt. No. 113 at 9.) The problem with Uber's argument, however, is that Plaintiff does not seek information which would violate these third-party's privacy rights; that is, Plaintiff agrees that identifying information—names, language spoke, residency, citizenship, or "possibly embarrassing" details of the incidents are confidential. (Dkt. No. 117-4 at 6-7.)

To the extent that Uber contends that the third parties also have a privacy interest in the

3

1  fact that they reported these incidents to Uber, even if the person doing the reporting is not
2  identified, the Court is unpersuaded. To the contrary, information such as this is routinely
3  discoverable and non-confidential. *See, e.g.*, *Shepherd v. Neuschmid*, No. 19-CV-0084 JAM DB,
4  2021 WL 1172915, at *6 (E.D. Cal. Mar. 29, 2021) (ordering defendant to produce ten years'
5  worth of complaints and grievances against the named officer in an excessive force claim because
6  defendant failed to explain why redacting identifying information for the complainants and other
7  individuals named in the complaint was not adequate to protect their privacy interests); *Ramirez v.
8  Gutierrez*, No. 20-CV-1109-MMA(BLM), 2021 WL 4776332, at *6 (S.D. Cal. Oct. 12, 2021)
9  (collecting cases ordering production of redacted grievance information). *In Foltz v. State Farm
10 Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003), for example, the Ninth Circuit found that
11 that the district court erred in sealing certain documents because the "limited number of third-party
12 medical and personnel records can be redacted easily to protect third-party privacy interests while
13 leaving other meaningful information." The court reasoned that "[s]imply redacting the
14 identifying information of third parties (e.g., their names, addresses, telephone numbers, and
15 social security numbers) from these records and disclosing the remaining information would not
16 injure the third parties but would reveal only State Farm's actions in processing personal injury
17 claims." *Id*. So too here.

18 The cases Uber relies upon are inapposite. *See, e.g.*, *Morales v. Superior Ct*., 99 Cal. App.
19 3d 283, 292 (1979) (concluding that the privacy rights of third parties who had sexual relations
20 with the plaintiff in a wrongful death suits required redaction of their names, current addresses and
21 phone numbers); *Puerto v. Superior Ct*., 158 Cal. App. 4th 1242, 1252 (2008) ("Wild Oats's
22 current and former employees unquestionably have a legitimate expectation of privacy in their
23 addresses and telephone numbers"). There is no question here that the third parties have a privacy
24 interest in their names and any identifying information, but this is not the information at issue.

25 Accordingly, Uber has failed to demonstrate a particularized risk of harm with respect to
26 the testimony regarding the January and June 2018 incidents with Mr. Sherman, provided any
27 identifying information is redacted. In particular, Ms. Lambert's deposition testimony includes
28 discussion of the transcript of Ms. Lambert's call with one of the victims. To the extent that the

4

1 transcript includes the victim's name or other identifying information, good cause exists to
2 maintain the confidentiality of that information. (Dkt. No. 112-8.) The parties shall meet and
3 confer regarding the scope of these redactions.

### B. Testimony About Uber's Internal Systems

Next, Uber insists that the deposition testimony discusses Uber's confidential and proprietary processes, policies, and procedures for investigating reported safety incidents. Uber relies upon the Declaration of Matthew Baker who is Uber's U.S. and Canada Safety Support Program lead. (Dkt. No. 112-1.) Mr. Baker attests that Uber treats its "internal knowledge base," investigation "workflows," and "support logic" as strictly confidential and limits even internal access to this information. (*Id*. at ¶¶ 5-6.) Mr. Baker expresses concern should Uber's competitors gain access this information which he attests would

> give the competitor an unfair competitive advantage by revealing what types of tools and systems Uber has created, what types of data Uber collects regarding trips that were facilitated through its platform, what tools Uber uses to evaluate and collect that data, what the limitations of Uber's data collection practices are (if any), and Uber's methodology for determining what actions it make [sic] take on a driver account after investigating a reported safety incident.

(*Id*. at ¶ 8.) Finally, Mr. Baker raises the prospect that "publicly disclosing Uber's investigative processes for reported safety incidents would allow criminal actors to exploit Uber's processes, investigation, and deactivation procedures to their advantage." (*Id*. at ¶ 9.)

While revealing specific information regarding the tools and systems that Uber has created for investigating reported safety incidents might put Uber at a competitive disadvantage, Uber has not made a showing that any specific portion of the at-issue deposition testimony would reveal anything specific regarding these tools and systems. Instead, Uber seeks to maintain the confidentiality of nearly every aspect of the testimony regarding Uber's investigation of reported safety incidents. Uber rests on broad claims of confidentiality, proprietary information, and competitive injury without making a particularized showing with respect to *any* testimony. *See Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are not sufficient). Indeed, Mr. Baker makes the same generic statement with respect to each of the three deposition

5

transcripts:

> This testimony contains confidential and proprietary information regarding Uber's processes, policies, and procedures for investigating reported safety incidents related to its platform. In addition, public disclosure of Mr. Stormer's [Ms. Garrett's and Ms. Lambert's] testimony regarding two reported safety incidents in January and June 2018, would violate the third-party privacy rights of the reporting parties.

(Dkt. No. 112-1 at 3-4.) Likewise, Uber uses the same generic statements as the reason for these confidentiality designations: "Confidential and proprietary information regarding Uber's classification of reported safety incidents and data monitoring."; "Confidential and proprietary information regarding Uber's processes and procedures for investigating and responding to reported safety incidents." (Dkt. No. 113 at 18-25.)

Courts routinely reject boilerplate assertions of confidentiality such as this. *See, e.g.*, *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 5012679, at *5 (N.D. Cal. Aug. 24, 2015) (finding that the "boilerplate, vague, and speculative explanation" that "'the information could be used by Sophos's competitors to Sophos's disadvantage,' as it could be used to 'recreate the features of Sophos's products'" failed to establish that the information was in fact confidential); *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV01846 LHK PSG, 2013 WL 412864, at *2 (N.D. Cal. Feb. 1, 2013) ("Although Samsung recites boilerplate terms that this information is proprietary and confidential, it does not provide a particularized showing of how this information would be detrimental if disclosed."); *Welle v. Provident Life & Accident Ins. Co.*, No. 3:12–cv–3016 EMC (KAW), 2013 WL 6055369, at *2 (N.D. Cal. Nov. 14, 2013) ("although [defendant] identifies the information at issue as proprietary and confidential, it does not provide reasons beyond the boilerplate references to competitive disadvantage if the information were publicly available."); *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. 12–cv–1971–CW, 2013 WL 4049686, at *1 (N.D. Cal. Aug. 8, 2013) (denying sealing where party "failed to state what harm [it] would experience if this material were publicly disclosed or to provide any specific reasons, supported by facts, that could outweigh the public policy favoring public access to court filings.").

In *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008), on which Uber relies, the

trade secret information at issue was "the pricing terms, royalty rates, and guaranteed minimum payment terms found in paragraph 6 of the 2006 Licensing Agreement." Uber has not identified any similar specific information in the deposition testimony and instead broadly asserts a risk of competitive injury with respect to over 200 pages of deposition testimony.

Uber's related argument that criminal actors could "exploit Uber's investigative processes" resulting in an increased risk to the safety of both riders and drivers is likewise unsupported. (Dkt. No. 112-1 at ¶ 9.) Uber fails to make any showing that a criminal actor could glean any information from this deposition testimony that would put riders or drivers more at risk. Uber's policy with respect to notifying law enforcement of safety incidents might be of interest to the public, but it is not confidential information for which Uber has made a showing of any particularized harm from disclosure.

Accordingly, Uber has failed to demonstrate a particularized risk of competitive or other harm if the at-issue deposition testimony regarding its processes, policies, and procedures for investigating reported safety incidents is made public.

### C. Testimony That Could Cause Embarrassment

Finally, Uber contends that disclosure of the deposition testimony could cause it economic harm and undermine the public's confidence in Uber. Uber's argument here—as with the potential for competitive injury—is neither specific nor narrowly tailored to particular portions of the deposition transcripts, and instead, is made with the same broad brushstrokes the Court rejected above. To the extent that Uber contends that disclosure of the testimony could cause the deponents themselves embarrassment, the Court is not persuaded.

\*\*\*

Uber, as the party seeking to maintain the confidentiality of these deposition transcripts was required to "allege specific prejudice or harm." *Phillips*, 307 F.3d at 1210. Uber's "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do[es] not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (internal citation and quotation marks omitted). Uber has thus failed to demonstrate good cause to maintain the confidentiality of the deposition transcripts.

**D.** *Glenmede Trust* **Factors**

Because the Court has concluded that Uber failed to satisfy the first part of the *In re Roman Catholic Archbishop* test which requires a showing that "particularized harm will result from disclosure of information to the public," the Court need not consider the second step—the *Glenmede Trust* factors. *In re Roman Catholic Archbishop*, 661 F.3d at 424.

## CONCLUSION

For the reasons stated above, Uber's motion to maintain the confidentiality designations is DENIED. The parties shall meet and confer via video to discuss the scope of any redactions regarding the prior sexual assault incidents consistent with this Order.

The administrative motions to seal at Docket Nos. 112 and 117 are denied without prejudice to renewal in a more narrowly tailored form consistent with this Order. Uber has until December 1, 2021 to file narrowly tailored versions of these administrative motions to seal consistent with this Order.

While the Court has vacated the hearing on this motion, the Court will still hold a Case Management Conference at 9:30 a.m. on November 18, 2021

This Order disposes of Docket Nos. 112, 113, and 117.

**IT IS SO ORDERED.**

Dated: November 15, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge