UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>            Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>            Defendants. | Case No. 19-cv-03310-JSC<br><br>**ORDER RE: UBER'S MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS**<br><br>Re: Dkt. No. 177 |

Jane Doe brings a negligence claim against Uber and its wholly owned subsidiaries Rasier, LLC and Rasier CA, LLC (collectively "Uber") arising from an assault by a former Uber driver posing as a current Uber driver. In accordance with the parties' stipulated protective order, Uber has designated certain documents and testimony produced in discovery as confidential. (Dkt. No. 75.) Plaintiff has challenged Uber's confidentiality designations for the deposition transcript of Abbie Ding; as a result, Uber moves to maintain the confidentiality designations as required by Section 6.3 of the protective order. (Dkt. No. 177-4.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the March 24, 2022 hearing, and GRANTS IN PART AND DENIES IN PART the motion to maintain the confidentiality designations.

**LEGAL STANDARD**

As a general rule, "the public is permitted access to litigation documents and information produced during discovery." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (internal citations and quotation marks omitted). However, pursuant to Federal of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order ... requiring that a trade secret or other confidential research, development, or commercial information not be

revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The district court has "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Although courts generally make a finding of good cause prior to issuing a protective order, a court need not do so if the parties stipulate to entry of a protective order. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). If the parties stipulate to a protective order without making a good cause showing, then the burden of proof as to the confidentiality of the documents at issue remains with the party seeking protection. *See id*. at 1211 n.1. Where a party challenges the confidential designation of certain documents with particularity, then "the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *In re Roman Catholic Archbishop*, 661 F.3d at 424.

The Ninth Circuit demands that courts engage in the following analysis when considering whether to retain confidentiality over documents designated pursuant to a protective order:

> First, [a court] must determine whether 'particularized harm will result from disclosure of information to the public.' .... Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'

*In re Roman Catholic Archbishop*, 661 F.3d at 424 (internal quotations and citations omitted). The balancing test considers the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995):

1) whether disclosure will violate any privacy interests;
2) whether the information is being sought for a legitimate purpose or for an improper purpose;
3) whether disclosure of the information will cause a party embarrassment;
4) whether confidentiality is being sought over information important to public health and safety;
5) whether the sharing of information among litigants will promote fairness and efficiency;
6) whether a party benefitting from the order of confidentiality is a public entity or official; and

       7) whether the case involves issues important to the public.

*Glenmede Trust*, 56 F.3d at 483; *see In re Roman Catholic Archbishop*, 661 F.3d at 424 (directing courts to use these factors to determine whether good cause exists to maintain confidentiality designations).

## DISCUSSION

Uber moves to maintain the confidentiality of portions of the deposition of Abbie Ding on the grounds that the matters discussed are trade secrets. In particular, Uber contends Ms. Ding's testimony regarding a confidential market survey would reveal trade secret information. The Court agrees, but only with respect to a small portion of Ms. Ding's testimony.

As a threshold matter, several of the portions of Ms. Ding's testimony which Uber contends contain trade secret information do not even discuss the market survey which forms the basis of Uber's claim of confidentiality. (Dkt. No. 177-6, Ding Depo. at 32:6-11; 34:14-35:3.) Because Uber's entire motion is predicated on its argument that her testimony reveals trade secret information regarding a market survey and presentation discussing that survey, Uber has not satisfied its burden with respect to this testimony.

To the extent that the remaining testimony discusses the survey, Uber has failed to demonstrate that the entire discussion reveals Uber's trade secret information. The Ninth Circuit has held that "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (quoting Restatement (First) of Torts § 757 cmt. b); *see also Arebalo v. Apple, Inc.*, No. 5:19-CV-03034-EJD, 2022 WL 580865, at *2 (N.D. Cal. Feb. 25, 2022) (applying *Clark* standard to a motion to seal); *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978) ("the right to inspect and copy judicial records is not absolute," and, in particular, "the common-law right of inspection has bowed before the power of a court to insure that its records are not used ... as sources of business information that might harm a litigant's competitive standing.").

Uber contends that Ms. Ding's testimony regarding the survey is a protectable trade secret because "there is no question that the materials in question derive independent economic value."

3

(Dkt. No. 177-4 at 8.) As support for this statement, Uber cites to Ms. Ding's declaration attesting that "[t]his information is highly sensitive and reveals information about user perception of Uber and user awareness of various safety features in the Uber App which would be of value to Uber's competitors and would harm Uber's competitive advantage." (Dkt. No. 177-8 at ¶ 4.) The Court agrees that the results of Uber's ridership survey could be of economic value to its competitors; it would provide them with information they could otherwise only obtain by paying for a survey themselves and that survey would not necessarily give them information about Uber's users. The question, then, is whether the portions of Ms. Ding's testimony that Uber seeks to seal reveal the results of that survey. Some of it does not. The portions of Ms. Ding's testimony which indicate that she cannot recall the survey results or where she opines regarding a hypothetical survey question do not reveal any trade secret information. (Dkt. No. 177-6, Ding Depo. at 60:2-7; 61:25-62:17.) However, the remainder of Ms. Ding's testimony which implicates the survey design and results would reveal Uber's trade secret information. (*Id.* at 60:13-61:14; 69:1-70:14; 70:18-25.)

Because Uber has met its burden of demonstrating a particularized risk of harm from disclosure of this final category of Ms. Ding's deposition testimony, the Court proceeds to apply the *Glenmede Trust* balancing test. *Glenmede Trust*, 56 F.3d at 483; *see In re Roman Catholic Archbishop*, 661 F.3d at 424 ("if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether [maintaining] a protective order is necessary.") (internal quotations and citations omitted).

First, having concluded that revealing this information would necessarily reveal Uber's trade secrets, the first factor—whether disclosure would violate any privacy interests—weighs in Uber's favor.

Second, as for whether the information is sought for a legitimate purpose or an improper purpose, Uber insists that Plaintiff only wants the information for the improper purpose of sharing it with the media or third parties, as she has with prior de-designated deposition testimony. Plaintiff does not identify a legitimate purpose that disclosure of this information would serve; instead, she argues that the information "touches on matters of health and safety" and that sharing the information "will promote fairness and efficiency." (Dkt. No. 185 at 5.) However, Plaintiff is

4

simply parroting the fourth and fifth elements of the balancing test, without providing a specific basis for *why* it is in the public's interest or *how* it will promote fairness or efficiency to reveal the specific survey design or results. *Glenmede Trust*, 56 F.3d at 483. That Uber conducted market surveys of current riders to gauge their perceptions of rider safety is now part of the public record (Dkt. No. 177-4 at 10); Plaintiff has not shown how the specific results of those surveys, or the specific questions asked, would serve the public interest. Accordingly, without any specific identification of the public interest, the second, fourth, and fifth factors weigh against disclosure.

Third, while Uber does not contend that revealing this information would cause it embarrassment, it has demonstrated the potential for harm to its commercial interests if this information were revealed.

Fourth, Uber—the party benefitting from the order of confidentiality—is not a public entity or official, and thus this factor is neutral.

Finally, while Uber does not dispute that sexual assault is a serious issue, it maintains that the at-issue testimony is tangential to the assault as it does not address the assault, the assailant, or Uber's investigation of the assailant's conduct. Plaintiff does not suggest otherwise in her opposition.

On balance, the Court concludes that Uber's particularized risk of harm from disclosure of portions of these four pages of Ms. Ding's deposition testimony outweighs the minimal public interest in its trade secret information.

## CONCLUSION

For the reasons stated above, Uber's motion to retain confidentiality designations is GRANTED IN PART and DENIED IN PART. (Dkt. No. 177-4.)

Uber's accompanying administrative motion to seal is DENIED IN PART and GRANTED IN PART. (Dkt. No. 177.) The motion is granted as to the aforementioned deposition testimony which discusses Uber's trade secrets. (Dkt. No. 177-6, Ding Depo. at 60:13-61:14; 69:1-70:14; 70:18-25.) The motion is also granted as to paragraphs 2, 3, and 6 of the Ding Declaration. (Dkt. No. 177-8.) The motion is denied as to Uber's discussion of the survey in its brief—Uber's attorney argument does not reveal the specific survey design or results. (Dkt. No. 177-4.)

This Order disposes of Docket No. 177.

**IT IS SO ORDERED.**

Dated: March 21, 2022

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge