Julie L. Hussey, Bar No. 237711
JHussey@perkinscoie.com
Julian Feldbein-Vinderman, Bar No. 307838
JFeldbeinVinderman@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA  92130-2080
Telephone: 858.720.5700
Facsimile: 858.720.5799

Attorneys for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, an individual using a pseudonym,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC; RASIER-CA, LLC,<br><br>Defendants. | Case No. 3:19-cv-03310-JSC<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC AND RASIER-CA, LLC'S RENEWED MOTION FOR A TEMPORARY STAY**<br><br>Date: May 12, 2022<br>Time: 9 a.m.<br>Location: San Francisco Courthouse, Courtroom E—15th Floor<br>Judge: Hon. Jacqueline Scott Corley |

## INTRODUCTION

At its October 21, 2021 hearing on Defendants' motion to stay this case pending an opinion from the California Court of Appeal, the Court invited Defendants to re-file their motion in the event the circumstances changed—especially if "we have more certainty" regarding the timeline of the Court of Appeal's ruling.  *See* Ex. 1 to Dec. of J. Feldbein-Vinderman at 5:11–12. The circumstances have evolved in two significant ways such that a brief stay is warranted.

First, oral argument in the state-court appeal has now been set to occur nearly two months *before* the current deadline for summary judgment in this case.  At the October 21, 2021 hearing, this Court specifically noted that a stay could be warranted if this Court was "about to rule on summary judgment" and "argument [is] set in [the Court of Appeal] case." *Id.* at 5:20–22. That precise summary judgment scenario predicted by the Court has come to pass.  The California Court of Appeal will hear argument on May 17, 2022, regarding whether Uber owed a duty to warn or protect riders from unforeseeable criminal acts committed by third-parties.  Defendants' deadline to file their summary judgment motion is June 9, 2022, and the Court's hearing on that motion is set for July 28, 2022.  In other words, the Court of Appeal case will be heard weeks *before* the commencement of dispositive motion practice, and the court will be drafting its opinion (which is expected to issue *within 90 days of argument*) while the parties are briefing their motions.  The parties and the Court will benefit from a brief stay to allow the Court of Appeal to issue its opinion, which will provide critical guidance on issues germane to summary judgment and, if necessary, trial.

Second, the plaintiffs in the state court of appeal have filed a request for judicial notice that requires the California Court of Appeal to consider Plaintiff's theory of misfeasance here.  Specifically, the state-court plaintiffs have requested judicial notice of the allegations in Plaintiff's First Amended Complaint, as well as this Court's decision finding those allegations stated a viable claim for negligence based on misfeasance, to support their contention that they can file an amended complaint that alleges a viable negligence claim.  In ruling on that request for judicial notice, the California Court of Appeal will have to address—either expressly or

impliedly—whether the First Amended Complaint's allegations amount to misfeasance under California law. So the opinion issued from the California Court of Appeal will either resolve, or at least substantially clarify, the legal issues before this Court.

The intersection of tort liability, unforeseeable third-party criminal conduct, and ride sharing applications to be considered by the Court of Appeal is a unique blend of facts and law. The facts of the case before the Court of Appeal are nearly identical to those here. The Court of Appeal case, also captioned *Doe v. Uber*, concerns three individuals who (like Plaintiff) were assaulted after they voluntarily, but mistakenly, entered the car of third-party criminals posing as authorized drivers on the Uber platform. The legal question at issue in both cases are the same: whether Uber's actions constitute "misfeasance", thereby creating a duty of protection between Uber and its riders in third-party criminal situations.

The Court of Appeal will be the highest court in the state of California to provide guidance on this new issue. "[W]here there is no convincing evidence that the state supreme court would decide differently, **a federal court is obligated to follow the decisions of the state's intermediate appellate courts**." *In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857, 861 (9th Cir. 1997) (emphasis added).

This Court previously stated that an opinion from the Court of Appeal will be "useful." Ex. 1 to Dec. of J. Feldbein-Vinderman at 5:15. Defendants agree. The Court of Appeal's opinion could greatly streamline (or even moot) remaining expert, summary judgment, and trial issues. A brief stay pending the issuance of the Court of Appeal's opinion is efficient and appropriate considering the almost identical nature of this case and the case pending before the Court of Appeal. Plaintiff's strategy of attempting to rush this case through before the Court of Appeal can render an opinion is inefficient, and wastes the resources of the parties and this Court. The Court should stay this case pending a decision from the Court of Appeal.

## BACKGROUND

There are no more concerns about uncertainty of the Court of Appeal's schedule: argument is set for May 17, 2022 and is mere weeks away. With the expedited argument date, Defendants expect the appellate court to render a quick decision. The **California Constitution**

**requires appellate judges to issue opinions within 90 days of oral argument** or else have their pay suspended. *See* Cal. Const. art. VI, § 19; Cal. Gov't Code § 68210 (requiring each judge to submit an "an affidavit stating that no cause before him remains pending and undetermined for 90 days after it has been submitted for decision").  So, this Court can reasonably expect a decision no later than Monday, August 15, 2022.  Consequently, any stay granted by the Court would not be long or indeterminate.  Crucially, however, the appellate court may not render a ruling before the June 9, 2022 dispositive motion deadline.  A brief stay therefore makes sense, because the forthcoming Court of Appeal opinion will be relied upon by both parties in their briefing, and could dispose of this entire case if the state trial court's ruling is affirmed.

The question to be considered by the Court of Appeal bears directly on this case, namely: Does Uber owe a duty to warn of or protect against the actions of third-party criminals?  The California Superior Court correctly held no duty existed because Uber did not commit an act of misfeasance that would potentially give rise to such a duty.  If the Court of Appeal agrees and affirms, Defendants believe its decision will be dispositive of Plaintiff's sole claim in this case, a negligence claim that seeks to hold Defendants liable for allegedly failing to warn or protect her from the acts of a third-party criminal.

The legal questions are so identical that appellants in the Court of Appeal matter filed a reply brief discussing at length the similarities between these cases.  In fact, the cases are so similar that, on March 9, 2022, counsel for the plaintiffs in the state court appeal requested that the Court of Appeal take judicial notice of the First Amended Complaint in this case, as well as this Court's decision refusing to dismiss Plaintiffs negligence-by-misfeasance claim. Dec. of J. Feldbein-Vinderman at ¶ 3.  So, the Court of Appeal will necessarily address the viability of the theory of misfeasance that Plaintiff advances here.

A review of the appellate filings throws such identity of the two cases into sharp focus:

- "Jane Doe No. 1 inadvertently got into a Fake Uber, believing it to be a real Uber identified by the Uber decal.  Instead, it was an imposter adept at impersonating a real Uber driver."

- "There was an Uber decal on the windshield of a car that showed up at the location at which Jane Doe expected to be picked up. Jane Doe, whose primary language is not English, got into that car only because it had an Uber decal in the window and she believed, perhaps mistakenly, that the driver said her boyfriend's name when she neared the car."

The first of these allegations is from the appellant's brief in the California appeal. The second is from Plaintiff's First Amended Complaint in this case. They are near carbon copies of one another: both plaintiffs allege they voluntarily, but mistakenly, entered a car by someone pretending to be an authorized driver on the Uber platform, and both allege they did so due in part to the presence of an Uber decal. Both cases involve identical claims of negligence against Defendants.

Plaintiff's expert reports (which Defendants reserve the right to challenge) further highlight the identical factual and legal theories that bind the two cases (emphases added):

| Plaintiff's Expert Reports | Appellants' Court of Appeal Briefing |
|---|---|
| "As noted above, the primary function of the Uber rideshare platform is to **match two strangers** . . . It was foreseeable, based on what was **commonly known at the time** Uber launched its rideshare system, that sexual predators would take advantage of any failure mode in the rideshare system that put a potential **victim in a vulnerable position** relative to the predator." Donndelinger Report at Pg. 6. | "Uber was **aware of the risk** associated with its **inherently faulty matching system** prior to Jane Doe No. 1's abduction on June 18, 2017, but concealed that risk from regulators and law enforcement so Uber can profit by connecting **vulnerable intoxicated females**, including Appellants, with vehicles emblazoned with Uber decals." Reply at Pgs. 14–15. |
| "**Uber has an ethical responsibility** to the clients they serve to have evidence-based policies and procedures in place to protect their riders from sexual violence." Jeglic Report at Pg. 5. | "**Uber has a moral obligation** to its female customers to prevent abductions by serial rapists." Reply at Pg. 20. |
| "**Uber has the capacity to prevent indirect harm from occurring at low cost** relative to available resources. Uber's product enables, facilitates, and limits the interaction among drivers and riders, shapes the ways in which parties transact | "**The cost to enhance the matching system is minimal** and would not interfere, but would enhance the ride hailing system." Reply at Pg. 20. |

| | |
|---|---|
| through specific processes, and sets expectations about the transaction between the parties." Pattit Report at Pg. 12. | |
| "When users were deactivated, **Uber made no effort to retrieve Uber related collateral** that could be used to misrepresent an individual's affiliation with the company going forward." Rando Report at Pg. 7. | "As an addition to this allegation, evidence has now been made public that **Uber does not retrieve Uber decals** from drivers deactivated for sexual assault." Reply at Pg. 12. |

The above are only a *fraction* of available examples demonstrating the similarity between the two cases.

Simply put, the similarity is so striking that, if Defendants put unmarked materials from both cases before the Court, it would be almost impossible to tell which case was which. And it follows that, because the facts are nearly identical and the negligence claims are the same, both cases will be controlled by a single dispositive issue: Does Uber owe a duty under the law to warn of or protect against third-party criminal acts? If the answer is no, then Plaintiff's claim here is legally foreclosed. Defendants cannot be liable under a theory of negligence if the foundational element of negligence—duty—cannot be satisfied as a matter of law. The forthcoming *Doe* opinion may not only control (as this Court is sitting in diversity, applying California law), but is also vital to instruct the parties' experts (prior to their depositions) as to the correct legal standard.

## ARGUMENT

### I.   Legal Standard

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "[I]ncidental to th[at] power" is "the power to stay proceedings." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When a party moves for "a pending proceeding [to] be stayed," courts must weigh "the competing interests which will be affected by the granting or refusal to grant [the] stay." *CMAX*, 300 F.2d at 268. Those "competing interests" include (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to

DEFENDANTS' RENEWED MOTION FOR A TEMPORARY STAY
CASE NO. 3:19-CV-03310-JSC

result from a stay;" (2) "the possible damage which may result from the granting of a stay," and (3) "the hardship or inequity which a party may suffer in being required to go forward." *Id.* All three factors favor a stay here.

**II.     A stay will advance the orderly course of justice and judicial economy, because the forthcoming California Court of Appeal decision will provide critical guidance.**

As described above, the California Court of Appeal is set to decide the sole issue of law in this case, on a near-identical set of facts. The forthcoming opinion will greatly streamline issues for expert depositions, summary judgment or other dispositive motion briefing, and, if necessary, trial. A stay unquestionably serves the issues of judicial economy.

"[C]onsiderations of judicial economy are highly relevant." *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014) (finding judicial economy weighed in favor of stay). And so, if resolution of another matter "will help decide the factual and legal issues before the court," this factor weighs in favor of a stay. *Jinni Tech Ltd. v. RED.com, Inc.*, No. C17-0217JLR, 2018 WL 5312200, at *6 (W.D. Wash. Oct. 26, 2018). Stated differently, when the "pending resolution of independent proceedings" may allow a court to avoid unnecessary and burdensome litigation, a stay should be granted. *See id.* at *3; *Branded, LLC v. Vans, Inc.*, No. SACV 20-2085 JVS (KESx), 2020 WL 8385656, at *2 (C.D. Cal. Dec. 7, 2020); *Phan v. Transamerica Premier Life Ins.*, No. 20-cv-03665-BLF, 2020 WL 5576358, at *3 (N.D. Cal. Sept. 17, 2020); *Minor v. FedEx*, No. C 09–1375 TEH, 2009 WL 1955816, at *1 (N.D. Cal. July 6, 2009). This is true even if a "pending case[] with the appellate court[] won't completely dispose of every single merits issue in this case." *Phan*, 2020 WL 5576358, at *3.

But here, an affirmance by the California Court of Appeal decision *can* dispose of every issue in this case. Both that case and Plaintiff's case involve individuals who mistakenly entered vehicles of third-party criminals that were impersonating authorized drivers on the Uber platform. Both cases involve allegations that the plaintiffs entered those vehicles after seeing Uber decals on the cars and that Uber's general business model made the world less safe. Both cases accuse Uber of negligence due to its alleged failure to warn of or protect the victims from a criminal act of a third-party.

And it is that last question that the California Court of Appeal will decide: does a duty exist for a company like Uber to protect riders from third-party criminal acts? If the answer is no, then a claim of negligence cannot be supported as a matter of law, and Defendants believe they are entitled to summary judgment.

Whether a defendant owes a duty of care "is a question of law" determined by the court. *Brown v. USA Taekwondo*, 483 P.3d 159, 164 (Cal. 2021). When sitting in diversity, federal courts must "follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 874 (9th Cir. 2021) (quoting *Stoner v. N.Y. Life Ins.*, 311 U.S. 464, 467 (1940)). Because the California Supreme Court has not ruled on the issue of whether Defendants owe a duty in a case such as this, the Court of Appeal's decision on this specific issue will provide critical guidance to this Court. *Id.*

Stays are regularly granted in expectation of such precedents. *See Phan*, 2020 WL 5576358, at *3 (granting a stay in anticipation of a California Supreme Court ruling that could "clarif[y]" "major issues in th[e] case"); *Minor*, 2009 WL 1955816, at *1 (granting a stay where the California Supreme Court had "taken up the precise question at issue"); *Wolf v. Loring Ward Int'l Ltd.*, No. CV 05-3535 NM (RZX), 2005 WL 8156611, at *3 (C.D. Cal. Nov. 10, 2005) (granting a stay where the intermediate appellate court's ruling would "materially alter[]" the federal case).

A stay would greatly benefit both parties, who face rapidly-approaching expert depositions and dispositive motion deadlines. Opinions provided by either party's experts regarding issues such duty, safety measures, industry standards, or related issues are inextricably tied to the state of the law, and any actions Plaintiff claims Uber should have taken. There is simply no escaping this conclusion. Clarity on the state of the law would aid both parties in conducting expert depositions, as well as any future *Daubert* challenges to expert testimony, and would avoid the parties incurring the cost and time of re-issuing expert reports following the state appellate court decision.

1  Proceeding with expert depositions without confirmation from the Court of Appeal "would waste judicial resources and be burdensome upon the parties" to "permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of th[is] case at the same time" the sole question at issue is being decided in the court of appeal. *See Levya v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).  Having the parties brief dispositive motions on the question of negligence without clarity as to the scope of Defendant's duty would similarly waste the resources of the parties and the Court, and would result in duplicative briefing or, if the case proceeds to trial, an additional appeal.  Pushing forward with a trial before the Court of Appeal renders an opinion would result in a slew of unnecessary briefing, all of which can be avoided.  "This factor weighs heavily in favor of a stay." *Phan*, 2020 WL 5576358, at *3.

### III.    Plaintiff will not be harmed by a brief stay.

In denying Defendants' prior motion to stay, the Court expressed concern regarding the effects of a stay on Plaintiff.  But, Plaintiff has already delayed this case by pushing her initial deposition back a month in order to vacation at the home of Plaintiff's counsel (*see* Ex. 2 to Dec. of J. Feldbein-Vinderman at 284:11–21, 287:10–20), then forcing a second round of depositions after instructions not to answer. Even now, just the other week Plaintiff untimely supplemented her interrogatory responses on her theories of liability in this case that appear nowhere in the First Amended Complaint with 75 pages of contradictory information provided to Defendants only *after* the conclusion of those depositions, answering in writing questions she refused to answer in deposition .

Courts typically find that a party will be harmed by a stay if they allege "continuing harm" or are seeking "injunctive or declaratory relief," *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005), or if "it appears likely the other proceedings will [not] be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Levya*, 593 F.2d at 864.  Here, Plaintiff seeks "only damages." *See Lockyer*, 398 F.3d at 1110.  And "a delay in recovering potential monetary damages is not sufficient harm to warrant [denial of] a stay."

*Tovar v. Hosp. Housekeeping Sys., Inc.*, No. CV 09–03487 MMM (RNBx), 2009 WL 10672526, at *4 (C.D. Cal. Nov. 2, 2009) (citing *CMAX*, 300 F.2d at 268–69; *Liberty Surplus Ins. v. IMR Contractors Corp.*, No. CV 08–5773 JSW, 2009 WL 1010842, *4 (N.D. Cal. Apr. 14, 2009).

The proposed length of the stay is reasonable. Defendants ask that this Court stay this case until the California Court of Appeal issues its forthcoming decision in *Jane Doe No. 1 et al. v. Uber Technologies, Inc. et al.*, Case No. B310131. Briefing in the appeal is complete and the matter will proceed to oral argument *only days after the court hears the motion to stay*. A stay will not prejudice either party, but will in fact benefit all because it will allow for the state appellate court to issue clarity on the law.

Stays of this kind are routinely granted, especially where, as here, "briefing has already begun." *Minor*, 2009 WL 1955816, at *1. Moreover, this is not a case of "special solicitude," like habeas proceedings, *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000), nor does it present an "urgent" issue, like" the statutory right to minimum compensation" under the FLSA, *Levya*, 593 F.2d at 864. As noted, damages claims are not urgent. *See Lockyer*, 398 F.3d at 1110. Indeed, because the reasonableness of the time is determined by the "urgency of the claims presented to the court," *Levya*, 593 F.2d at 864, longer and less definite stay periods are permissible in actions for damages, *see CMAX*, 300 F.2d at 268–69; *Tovar*, 2009 WL 10672526, at *4. This factor also favors granting a stay.

**IV.     Defendants will suffer significant hardship if a stay is denied.**

If a stay is not granted, Defendants will need to provide summary judgment briefing and conduct numerous expert depositions at great cost in the face of an area of law that will be imminently addressed by the Court of Appeal. Both of these issues can be cured by a simple, brief stay. Requiring Defendants to brief dispositive issues and or defend the case through trial will be extremely prejudicial, especially where Defendants expect the Court of Appeal will affirm the trial court. Apart from potentially having to do the same work twice, Defendants face a real risk of being unable to prepare their defenses for trial. This is unquestionably a significant hardship.

*First*, without a stay, Defendants will be required to "litigate the same issues in two separate fora": this Court and the Court of Appeal. *Branded*, 2020 WL 8385656, at *3. That is "certainly . . . a hardship." *Id.* As stated above, and as reiterated by the appellant in the court of appeal, the claims in both actions are virtually identical. Therefore, it would be unduly prejudicial to require Defendants to litigate the claims before this Court while an appeal is pending in the state court system that could be dispositive of this case.

*Second*, given the overlap in the claims at issue, there is a risk of inconsistent rulings. *Hawaii v. Trump*, 233 F. Supp. 3d 850, 856 (D. Haw. 2017) (finding duplicative litigation and the risk of inconsistent rulings warranted stay); *see SST Millennium LLC v. Mission St. Dev. LLC*, No. 18-cv-06684-YGR, 2019 WL 2342277, at *5 (N.D. Cal. June 3, 2019) (finding risk that arbitrator could find no primary liability while the court could find secondary liability a "clear case of hardship or inequity") (citation omitted). Defendants' motion for summary judgment is due in less than six weeks. Since the California Court of Appeal's decision may be binding precedent on this Court regarding the very existence of a legal duty, the risk of inconsistent rulings weighs in favor of granting a stay.

**V.     If the Court declines to grant a stay, it should nevertheless continue trial and all case deadlines to allow for the completion of fact and expert discovery.**

A stay will cure all the above issues. Nevertheless, in the event the Court disagrees, Defendants request the Court exercise its discretionary power and continue all case deadlines, including expert discovery, dispositive motion deadlines and trial. Though the combined parties will (perhaps needlessly) expend hundreds of thousands of dollars on expert depositions, this will at least allow the parties sufficient time to complete expert discovery, and brief their dispositive motions with the benefit of the forthcoming Court of Appeal opinion. Consequently, if the Court is disinclined to grant a full stay, Defendants request a trial continuance of six months, with a commensurate resetting of all deadlines. A trial continuance would permit parties to complete expert depositions and presumably prepare their briefing on a Motion for Judgment on the Pleadings and/or Motion for Summary Judgment with the benefit of guidance from the California Court of Appeal. Defendants seek this continuance in good faith, such that justice may be done.

### IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court stay this case, pending the issuance of a decision from the California Court of Appeal. After the Court of Appeal has ruled, Defendants request the Court reset the trial, as well as all commensurate expert and dispositive motion deadlines. Alternatively, Defendants request a continuance of six months, and a resetting of all dispositive motion and open expert discovery deadlines.

Dated:  April 27, 2022           **PERKINS COIE LLP**

By: */s/ Julie L. Hussey*
    Julie L. Hussey
    JHussey@perkinscoie.com
    Julian Feldbein-Vinderman
    JFeldbeinvinderman@perkinscoie.com

Attorneys for Defendants
Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC