Julie L. Hussey, Bar No. 237711
JHussey@perkinscoie.com
Julian Feldbein-Vinderman, Bar No. 307838
JFeldbeinVinderman@perkinscoie.com
Steven G. Williamson, Bar No. 343842
SWilliamson@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile:  +1.858.720.5799

Attorneys for Defendants Uber Technologies, Inc.,
Rasier, LLC, and Rasier-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, an individual using a pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC; RASIER-CA, LLC,<br><br>Defendants. | Case No. 3:19-cv-03310-JSC<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Julie L. Hussey, Declaration of Matthew Baker, Request for Judicial Notice, and [Proposed] Order]<br><br>Date:       August 4, 2022<br>Time:       9:00 a.m. PST<br>Location:  San Francisco Courthouse by Zoom<br>Courtroom: E—15th Floor<br>Judge:      Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 3

    A.    Plaintiff was familiar with the Uber platform and used it multiple times before the August 14, 2018 incident. ................................... 3

    B.    Prior to August 14, 2018, Plaintiff was aware of multiple incidents involving third-party criminals posing as authorized drivers on rideshare platforms and sexually assaulting riders. .................................. 4

    C.    On August 14, 2018, Plaintiff asked her boyfriend to request a ride for her through the Uber App to take her from a shopping center to her hotel. ................ 4

    D.    On August 14, 2018, Brandon Sherman was not an authorized driver on the Uber platform and had no access to the driver version of the Uber App. .............. 6

    E.    Procedural History ........................................................... 7

LEGAL STANDARD ............................................................................. 7

ARGUMENT ...................................................................................... 8

    A.    Plaintiff's negligence claim fails as a matter of law because Uber did not have a duty to protect or warn Plaintiff regarding third-party criminal conduct. ........................................................................ 9

        1.    Uber had no legal duty to protect or warn Plaintiff. ................................ 9

            a.    Plaintiff's theory of misfeasance is not legally viable because Sherman's criminal act was not a "necessary component" of Uber's own conduct. ........................ 10

            b.    Plaintiff's "facts" do not establish a viable theory of misfeasance. ............................................... 13

        2.    If this Court were to determine that Uber did have a duty, that duty should be limited under the *Rowland* factors. .............................. 19

        3.    Even if Uber has a general duty to warn or protect against third-party criminal conduct, Uber had no duty to Plaintiff here ...................... 23

    B.    Plaintiff's negligence claim also fails for lack of proximate cause. ................. 23

    C.    Summary judgment should be granted on Plaintiff's punitive damages claim. ........................................................................ 24

CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021) ...................................................................................9, 12, 19

*Butte Fire Cases*,
24 Cal. App. 5th 1150 (2018)...............................................................................25

*Camp v. California*,
184 Cal. App. 4th 967 (2010)................................................................................10

*Castaneda v. Olsher*,
41 Cal. 4th 1205 (2007) ...................................................................................19, 20

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004)...............................................................................13

*Cole v. CRST, Inc.*,
150 F. Supp. 3d 1163 (C.D. Cal. 2015)................................................................20

*Colonial Van & Storage, Inc. v. Super. Ct.*,
76 Cal. App. 5th 487 (2022)..................................................................................22

*Delgado v. Trax Bar & Grill*,
36 Cal. 4th 224 (2005) ..........................................................................................21

*Doe No. 1 v. Uber Techs., Inc.*,
___ Cal.Rptr.3d ___, 2022 WL 1769112 (Cal. Ct. App. June 1, 2022)........................... passim

*Doe v. U.S. Youth Soccer Ass'n*,
8 Cal. App. 5th 1118 (2017)............................................................................14, 18

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
30 Cal. 4th 1037 (2003) ........................................................................................24

*Franklin* v. *Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021)..............................................................................8, 12

*Garcia v. Paramount Citrus Ass'n*,
164 Cal. App. 4th 1448 (2008)..............................................................................21

*Gee v. Tenneco, Inc.*,
615 F.2d 857 (9th Cir. 1980)................................................................................13

*Gulf USA Corp. v. Fed. Ins. Co.*,
259 F.3d 1049 (9th Cir. 2001)...............................................................................8

3:19-CV-03310-JSC
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hanouchian v. Steele,*
   51 Cal. App. 5th 99 (2020).......................................................................................2, 19, 20, 21

*Hansra v. Super. Ct.,*
   7 Cal. App. 4th 630 (1992)........................................................................................16

*Hemmings v. Tidyman's Inc.,*
   285 F.3d 1174 (9th Cir. 2002)....................................................................................8

*Homedics, Inc. v. Valley Forge Ins. Co., a Pa. Corp.,*
   315 F.3d 1135 (9th Cir. 2003)....................................................................................13

*J.L. v. Children's Inst., Inc.,*
   177 Cal. App. 4th 388 (2009).....................................................................................20

*Johnson & Johnson Talcum Powder Cases,*
   37 Cal. App. 5th 292 (2019).......................................................................................25

*Joshua Tan v. Hydraulics Int'l, Inc.,*
   2021 WL 3744579 (C.D. Cal. July 22, 2021) ............................................................10

*Kesner v. Super. Ct.,*
   1 Cal. 5th 1132 (2016) ...............................................................................................23

*Kim v. County. of Monterey,*
   43 Cal. App. 5th 312 (2019).......................................................................................16, 18

*L. F. v. Lake Wash. Sch. Dist. 414,*
   947 F.3d 621 (9th Cir. 2020)......................................................................................8

*Lugtu v. Cal. Highway Patrol,*
   26 Cal. 4th 703 (2001) ...............................................................................................10

*Maner v. Dignity Health,*
   9 F.4th 1114 (9th Cir. 2021).......................................................................................10

*Margaret W. v. Kelley R.,*
   139 Cal. App. 4th 141 (2006).....................................................................................21, 22

*Melton v. Boustred,*
   183 Cal. App. 4th 521 (2010) ..................................................................................... passim

*Modisette v. Apple Inc.,*
   30 Cal. App. 5th 136 (2018)....................................................................................... passim

*Morales v. L.W. Blinn Lumber Co.,*
   9 Cal. App. 2d 292 (1935)...........................................................................................23

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Murray v. BEJ Minerals, LLC*,
   924 F.3d 1070 (9th Cir. 2019).................................................................................8

*Mut. Fund Invs.', Inc. v. Putnam Mgmt. Co.*,
   553 F.2d 620 (9th Cir. 1977)...............................................................................8, 10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000)..............................................................................8, 14

*Osteen v. Bayer Corp.*,
   726 F. App'x 614 (9th Cir. 2018) .............................................................................23

*People v. Stephenson*,
   10 Cal. 3d 652 (1974) ...............................................................................................14

*Posey v. California*,
   180 Cal. App. 3d 836 (1986)...............................................................................16, 18

*Randi W. v. Muroc Joint Unified Sch. Dist.*,
   14 Cal. 4th 1066 (1997) ............................................................................................18

*Rather v. City & County of San Francisco*,
   81 Cal. App. 2d 625 (1947).......................................................................................23

*Rodriguez v. Countrywide Homes*,
   668 F. Supp. 2d 1239 (E.D. Cal. 2009)...................................................................20

*Rowland v. Christian*,
   69 Cal. 2d 108 (1968) ....................................................................................... passim

*Russell v. Dep't of Corr. & Rehab.*,
   72 Cal. App. 5th 916 (2021)......................................................................................23

*Sakiyama v. AMF Bowling Ctrs., Inc.*,
   110 Cal. App. 4th 398 (2003)...............................................................................11, 20

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996) ....................................................................................................13

*Sharon P. v. Arman, Ltd.*,
   21 Cal. 4th 1181 (1999), *partially disapproved of on other grounds by Aguilar
   v. Atl. Richfield Co.*, 25 Cal. 4th 826 (2001)...........................................................22

*Shih v. Starbucks Corp.*,
   53 Cal. App. 5th 1063 (2020)....................................................................................24

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*State Dep't of State Hosps. v. Super. Ct.*,
  61 Cal. 4th 339 (2015) ...........................................................................................24

*Steinle v. United States*,
  17 F.4th 819 (9th Cir. 2021)....................................................................................8, 9

*Tarasoff v. Regents of Univ. of Cal.*,
  17 Cal. 3d 425 (1976) ...........................................................................................9, 17

*Weirum v. RKO Gen., Inc.*,
  15 Cal. 3d 40 (1975)............................................................................................12, 14

*Wiener v. Southcoast Childcare Ctrs., Inc.*,
  32 Cal. 4th 1138 (2004) .......................................................................................20, 21

*Williams v. Fremont Corners, Inc.*,
  37 Cal. App. 5th 654 (2019)......................................................................................22

**STATUTES**

Cal. Civ. Code § 3294(a)..................................................................................24, 25

Cal. Civ. Code § 3294(c).........................................................................................24

Cal. Civ. Code § 3294(c)(1).....................................................................................25

Cal. Civ. Code § 3294(c)(2).....................................................................................25

Cal. Civ. Code § 3294(c)(3).....................................................................................24

**RULES**

Fed. R. Civ. P. 56(a)...........................................................................................7, 13

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 318 & *cmt. d* (1965) ...................................16

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 4, 2022 at 9:00 a.m. or as soon thereafter as this Motion for Summary Judgment ("Motion") may be heard in the above-entitled court, located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC ("Defendants"), by and through their counsel of record, will and hereby do, move the Court for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56.

This motion is made on the grounds that there is no genuine dispute as to any material fact and the Defendants are entitled to judgment as a matter of law.  Specifically, Plaintiff's First, Second, and Third Causes of Action were dismissed without leave to amend at the motion to dismiss stage.  Plaintiff's remaining Fourth Cause of Action for Negligence fails as a matter of law because Defendants did not owe Plaintiff a duty to warn or protect her from the third-party criminal conduct of Brandon Sherman.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities herein, the Declarations of Julie L. Hussey and Matthew Baker along with all supporting exhibits, the Request for Judicial Notice, the pleadings and papers on file in this action and all related cases, any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

Dated:  June 30, 2022

**PERKINS COIE LLP**

By: */s/ Julie L. Hussey*
    Julie L. Hussey, Bar No. 237711
    JHussey@perkinscoie.com
    Julian Feldbein-Vinderman, Bar No. 307838
    JFeldbeinvinderman@perkinscoie.com
    Steven G. Williamson, Bar No. 343842
    SWilliamson@perkinscoie.com

    Attorneys for Defendants Uber Technologies,
    Inc., Rasier, LLC, and Rasier-CA, LLC

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3

In a unanimous, published decision that this Court has recently acknowledged is "binding",

4

the California Court of Appeal held that in order to establish misfeasance against Uber for sexual

5

assault of a rider by a third-party imposter driver, a plaintiff must show (among other things) that

6

the third-party criminal conduct is a "necessary component" of the Uber App.  Plaintiff does not

7

allege, and cannot demonstrate, that the third-party criminality of an imposter driver is a necessary

8

component of the Uber App, which forecloses her negligence claim as a matter of law.

9

Plaintiff sued after mistakenly entering a vehicle she believed was a ride that her boyfriend

10

requested for her through the Uber App on his phone.  Because her own phone battery was dead or

11

dying at the time, Plaintiff did not have access to information—provided by Uber and texted to her

12

by her boyfriend—that Plaintiff could have used to correctly identify her authorized driver.  Instead,

13

without reviewing or relying on any identifying information provided by Uber, Plaintiff mistakenly

14

entered the vehicle of Brandon Sherman—a third-party criminal who was not an authorized driver.

15

The only issue before this Court is whether Plaintiff can proceed to trial on her negligence

16

claim against Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively

17

"Uber").  At the motion to dismiss stage, this Court let Plaintiff proceed to discovery on her

18

"ordinary negligence claim" after determining that she had alleged a plausible "claim for

19

misfeasance."  Dkt. No. 41 ("Dismissal Order") at 6.  Specifically, this Court concluded that

20

"Plaintiff has plausibly alleged that Uber did something that put her in a worse position," and thus

21

committed misfeasance, by encouraging Plaintiff and others "to get into vehicles with strangers

22

based on the presence of a decal in a car window."  *Id.*  This Court should now grant summary

23

judgment on that claim as the California Court of Appeal has confirmed it is not a viable course of

24

action against Uber in the case *Doe No. 1 v. Uber Techs., Inc.*, ___ Cal.Rptr.3d ___, 2022 WL

25

1769112, at *9 n.7 (Cal. Ct. App. June 1, 2022).

26

*First*, binding precedent establishes that Plaintiff does not have a legally viable theory to

27

impose a duty of care on Uber.  The recent California Court of Appeal decision—which took

28

judicial notice of the allegations and "facts" in Plaintiff's prior filings in this Court—squarely

---

rejected the very misfeasance theory that Plaintiff asserts here.  *See Doe No. 1 v. Uber Techs., Inc.*, ___ Cal.Rptr.3d ___, 2022 WL 1769112, at *1 (Cal. Ct. App. June 1, 2022).  That case involved three Jane Doe plaintiffs seeking to hold Uber liable after they were allegedly sexually assaulted by third-party criminals posing as authorized drivers, which those plaintiffs dubbed "the fake Uber scheme."  *Id.* at *1.  The court affirmed the dismissal of the complaint, holding that: "Although it is foreseeable that third parties could abuse the platform in this way, such crime must be a 'necessary component' of the Uber app or the Uber entities' actions in order for the Uber entities to be held liable, absent a special relationship between the parties."  *Id.* at *1 (citation omitted). The court concluded that the "facts" alleged or proffered in those filings could "not support" a claim "that the Uber entities had a legally cognizable duty to protect the Jane Does from the third parties perpetrating the fake Uber scheme."  *Id.* at *10.  The holding in *Doe No. 1* controls this case.  There is no material fact that takes this case outside the scope of the holding in *Doe No. 1.*  As this Court recently acknowledged, it is bound to follow *Doe No. 1*[1] and therefore must grant summary judgment to Uber because Uber had no duty to protect Plaintiff from the third-party criminal attack at issue here as a matter of law.

   *Second*, even if Plaintiff's theory of misfeasance were viable, it does not justify imposing a duty here.  California courts will limit duties consistent with the seven factors enumerated in *Rowland v. Christian*, 69 Cal. 2d 108, 112–13 (1968).  Those courts have stressed that "the two most crucial considerations" are "the burden of the duty to be imposed" and "the foreseeability of the harm."  *Hanouchian v. Steele*, 51 Cal. App. 5th 99, 108 (2020) (cleaned up).  As explained below, Plaintiff's proposed remedies are overly burdensome, Plaintiff fails to satisfy the extremely high bar set to establish foreseeability of harm, and there is not a close relationship between Uber's alleged conduct and Plaintiff's injuries.

   *Third*, even if this Court concludes that the *Rowland* factors favor imposing a general duty on Uber, it owed no duty here.  There is no duty to warn of known risks.  And Plaintiff testified that she was aware of the risk of individuals posing as authorized drivers and assaulting riders.

///

------

[1] *See* Order Denying Plf.'s Mot. to Stay, Dkt. No. 219, at 5:5–11.

*Fourth*, Plaintiff's negligence claim fails for lack of proximate cause.  Here, the connection between Uber's alleged negligence and Plaintiff's assault is "too attenuated" to deem Uber liable. *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 154 (2018) (cleaned up).  The confluence of events outside Uber's control leading to the assault—Plaintiff's phone dying, her boyfriend being unable to relay the authorized driver's identifying information to her, Plaintiff happening to be where Sherman pulled up, and Sherman's criminal behavior—establish that Uber's alleged negligence is "too remotely connected with Plaintiffs' injuries to constitute their legal cause." *Id.* (cleaned up).

*Finally*, even if this Court were to permit Plaintiff to proceed to trial on her misfeasance claim, it should grant partial summary judgment on her claim for punitive damages.  As this Court is aware, California sets an extremely high bar for punitive damages.  And there is simply no evidence in the record—none—that Uber engaged in the type of oppressive, fraudulent, or willful conduct that is required for punitive damages.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.     Plaintiff was familiar with the Uber platform and used it multiple times before the August 14, 2018 incident.**

Plaintiff is a Mexican citizen.  Plf.'s First Am. Compl., Dkt. No. 30 ("FAC").  Plaintiff was familiar with how Uber's app worked and had experience with the app before August 14, 2018.  Prior to the incident, Plaintiff used the Uber App "three to five times," and had another individual order a ride on her behalf "three or three to five" times.  Declaration of Julie L. Hussey ("Hussey Decl."), Ex. A (Depo. Tr. of Pl. Vol. 1) at 19:22–20:6.  In Mexico, none of the vehicles that Plaintiff requested (or for rides that were requested on her behalf) via the Uber App displayed an Uber decal. *Id.*, Ex. B (Depo Tr. of Pl. Vol. 2) at 174:15–19.  Plaintiff had never seen such a decal before arriving in San Francisco, California in August 2018.  *Id.* at 173:17–22.  Prior to the incident, Plaintiff was aware that the Uber App displays the make and model of the vehicle that a rider is matched with in the Uber App.  *Id.* at 175:25-176:3.  Plaintiff was also aware that a license plate is one way for riders to verify they are getting into the vehicle they are matched with in the Uber App. *Id.* at 172:6-10.  Plaintiff's boyfriend (who requested a ride for Plaintiff through the Uber App on the date of the incident) testified that he historically used license plates to identify whether the car

he was getting into matched the identity of the vehicle he had been matched with in the Uber App. Hussey Decl., Ex. C (Depo. Tr. of Cuauhtli Padilla Arias Vol. 1) at 65:4–7.  Plaintiff also knew the Uber App displays a photograph of the driver that has been paired with a rider.  *Id.*, Ex. B at 176:14–17.

Nevertheless, when requesting rides for herself or taking rides with others in Mexico, Plaintiff did not use any of the above information that is displayed in the Uber App to make sure that she was getting into the correct vehicle.  Instead, Plaintiff testified that after requesting a ride, she would get into a vehicle based on the fact that "they came to the place where one is, they wait for you, and they call you by name."  *Id.* at 175:2–6; *see also id.*, Ex. A at 118:7-10 (Plaintiff's practice for identifying her ride was based on the fact that a car "would arrive at the place.").  Plaintiff did not recall ever using any other means to identify whether a particular vehicle was the one she had been matched with in the Uber App.  *Id.*, Ex. B at 175:7-9.  Plaintiff cannot identify a single instance where Uber instructed her to identify a car based solely, or in part, on the fact that the car displayed an Uber decal.  *Id.* at 180:10–18.  Plaintiff never received any pop-ups, in-app messages or notifications, emails, or any other communications from Uber instructing her to use a decal as a means of identifying her ride.  *Id.*, Ex. A at 117:21–25.

**B.    Prior to August 14, 2018, Plaintiff was aware of multiple incidents involving third-party criminals posing as authorized drivers on rideshare platforms and sexually assaulting riders.**

August 14, 2018 was not the first time that a third-party criminal (who was unaffiliated with Uber and outside Uber's control) pretended to be an authorized driver on a rideshare platform to perpetrate a crime.  Plaintiff was aware of such prior incidents as of August 14, 2018, and testified she was made aware of unauthorized, imposter drivers after reading about them on social media. *Id.* at 115:18-22, 116:11-14.  Plaintiff stated that, based on her recollection, the victims in the incidents she read about were killed, beaten, or sexually assaulted.  *Id.* at 116:19–117:1.

**C.    On August 14, 2018, Plaintiff asked her boyfriend to request a ride for her through the Uber App to take her from a shopping center to her hotel.**

Plaintiff went shopping on the morning of August 14, 2018, the date of the incident.  *Id.* at 48:9-11. Using her cellphone, Plaintiff requested, and completed, two trips using the Uber platform

that day.  First, Plaintiff requested a ride through the Uber App to travel from a Starbucks to a shopping center.  *Id.* at 48:12-49:20.  Plaintiff stated she did not recall using any of the identifying information contained in the Uber App to confirm that she was getting into the correct vehicle; instead, she repeatedly stated that she entered into a vehicle that pulled up to where she was standing outside of Starbucks "because it came to my address."  *Id.* at 50:17-21; *see also id.* at 53:4-6 ("Because it came to the place where I was"); *id.* at 53:13-14 ("Because it came to where I was"); *id.* at 53:15-18 ("it came to the place where I was, and I had asked for it").  Later that day, Plaintiff requested a second ride through the Uber App to take her from the first shopping center to a second shopping center with a Ross store.  *Id.* at 54:17–22.  Both of these trips (where Plaintiff correctly entered the vehicles of drivers that she had been matched with on the Uber App) occurred without incident.  *See id.* at 106:9-107:2.

Later that evening, Plaintiff messaged her boyfriend via WhatsApp, and asked him to request a ride for her through the Uber App to take her from Ross back to her hotel.  *Id.*, Ex. C at 76:17–24.  Unlike earlier in the day, Plaintiff did not use her own phone to request a ride because her phone was almost out of battery.  *Id.* at 77:4–6.  Plaintiff's boyfriend recommended that Plaintiff charge her phone but does not believe Plaintiff followed his advice.  *Id.* at 107:5–14.  Plaintiff shared her live location with her boyfriend via WhatsApp (a messaging app that is not owned by or affiliated with Uber) so that he could request a ride for her.  *Id.* at 108:7–109:7.  Uber did not select, or direct Plaintiff to, a specific pickup location.  *Id.* at 108:7–109:7.  Plaintiff's boyfriend ordered her a ride, then sent her a message through WhatsApp with the license plate information for the ride that he had requested for her using the location Plaintiff had sent him.  *Id.* at 113:2–10.  Plaintiff's boyfriend stated he provided the license plate to Plaintiff in order for her to be able to correctly identify her ride.  *Id.* at 113:14-17.  Plaintiff testified that her phone ran out of battery two minutes before her boyfriend sent her the license plate information.[2]

///

_____

[2] Timestamps on screenshots from their WhatsApp messages, which were produced in Central Daylight Time, show that Plaintiff's boyfriend messaged her the license plate information at 7:54 p.m.  *See* Hussey Decl., Ex. C at 113:2–10.  Plaintiff testified that her phone ran out of battery at 7:52 p.m. Central Daylight Time.  *See id.*, Ex. A at 67:7–8.

1    Plaintiff repeatedly testified she never received the license plate information that her

2    boyfriend had sent her, because her "phone ran out of charge."  *Id.*, Ex. B at 169:13–20; *id.* at

3    170:4–171:22 ("I didn't have the information.  My phone was out of charge.").  Plaintiff did not

4    utilize the information provided by Uber to assist in identifying the car and driver.  Sherman pulled

5    up to the location where Plaintiff was standing near the shopping center with the Ross store.  *Id.* at

6    163:15–20.

7  **D.    On August 14, 2018, Brandon Sherman was not an authorized driver on the Uber**
       **platform and had no access to the driver version of the Uber App.**
8

9    There are two different versions of the Uber App, one for riders and one for drivers.

10   Declaration of Matthew Baker ("Baker Decl."), ¶ 4.  The rider version of the Uber App allows

11   individuals to request rides either for themselves or for others.  *Id.*  The driver version of the Uber

12   App allows (only) authorized individuals to receive and accept requests for rides ("Driver App").

13   *Id.* ¶ 6.  Sherman did not have access to the Driver App when he arrived at Plaintiff's location on

14   the evening of August 14, 2018.  *Id.* ¶ 7.  Though at one time he had been an authorized driver with

15   access to the Uber platform, Sherman was permanently deactivated from the Uber platform on June

16   17, 2018.  *Id.*  When a driver is permanently deactivated from the Uber platform, the driver loses

17   the ability to receive or accept trips through the Driver App.  *Id.* ¶ 8.  Deactivated drivers cannot

18   receive, review, or accept any ride requests.  *Id.*  Deactivated drivers do not receive any information

19   from Uber about any riders, including the name of the individual who requested the ride.  *Id.*

20   Plaintiff testified that her phone battery died prior to Sherman's arrival, and Plaintiff did

21   not "have the information" her boyfriend sent her regarding the license plate of the vehicle that he

22   had been matched with through the Uber App.  Hussey Decl., Ex. B at 170:4–11.  Plaintiff

23   nevertheless entered Sherman's car.  She testified she did so for five reasons: (1) Plaintiff asked

24   her boyfriend to "order her an Uber" (*id.* at 177:7–11); (2) Sherman's car pulled up at Plaintiff's

25   location (*id.*); (3) Sherman's car displayed an Uber sticker (*id.*); (4) Sherman "acted like a driver"

26   (*id.* at 172:22); and (5) Plaintiff "thought" she heard Sherman say "Cuao," her boyfriend's

27   nickname. (*id.*, Ex. A at 63:20-64:2).  Plaintiff testified that she does not know if she would have

28   gotten into Sherman's car if her phone was charged and she had received the license plate

information, but that "there would have been many possibilities." *Id.*, Ex. B at 177:12–15.

After getting into Sherman's car, Plaintiff handed her phone to Sherman, who plugged it into a charger in his car. *Id.*, Ex. A at 113:1–9. Sherman asked Plaintiff for the destination address, which she thought was "odd." *Id.* at 113:21–23. She nonetheless provided Sherman with the address of the hotel where she was staying as well as her room key card from the hotel as a reference for the address. *Id.* at 113:16–25. Plaintiff claims she observed Sherman input that information into a phone application containing "a search bar" and a "map." *Id.* at 64:17-65:2. Sherman then commenced driving and, thereafter, assaulted Plaintiff.

San Mateo police arrested Sherman several weeks later. *See* FAC ¶ 57. He was tried and convicted for kidnapping, strangulation, and witness intimidation—but was not convicted of rape due to a hung jury. Request for Judicial Notice ("RJN"), ¶¶ 1-2, Exhs. A and B (filed concurrently herewith). Sherman was sentenced to eleven years in California state prison. *Id.*, Ex. B.

**E.      Procedural History**

In June 2019, Plaintiff sued Uber but not Sherman. *See* Dkt. No. 1. This Court granted Uber's motion to dismiss the Original Complaint in its entirety, but gave Plaintiff leave to amend. *See* Dkt. No. 29. Plaintiff then filed her First Amended Complaint ("FAC"), alleging: false imprisonment, assault and battery, breach of duty of utmost care, and negligence. FAC ¶¶ 71–107. Uber moved to dismiss again, Dkt. No. 33, and this Court dismissed all of Plaintiff's claims except her "ordinary negligence claim." Dkt. No. 41 at 5, 10. This Court determined that "Plaintiff has adequately alleged negligence by misfeasance" by claiming that Uber "put her in a worse position" by encouraging her "to get into vehicles with strangers based on the presence of a decal in a car window." *Id.* at 5–6 (capitalization omitted). This Court denied further leave to amend. *Id.* at 10. Uber now moves for summary judgment on Plaintiff's remaining "negligence by misfeasance claim." *Id.*

**LEGAL STANDARD**

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party carries its initial burden by either producing "evidence negating an essential element of the

nonmoving party's claim" or demonstrating "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party, which "must present specific facts establishing a genuine issue on all essential elements of the case." *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001). In doing so, the nonmoving party must rely on "a viable legal theory" to support its claim. *Mut. Fund Invs.', Inc. v. Putnam Mgmt. Co.*, 553 F.2d 620, 624 (9th Cir. 1977). This Court must view "the evidence in the light most favorable to the nonmoving party." *L. F. v. Lake Wash. Sch. Dist. 414*, 947 F.3d 621, 625 (9th Cir. 2020) (cleaned up).

When dealing with novel issues of state law, federal courts sitting in diversity "must predict how the state's highest court would decide the question." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019). They are "bound by the pronouncements of the state's highest court" and must consider "existing state law without predicting potential changes in that law." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) (citations omitted). Additionally, federal courts are "obligated to follow the decisions of the state's intermediate appellate courts, unless there is convincing evidence that the California Supreme Court would decide differently." *Franklin* v. *Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021) (cleaned up). Here, this Court is obligated to follow the *Doe No. 1* decision which directly considered, took judicial notice of, and incorporated within its decision the facts alleged in this case.

## ARGUMENT

"In California, the plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (cleaned up). "Courts invoke the concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act." *Modisette*, 30 Cal. App. 5th at 143 (cleaned up). Plaintiff cannot establish the duty and proximate cause elements of her claim.

///

///

**A.**     **Plaintiff's negligence claim fails as a matter of law because Uber did not have a duty to protect or warn Plaintiff regarding third-party criminal conduct.**

Uber is entitled to judgment as a matter of law because Plaintiff cannot "demonstrate a legal duty" for her negligence claim. *Steinle*, 17 F.4th at 822.

**1.     Uber had no legal duty to protect or warn Plaintiff.**

Uber owed Plaintiff no legal duty to protect her from or warn her of third-party criminal attackers such as Brandon Sherman. The general rule in California has long been that individuals have "no duty to control the conduct of another, nor to warn those endangered by such conduct." *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976) (citations omitted). The California Supreme Court recently reaffirmed this "general rule" in *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021). The rule has "deep roots," and reflects "the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter." *Id.* at 214 (citation omitted).

In *Brown*, the California Supreme Court established "a two-step inquiry" for courts to "decide whether a defendant has a legal duty to take action to protect the plaintiff from injuries caused by a third party." *Id.* at 209. The first step is to "determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect." *Id.* If—but only if—a plaintiff surpasses the first step, the second step is to apply "the factors described in *Rowland* to determine whether relevant policy considerations counsel limiting that duty." *Id.* The *Brown* court emphasized that the second step is solely "a means for deciding whether to limit a duty derived from other sources" and is not "a freestanding means of establishing duty." *Id.* at 217.

Here, Plaintiff's claim fails at multiple steps. She cannot pass *Brown*'s first step because, as the *Doe No. 1* court held, none of Uber's alleged conduct qualifies as "misfeasance" triggering a duty to protect or warn regarding third-party criminal conduct. She cannot pass *Brown*'s second step because the *Rowland* factors counsel against imposing a duty. What's more, even if this Court were to somehow determine that Plaintiff satisfies both steps, her claim would still fail because she was aware of the risk of individuals posing as drivers authorized to access the Uber platform—

1    which means Uber owed no duty of care to her specifically.

2           **a.    Plaintiff's theory of misfeasance is not legally viable because
3                   Sherman's criminal act was not a "necessary component" of Uber's
                    own conduct.**

4           Summary judgment is warranted because, even under Plaintiff's "version of the facts," she

5    does not have "a viable legal theory" for her negligence claim. *Mut. Fund Invs.'*, 553 F.2d at 624;

6    *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) (affirming summary judgment where

7    the plaintiff's legal theory was "not cognizable"). The theory of misfeasance that Plaintiff relies

8    on here was squarely rejected by the California Court of Appeal in *Doe No. 1*, which this Court

9    recently stated was "binding." *See* 2022 WL 1769112, at *8–10; Dkt. No. 219 at 5:6.

10          The *Doe No. 1* court held that the plaintiffs had not "allege[d] actionable misfeasance,

11   because the Uber entities' alleged actions did not *create* the risk that criminals would take

12   advantage of the existence of the Uber app to abduct and rape women trying to use it." 2022 WL

13   1769112, at *1. The court explained that, under California law, "[t]he 'crux of the difference

14   between' misfeasance and nonfeasance for purposes of assessing a duty to protect is whether the

15   third-party conduct 'was a necessary component' of the defendant's conduct at issue.'" *Id.* at *9

16   (alterations omitted) (quoting *Melton v. Boustred*, 183 Cal. App. 4th 521, 534 (2010)). It stated

17   that the oft-repeated phrase in California case law—which describes misfeasance as occurring

18   "when the defendant is responsible for making the plaintiff's position worse"—"does not stand for

19   the proposition that a defendant worsening the plaintiff's position in the simplest, most literal sense

20   is alone sufficient to establish misfeasance triggering a duty to protect."[3] *Id.* (cleaned up).

21          California courts have uniformly rejected that "literal" application because of the wide-

22   ranging liability it would create. *Id.* "[T]here are 'many commonplace commercial activities' that

23   provide an opportunity for, and thus theoretically increase the risk of, criminal conduct by third

24

_____

25       [3] The *Doe No. 1* court also specifically noted that *Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th
     703 (2001), which Plaintiff relied on in her opposition to Uber's motion to dismiss (Dkt. No. 35 at
26   15), does not support a broad concept of misfeasance. 2022 WL 1769112, at *9 n.7. The *Doe No.
     1* court concluded that *Lugtu* is "not analogous" because its holding is limited to "a police officer's
27   affirmative conduct in directing" a traffic stop. *Id.* (cleaned up). That conclusion is consistent with
     California and federal precedent construing *Lugtu*. *See, e.g.*, *Camp v. California*, 184 Cal. App.
28   4th 967, 977 (2010) (collecting cases); *Joshua Tan v. Hydraulics Int'l, Inc.*, 2021 WL 3744579, at
     *5 (C.D. Cal. July 22, 2021).

parties." *Id.* (quoting *Sakiyama v. AMF Bowling Ctrs., Inc.*, 110 Cal. App. 4th 398, 409 (2003)).
Bars, restaurants, and parties increase the risk that plaintiffs will be "harmed by a patron's criminal
act of driving while intoxicated." *Id.* Similarly, "youth organizations" do, in a sense, "provide the
opportunity for an adult to molest a child." *Id.* Yet California courts have consistently refused to
treat these activities as "misfeasance" for purposes of negligence law. *Id.*

The *Doe No. 1* court held that Uber had not committed misfeasance because "[t]he violence
that harmed the Jane Does—abduction and rape—is not a necessary component of the Uber
business model." *Id.* (cleaned up). That was true regardless of the plaintiffs' allegations that Uber
"marketed the Uber app as safe to use, refused to cooperate with sexual assault investigations, or
concealed sexual assaults related to the use of the app." *Id.* The court determined that there could
not be misfeasance because "the Uber entities still are not alleged to have 'taken action to stimulate
the criminal conduct.'" *Id.* (alterations omitted) (quoting *Melton*, 183 Cal. App. 4th at 535).
Additionally, "the Uber entities made efforts to prevent the type of conduct that harmed the
plaintiffs—namely, they included matching system features in the Uber app that, if utilized, can
thwart efforts like the fake Uber scheme."[4] *Id.* The court therefore concluded that Uber's conduct
"does not constitute misfeasance that can give rise to a duty to protect." *Id.*

In reaching its decision, the *Doe No. 1* court considered the facts of this case. The state-
court plaintiffs in *Doe No. 1* asked the court to take judicial notice of the lengthy FAC and several
other filings in this case, including the 15-page Declaration of Sara Peters in Opposition to Uber's
Motion to Stay Case. *See id.* at *1 n.1; *see also* RJN, ¶ 3, Ex. C. This declaration included a
summary of much of the evidence produced in this case, including excerpts of the deposition
testimony of several Uber witnesses. RJN, ¶ 3, Ex. C at 119-33. The court not only took judicial
notice of these filings "as a proffer identifying potential additional allegations the Jane Does could
include in a further amended complaint," but also "consider[ed] the documents from the federal
Uber action in our analysis of the parties' arguments regarding the relevance of that action." *Doe*

---

[4] The plaintiffs in *Doe No. 1* used the phrase "the fake Uber scheme" as shorthand to describe
the conduct of third-party "assailants" who "were not affiliated with Uber or the Uber entities, but
had obtained Uber decals from the Uber website and affixed them to their vehicles" to use as a
"means of abducting and assaulting women who are attempting to use the Uber app." 2022 WL
1769112, at *1.

*No. 1*, 2022 WL 1769112, at \*1 n.1, \*10 n.8.  The court concluded that, even if the facts from this case were included as allegations in an amended complaint, they would "not support" a claim "that the Uber entities had a legally cognizable duty to protect the Jane Does from the third parties perpetrating the fake Uber scheme."  *Id.* at \*10.  That included the following categories of allegations:

> (1) that the Uber entities have known for many years about instances of the fake Uber scheme and sexual assaults otherwise associated with the Uber app; (2) that the Uber entities have been uncooperative with authorities investigating sexual assaults related to the Uber app; (3) that "the serial rapists in question in this case had prior relationships with Uber wherein they obtained the Uber decals emblazoned on the vehicles that abducted each" Jane Doe; (4) "concerning the Uber entities' failure to request, retrieve or otherwise cancel said decals, endorsing the decals as safe"; and (5) more specifically identifying "policies and procedures of the Uber entities negatively conducting sexual assault investigations giving rise to serial rapists going undetected by law enforcement."

*Id.* (cleaned up).

As this Court has acknowledged, it is "obligated to follow" the holding in *Doe No. 1* in addressing Plaintiff's negligence claim against Uber.  *Franklin*, 998 F.3d at 871 (citation omitted).  There is no "'convincing evidence' that the California Supreme Court would decide differently." *Id*. (citation omitted).  To the contrary, the *Doe No. 1* decision is firmly grounded in California Supreme Court precedent.  *See* 2022 WL 1769112, at \*8 (citing *Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40 (1975)).  That includes the California Supreme Court's decision in *Brown*—issued just last year—which refused to characterize a youth sports organization as having committed "misfeasance," even though its activities "provide[d] the opportunity for an adult to molest a child." *Id.* at \*9 (citing *Brown*, 11 Cal. 5th at 210).  The *Doe No. 1* decision is also fully consistent with decades of decisions from the California Court of Appeal applying a similarly limited concept of misfeasance.  *See id.* at \*8–9.  In sum, there is no basis to question *Doe No. 1* as controlling on the question of whether Plaintiff's misfeasance theory is viable under California law.

Moreover, Plaintiff cannot avoid *Doe No. 1* by claiming portions of the opinion discussing this case are dicta (as she did at the parties' recent hearing on the Plaintiff's Motion to Stay).  First, the portions of *Doe No. 1* discussing this case are part of the opinion's *holding*—not its dicta.  A

1   holding "is not only the result but also those portions of the opinion necessary to that result."

2   *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996); *Cetacean Cmty. v. Bush*, 386 F.3d 1169,

3   1173 (9th Cir. 2004) (citation omitted) (a "holding" is a statement "germane to the eventual

4   resolution of the case, and resolves it after reasoned consideration in a published opinion").

5          The *Doe No. 1* court's consideration of the facts of this case was certainly germane to the

6   resolution of that case, and was done at the request of the state-court plaintiffs.  In particular, the

7   court's assessment of the facts here bore directly upon its decision not to reverse and remand with

8   instructions to grant leave to amend the complaint.  The Court of Appeal "consider[ed]" the

9   declassified information from this case and determined that such allegations and evidence would

10  not change the outcome. 2022 WL 1769112, at *1 n.1, *10.  In other words, although a court's

11  reasoning need not be necessary to the outcome "in some strict logical sense" to part of the holding,

12  the Court of Appeal's reasoning *was* strictly necessary.  *Cetacean Cmty.*, 386 F.3d at 1173 (citation

13  omitted).  Thus, the Court of Appeal's careful and thoughtful analysis of the allegations and facts

14  were germane to the resolution of *Doe No. 1* and cannot be discarded as dicta.  *See id.*

15         Second, even if the Court of Appeal's reasoning *were* dicta, this Court would nonetheless

16  be bound by that reasoning.  Ninth Circuit law is clear that, "in diversity cases" like this one, courts

17  are "bound by the dicta of state courts."  *Homedics, Inc. v. Valley Forge Ins. Co., a Pa. Corp.*, 315

18  F.3d 1135, 1141 (9th Cir. 2003); *see also Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980)

19  ("In cases where the highest appellate court of the state has not spoken, well-considered dicta

20  should not be ignored").  The Court of Appeal's conclusions—dicta or not—cannot not be ignored

21  here.

22         Plaintiff's negligence claim fails because she "cannot establish that the harm" she "suffered

23  is a 'necessary component' of the Uber entities' actions."  *Doe No. 1*, 2022 WL 1769112, at *9

24  (citation omitted).

25             **b.    Plaintiff's "facts" do not establish a viable theory of misfeasance.**

26         Plaintiff cannot raise a factual issue that would take this case outside the comprehensive

27  ambit of *Doe No. 1*'s holding.  The burden is on Plaintiff to identify admissible evidence

28  establishing conduct by Uber that could qualify as "misfeasance" under California law.  *See* Fed.

R. Civ. P. 56(a).  In her depositions and her untimely and contradictory supplemental interrogatory responses provided *after* her depositions (which Uber reserves the right to challenge), Plaintiff has provided an extensive list of all facts she believes support her contention that Uber engaged in misfeasance.  *See generally*, Hussey Decl., Ex. D (Pl.'s Supp. Resp.) at 13-73.  But none of these facts support Plaintiff's negligence claim.  Her answers demonstrate "that there is an absence of evidence to support the nonmoving party's case."  *Nissan Fire & Marine Ins.*, 210 F.3d at 1105 (cleaned up) (noting that an "answer to interrogatories" can establish an absence of evidence). Summary judgment is therefore warranted.

**Normalizing rides with strangers.**  Following extensive discovery, there is no evidence that Uber encouraged anyone to "get into vehicles with strangers based on the presence of" an Uber decal.  Dismissal Order at 6.  Instead, Uber's business model encourages riding in the cars of authorized drivers, requested through the Uber App and identified by key information including "the make, model, and color of the vehicle, as well as the license plate number and the driver's photo."  Hussey Decl., Ex. D at 9.  Uber does not ask its riders to just get into a car with a stranger any more than any other car service does.[5]

What's more, relying on Uber's business model to find misfeasance is squarely foreclosed by *Doe No. 1*.  2022 WL 1769112, at *9.  That holding is consistent with the California Supreme Court's holding in *Weirum* that the concept of "misfeasance" does not extend "to daily commercial activities."  15 Cal. 3d at 48.  The fact that sexual predators treat a lawful and beneficial service as an opportunity to commit crimes does not make that activity misfeasance.  Indeed, that was the holding in *Doe v. U.S. Youth Soccer Ass'n*, which recognized that "soccer programs" present "opportunities" for predators "to sexually abuse" children, which created a "risk of harm to children," yet held that the soccer organization had engaged in "nonfeasance."  8 Cal. App. 5th 1118, 1123, 1136–37 (2017).

---

[5] Taxi drivers are also "strangers" to their passengers.  Yet Plaintiff would not hold taxi companies liable for crimes committed by individuals posing as taxi drivers.  *See, e.g.*, *People v. Stephenson*, 10 Cal. 3d 652, 656–57 (1974) (describing robbery scheme where the defendant posed as a taxi driver).

3:19-CV-03310-JSC
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**Ability to order a ride for another passenger.** As noted above, the *Doe No. 1* court reviewed and relied upon Plaintiff's FAC when issuing its opinion. This includes Plaintiff's allegations regarding third-party "bounce" rides. For example, Plaintiff alleged that "Uber is and at all relevant times has been aware that its customers sometime summon UberX cars for other people, and that under these circumstances the passenger does not typically have access to the App's features" and that "Uber has the technological capability to block ride requests that attempt to summon a driver to pick up a passenger at a location remote from that of the person using the App." FAC ¶¶ 49, 50. Plaintiff criticizes this as an example of Uber placing "riders at risk." *Id.* ¶ 104.

As with her other allegations, nowhere does Plaintiff contend that third-party criminal conduct is a "necessary component" of a third-party ride request. Nor can she. And, even if she did, the *Doe No. 1* opinion (after considering all the allegations in Plaintiff's FAC) held that allegations that Uber "offered a deficient matching system on the Uber app" cannot establish misfeasance. 2022 WL 1769112, at *8.

**Uber decals.** This Court's Dismissal Order also relied on the allegation that Uber "provided assurances about the safety of riding in these Uber decaled vehicles[] but did not control the distribution of the decals." Dismissal Order at 6. At the outset, Plaintiff ignores that Section 2.2.4 of Rulemaking 12-12-011 of the California Public Utilities Commission requires Uber to distribute trade dress, such as decals, in order to operate in the state of California, and makes clear that magnetic or removable trade dress is acceptable. Nevertheless, Plaintiff's theory of misfeasance is now foreclosed by *Doe No. 1*, which held that plaintiffs had not established "misfeasance" by alleging that Uber "made Uber decals easy to obtain without keeping track of their use," or that Uber "fail[ed] to request, retrieve or otherwise cancel said decals." 2022 WL 1769112, at *8, *10.

Plaintiff also seeks to argue that the relevant misfeasance was Uber's failure to retrieve the decal once Uber removed Sherman from its platform. *See* Hussey Decl., Ex. D at 69 (noting that Uber "let him keep his Uber logo decals"). That argument fails for three reasons.

*First*, this argument is specifically foreclosed by *Doe No. 1*. *See* 2022 WL 1769112, at *10. Again, the *Doe No. 1* court considered Plaintiff's FAC and this Court's Dismissal Order, *see id.* at

*1 n.1, *10.  And it held that the state-court plaintiffs could not salvage their negligence claim by alleging "that the serial rapists in question in this case had prior relationships with Uber wherein they obtained the Uber decals emblazoned on the vehicles that abducted each Jane Doe," or by alleging that Uber "fail[ed] to request, retrieve or otherwise cancel said decals" while generally "endorsing the decals as safe."  *Id.* at *10 (quotation marks omitted).  Any factual issues regarding Sherman's prior status as an authorized driver is therefore legally irrelevant and cannot justify denial of summary judgment.

*Second*, a failure to act—such as an alleged failure to retrieve a decal—is the paradigmatic example of "nonfeasance," which does not give rise to a duty.  *Posey v. California*, 180 Cal. App. 3d 836, 844 (1986); *see also, e.g.*, *Kim v. County. of Monterey,* 43 Cal. App. 5th 312, 320 (2019).

*Third*, California does not impose a duty to retrieve even dangerous chattels, much less innocuous trade dress.  Where, as here, a defendant does not have control of the third party who possesses the harm-causing chattels, the defendant's duty is not to retrieve the chattel but to simply "terminate his consent to its use."  Restatement (Second) of Torts § 318 & *cmt. d* (1965); *Hansra v. Super. Ct.*, 7 Cal. App. 4th 630, 645 (1992) (cleaned up) (explaining that "the ability to control the third party is essential").  Absent such a rule, the law would force parties to resort to extra-legal self-help to retrieve their chattels—or else face potential civil liability for those chattels' misuse.

Here, Uber did "terminate [its] consent to [the decals'] use" when it deactivated Sherman from the platform.  Restatement (Second) of Torts § 318 & *cmt. d*.  Under the Transportation Services Agreement which Sherman agreed to when he signed up for his driver account, Uber provided Sherman with a limited license to display an Uber decal during the time he was authorized to accept and complete trips on the Uber platform (and as required by California regulations).  Baker Decl., Ex. A at 9 (¶¶ 5.1, 5.3).  The Agreement forbid Sherman from, among other things, using or referencing Uber's logos, trademarks, service marks, or trade dress in any manner not specifically permitted by Uber for any commercial purposes or attempting to gain "unauthorized access to the Uber Services[6] or its related systems or networks."  *Id.* at 9 (¶¶ 5.2, 5.3).  Similarly, Uber's

---

[6] "Uber Services" are defined in the Agreement as "Uber's on-demand lead generation and related services licensed by Uber to Company that enable transportation providers to seek, receive and fulfill on-demand requests for transportation services by Users seeking transportation services;

1    Community Guidelines which Sherman agreed to when he signed up for his driver account

2    expressly prohibited Sherman from "intentionally accepting or completing fraudulent or falsified

3    trips."  *Id.*, Ex. B. at 9.  The Community Guidelines also warned Sherman that he could be

4    deactivated for sexual misconduct, harassment, or other illegal activities.  *Id.* at 3-4.

5         Plaintiff's argument would impose a greater duty on Uber regarding its decals than

6    California law imposes on owners of dangerous chattels.  Uber did not control Sherman and could

7    not have forced him to return the decal.  Plaintiff lacks any authority for imposing this novel

8    heightened standard.

9         **Uber's interactions with Sherman.**  Plaintiff also complains that Uber "took no action"

10   beyond deactivating Sherman.  Hussey Decl., Ex. D, at 69.  She specifically notes that "Uber did

11   not report him to law enforcement," "did not inform the victim" of his second attempted assault

12   "that it was not reporting to law enforcement," and "did not report him to Lyft."  *Id.*  In essence,

13   Plaintiff seeks to argue that, after deactivating Sherman, Uber should have taken additional steps

14   to either directly prevent him from committing future assaults or to warn others of the risk he posed.

15        This theory of misfeasance is not only foreclosed by *Doe No. 1*, but also contrary to long-

16   standing California law.  For starters, *Doe No. 1* rejected the notion that "that 'the serial rapists in

17   question in this case ha[ving] prior relationships with Uber'" could affect the duty question.  2022

18   WL 1769112, at *10.  That determination is consistent with well-established precedent, which holds

19   that a private defendant has "no duty to control the conduct of another, nor to warn those

20   endangered by such conduct," unless "the defendant stands in some special relationship to either

21   the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of

22   that conduct."[7]  *Tarasoff*, 17 Cal. 3d at 435 (citation omitted).  Indeed, the California Supreme

23   Court has noted that there is "no case or Restatement provision suggesting that a former employer

---

24   such Uber Services include access to the Driver App and Uber's software, websites, payment
25   services as described in Section 4 below, and related support services systems, as may be updated
     or modified from time to time."  Baker Decl., Ex. A at 2 (¶ 1.13).

26   [7] Plaintiff has not identified any established "special relationship" under California law that
     would apply here.  *See* Dismissal Order at 4 (noting that Plaintiff alleged an "unspecified 'special
27   relationship'" without any supporting facts).  And the *Doe No. 1* decision confirms there is no such
     relationship.  *See* 2022 WL 1769112, at *1 ("[T]he Uber entities were not in a special relationship
28   with the Jane Does that would give rise to a duty to protect the Jane Does against third party
     assaults, or to warn them about the same.").

has an affirmative duty of disclosure" regarding the risk that a former employee will commit sexual assaults in the future. *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1078 (1997). Given that Sherman and Uber never had an employer-employee relationship—but instead were in an independent-contractor relationship that ended two months before the incident—there cannot be such a duty for Uber.

**Plaintiff's other factual assertions.**   Plaintiff's remaining facts also fail to support her claim of misfeasance.  Every "fact" Plaintiff cites is either foreclosed by *Doe No. 1*, irrelevant to the legal standard, or highlights that Plaintiff's real complaint is that Uber engaged in nonfeasance. For example, Plaintiff goes on at length about what Uber knew or had reason to know. *See, e.g.*, Hussey Decl., Ex. D at 21–38.  But *Doe No. 1* squarely held that foreseeability matters "only where there is a legal basis for imposing a duty."  2022 WL 1769112, at *9 (cleaned up).  Plaintiff also lists various instances where Uber did not report suspected assaults to law enforcement.  Hussey Decl., Ex. D at 56, 59, 67, 69.  But again, *Doe No. 1* squarely held that Uber did not engage in "misfeasance" under California law by allegedly not "routing allegations to police," not "advising victims to seek legal counsel or make their own police reports," or by "silencing assault victims with monetary confidential settlements."  2022 WL 1769112, at *2; *see also U.S. Youth Soccer Ass'n*, 8 Cal. App. 5th at 1127 (holding that "not report[ing] suspicions to . . . law enforcement authorities" was "nonfeasance").

Likewise, Plaintiff catalogs various instances in which she believes Uber should have warned its users.  Hussey Decl., Ex. D at 47 ("Uber did not warn …."); *id.* at 49 (Uber "does not accompany …."); *id.* at 50 ("Uber never warned …."); *id.* at 73 (Uber "failed to adequately warn …."); *id.* ("Uber never warned ….").  But "failure to warn" of a risk from a third party is the epitome of "nonfeasance," which is not actionable.  *Posey*, 180 Cal. App. 3d at 844; *see also, e.g., Kim*, 43 Cal. App. 5th at 320 (defining "nonfeasance" as "failing to warn of the risk").  All the remaining facts Plaintiff offers simply point out what Uber allegedly did not do—*i.e.*, nonfeasance. *See* Hussey Decl., Ex. D at 15 ("Uber did not design …."); *id.* at 38 ("Uber does not employ …."); *id.* at 43 ("Uber did not perform …."); *id.* at 47 ("Uber did not warn …."); *id.* at 51 ("Uber did not

1   make any attempt …."); *id.* at 60 ("Uber does not disclose …."); *id.* at 66 ("Uber made no attempt

2   …."); *id.* at 72 ("Uber never communicated ….").

3       To the extent any of the remaining facts correspond to actions that Uber allegedly did take,

4   they fail the "necessary component" test from *Doe No. 1.* 2022 WL 1769112, at *1. Sherman's

5   criminal conduct was not a necessary component of any of Uber's actions, and therefor Uber is

6   entitled to summary judgment on the negligence claim.

7       **2.    If this Court were to determine that Uber did have a duty, that duty should be
          limited under the *Rowland* factors.**

8

9       If this Court were to somehow decide that there is a potential basis for imposing an

10  affirmative duty of care on Uber, it should conclude, based on the multifactor test set forth in

11  *Rowland*, that the "relevant policy considerations" justify limiting that duty.[8] *See Brown*, 11 Cal.

12  5th at 209.

13      **The *Rowland* Factors.** This Court must assess Plaintiff's proposed affirmative duty under

14  the multifactor test established in *Rowland*. *See Brown*, 11 Cal. 5th at 217. There are seven

15  well-established factors.[9] But "the two most crucial considerations" are "the burden of the duty to

16  be imposed" and "the foreseeability of the harm." *Hanouchian*, 51 Cal. App. 5th at 108 (cleaned

17  up).

18      The California Supreme Court has held that an application of the *Rowland* factors must

19  begin with "identify[ing] the specific action or actions the plaintiff claims the defendant had a duty

20  to undertake." *Castaneda v. Olsher*, 41 Cal. 4th 1205, 1214 (2007). Courts cannot "meaningfully

21  undertake the balancing analysis of the risks and burdens" until the "scope of the duty under

22

23      [8] Since this Court's ruling on the motion to dismiss, the California Supreme Court has adopted
    "a two-step inquiry" for courts to "decide whether a defendant has a legal duty to take action to
24  protect the plaintiff from injuries caused by a third party." *Brown*, 11 Cal. 5th at 209.

25      [9] Those seven factors are: (1) "the foreseeability of harm to the plaintiff"; (2) "the degree of
    certainty that the plaintiff suffered injury"; (3) "the closeness of the connection between the
26  defendant's conduct and the injury suffered"; (4) "the moral blame attached to the defendant's
    conduct"; (5) "the policy of preventing future harm"; (6) "the extent of the burden to the defendant
27  and consequences to the community of imposing a duty to exercise care with resulting liability for
    breach"; and (7) "the availability, cost, and prevalence of insurance for the risk involved."
28  *Rowland*, 69 Cal. 2d at 113.

1  consideration is defined." *Id.* (cleaned up).  There is only one action identified in the FAC,[10] which

2  would arguably have prevented the incident here: the allegation that Uber should have redesigned

3  its app "to block ride requests that attempt to summon a driver to pick up a passenger at a location

4  remote from that of the person using the App."  FAC ¶ 50.

5      A careful consideration of the *Rowland* factors confirms that Uber should not have a duty

6  to redesign its app to eliminate this feature.  That consideration should be guided by the California

7  Court of Appeal's decision in *Modisette*, which rejected a similar claim that Apple should have

8  blocked users from using the FaceTime App while driving.[11]  *See* 30 Cal. App. 5th at 143–52.

9      **Burden.**  Duties that impose significant financial or *social* costs are "highly burdensome."

10  *Hanouchian*, 51 Cal. App. 5th at 109.  Plaintiffs' proposed duty would be "unduly burdensome."

11  *Sakiyama*, 110 Cal. App. 4th at 411.  The burden of Plaintiff's proposed duty would be

12  "extremely high."  *Melton*, 183 Cal. App. 4th at 539 (cleaned up).  There is clear "social utility"

13  in the remote ordering that Plaintiff would have Uber eliminate.  *Modisette*, 30 Cal. App. 5th at

14  148 (citation omitted).  Remote ordering allows individuals to arrange rides for those in need of

15  assistance, elderly, disabled, or low-income riders who might not own or be able to easily use a

16  smartphone themselves.  *See* Hussey Decl., Ex. D at 19.  What's more, the time, cost, and energy

17  to redesign the app to eliminate remote ordering would be an "extremely high" burden."  *Cf.*

18  *Melton*, 183 Cal. App. 4th at 539 ("The California Supreme Court has repeatedly found 'the

19  burden of hiring security guards' to be 'extremely high.'" (quoting *Wiener v. Southcoast*

20  *Childcare Ctrs., Inc.*, 32 Cal. 4th 1138, 1147 (2004)).

21      Also, the duty is assessed based on what the defendant knew at the time, not what is later

22  known "with the benefit of hindsight."  *Sakiyama*, 110 Cal. App. 4th at 407 (citation omitted).

23  California courts have never "charged a defendant with making forecasts based on the

24  information" they have or could obtain in "an investigation."  *J.L. v. Children's Inst., Inc.*, 177

25

26  _____
   [10] "It is well-settled that the 'issues on summary judgment are framed by the Complaint.'"  *Cole*
27  *v. CRST, Inc.*, 150 F. Supp. 3d 1163, 1169 (C.D. Cal. 2015) (quoting *Rodriguez* v. *Countrywide Homes*, 668 F. Supp. 2d 1239 (E.D. Cal. 2009)).

28  [11] The *Doe No. 1* court did not reach the *Rowland* factors because it concluded at step one that Uber had no duty.  *See* 2022 WL 1769112, at *5.

Cal. App. 4th 388, 397 (2009) (quoting *Margaret W. v. Kelley R.*, 139 Cal. App. 4th 141, 156 (2006)).  And the California Supreme Court has stressed that "it is difficult if not impossible in today's society to predict when a criminal might strike." *Wiener*, 32 Cal. 4th at 1150.  Relatedly, that court has concluded that "the burden" of having to "protect against crime everywhere has been considered too great in comparison with the foreseeability of crime occurring at a particular location." *Id.* (cleaned up).  Here, Plaintiff contends that Uber should have forecast the need to redesign the app "to block ride requests" for locations "remote from that of the person using the App." FAC ¶ 50.  Requiring app designers to constantly have to predict whether a feature might result in a user being exposed to criminal conduct would be extremely burdensome, and is purely based in hindsight.

**Foreseeability.**  Plaintiff has not established the level of foreseeability required.  Where a plaintiff seeks to impose a duty to protect in a "case of *criminal* conduct by a third party, an extraordinarily high degree of foreseeability is required." *Garcia v. Paramount Citrus Ass'n*, 164 Cal. App. 4th 1448, 1457 (2008).  "To establish heightened foreseeability for third party criminal conduct," California courts "have consistently required actual knowledge—not constructive, inferential, or knowledge by association—to impose a burdensome legal duty." *Hanouchian*, 51 Cal. App. 5th at 111. California courts have never imposed "a duty to take steps to prevent or respond to third party crime on the basis of *constructive knowledge* or information the defendant *should have known*." *Id.* at 112 (citation omitted).  The California Supreme Court has emphasized that "the heightened foreseeability test" is met by demonstrating "prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location." *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 239 (2005) (cleaned up).  Plaintiff cannot meet this test.

*First*, Plaintiff does not identify sufficient evidence of "prior similar incidents" involving remote orders, where the victim unexpectedly did not have phone access, that led to abductions and assaults by individuals posing as authorized drivers.  *Id.*  She instead cites various (inadmissible) news stories reporting abductions or other crimes committed by individuals posing as authorized drivers.  Hussey Decl., Ex. D at 25–34.  And she catalogs instances in which individuals, relying on merely seeing a decal, got into the wrong car—usually a car driven by another authorized

driver—at hectic places such as airports. *Id.* at 21, 23. She does not identify any instances where an individual was abducted and assaulted while waiting for an authorized driver that was ordered for her by another individual in a remote location. *See generally* Hussey Decl., Ex. D at 13–76.

*Second*, Plaintiff does not identify any evidence that Uber had "knowledge of prior similar incidents in th[e] location" where Plaintiff was abducted. *Margaret W.*, 139 Cal. App. 4th at 155–56. But Plaintiff fails to point to any prior abduction in the Bay Area by drivers posing as authorized drivers, let alone in the San Mateo area where Plaintiff entered Sherman's car. *See generally* Hussey Decl., Ex. D at 25-38. The California Supreme Court has held that evidence of two rapes occurring the prior year in the "50 square blocks surrounding … a business property" is not a "tenable basis for establishing foreseeability." *Sharon P. v. Arman, Ltd.*, 21 Cal. 4th 1181, 1198 (1999), *partially disapproved of on other grounds by Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 854 n.19 (2001). Finding foreseeability here would be improper.

Additionally, it is well-established that "hindsight" cannot be the basis for establishing foreseeability. *Melton*, 183 Cal. App. 4th at 538 (collecting precedents). Plaintiff will no doubt argue that the attack was sufficiently foreseeable because Uber received reports that Sherman attempted to assault two riders before he was permanently deactivated from the Driver App. FAC ¶ 63; RJN, Ex. C at 121-122, 126-128. But it is not enough that the attack "was 'generally foreseeable,'" the defendant must have knowledge of facts "that would have portended this *particula*r assault." *Colonial Van & Storage, Inc. v. Super. Ct.*, 76 Cal. App. 5th 487, 503 (2022).

Simply put, "a general knowledge of the *possibility* of violent criminal conduct is not in itself enough to create a duty under California law." *Williams v. Fremont Corners, Inc.*, 37 Cal. App. 5th 654, 668 (2019). Ultimately, the scores of individuals using the Uber service make the risk to any particular user infinitesimal. The foreseeability factor is not met here.

**Other *Rowland* Factors.** The other *Rowland* factors also generally weigh against imposing a duty here. Especially relevant is "the closeness of the connection between the defendant's conduct and the injury suffered." *Modisette*, 30 Cal. App. 5th at 145 (citation omitted). Given "the involvement of a third party, the relationship between the defendants actions and the resulting harm" needed to be "much more direct." *Id.* That is especially true in light of the facts beyond

Uber's control—such as Plaintiff's phone dying—that played in the events leading to her injuries. Even if one or two of the factors could be considered to favor imposing a duty, none of them "alter the no-duty determination" favored by the other factors. *Melton*, 183 Cal. App. 4th at 541.

If this Court were to somehow conclude that there is a basis for recognizing a duty of care here, the balance of the *Rowland* factors counsels against imposing it.

> **3.** **Even if Uber has a general duty to warn or protect against third-party criminal conduct, Uber had no duty to Plaintiff here.**

Even if Uber had a general duty to warn or protect against third-party criminals posing as authorized drivers, Uber had no such duty to Plaintiff here, given her knowledge of the risk. California has adopted the "obvious danger rule, which provides that there is no need to warn of known risks under either a negligence or strict liability theory." *Osteen v. Bayer Corp.*, 726 F. App'x 614, 615 (9th Cir. 2018) (citation omitted). Simply put, a defendant's failure to warn is "immaterial" if the plaintiff was aware of the danger that injured her. *Rather v. City & County of San Francisco*, 81 Cal. App. 2d 625, 635 (1947) ("His admission that he had seen the oncoming car renders this failure [to warn] immaterial."). That is true even if the defendant "*created* [the] foreseeable peril." *Russell v. Dep't of Corr. & Rehab.*, 72 Cal. App. 5th 916, 936 (2021) (noting that "the duty to warn" arises only if the risk "was not readily discoverable by" the plaintiff).

Here, Plaintiff knew about the risk she contends Uber created before she entered Sherman's car. Plaintiffs testified that, as of August 14, 2018, she learned on social media about unauthorized, imposter drivers. Hussey Decl., Ex. A. at 115:18-22, 116:11-14. And Plaintiff stated that, based on her recollection, the victims in the incidents she read about were killed, beaten, or sexually assaulted. *Id.* at 116:19–117:1. So even if this Court concludes that Plaintiff "was entitled to" a warning about a risk of sexual assault, the fact that a warning "was actually given" by the media or other sources does not give Plaintiff grounds to "complain [that] it was not imparted by [Uber]." *Morales v. L.W. Blinn Lumber Co.*, 9 Cal. App. 2d 292, 294 (1935).

**B.**   **Plaintiff's negligence claim also fails for lack of proximate cause.**

Plaintiff also cannot establish a general issue of material fact on the "proximate cause" element of her negligence claim. *Kesner v. Super. Ct.*, 1 Cal. 5th 1132, 1158 (2016). Under

California law, "proximate cause has two aspects." *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 352 (2015). The first is "cause in fact," and "'[a]n act is a cause in fact if it is a necessary antecedent of an event.'" *Id.* (quoting *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037, 1045, (2003)). The second is known as "scope of liability", which is "limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay." *Modisette*, 30 Cal. App. 5th at 154 (citations omitted).

Even if Uber's conduct were a cause in fact of Plaintiff's injuries, "the gap between [Uber's permitting remote ordering] and [Plaintiff's] injuries is too great for the tort system to hold [Uber] responsible." *Id.* at 155. To get from Uber's alleged negligence to Plaintiff's injuries requires numerous intermediate steps—all outside Uber's control (e.g., Plaintiff's phone had low or no battery, causing her to be unable to receive information regarding the authorized ride order for her by her boyfriend; and, most importantly, Sherman intentionally decide to lure Plaintiff into his car and assault her). Such a confluence of intervening events are too attenuated to establish proximate cause. *See id.* at 153–55; *Shih v. Starbucks Corp.*, 53 Cal. App. 5th 1063, 1070–71 (2020) (collecting cases). Uber's alleged negligent conduct was not a cause "so close to" Plaintiff's injury "that the law is justified in making [Uber] pay." *Modisette*, 30 Cal. App. 5th at 154 (citation omitted). Plaintiff's negligence claim lacks proximate case and should be rejected.

**C.    Summary judgment should be granted on Plaintiff's punitive damages claim.**

Plaintiff seeks "punitive and exemplary damages." FAC at 23, ¶ E. Plaintiff is not entitled to punitive damages because she cannot establish "by clear and convincing evidence that [Uber] has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).

In California, punitive damages are reserved for extreme misconduct that involves intent to cause injury or conscious disregard of other people's safety. *Id.* § 3294(c). Fraud requires "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* § 3294(c)(3). Unless a plaintiff can prove intent to cause injury, malice requires proof of "despicable conduct which is carried on by the defendant with a

1   willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1).  Oppression also

2   requires proof that the defendant acted with a "conscious disregard" of a person's rights.  *Id.*

3   § 3294(c)(2).  To establish "conscious disregard," a plaintiff must show that the defendant had

4   "actual knowledge of the risk of harm it was creating and, in the face of that knowledge, failed to

5   take steps it knew would reduce or eliminate the risk of harm." *Butte Fire Cases*, 24 Cal. App. 5th

6   1150, 1159 (2018) (cleaned up).  Not even an "awareness" of a possible safety risk is sufficient to

7   support a finding of "clear and convincing evidence of [] … a willful and conscious disregard of

8   the safety of others," when no "direct, conclusive evidence" existed at the time of plaintiff's injury.

9   *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 299, 333–35 (2019).

10      There is no "clear and conclusive evidence" that Uber was guilty of oppression, fraud, or

11  malice.  *See* Cal. Civ. Code § 3294(a).  Uber did not have actual knowledge "of the risk of harm it

12  was creating" because it did not create any risk of harm.  *Butte Fire Cases*, 24 Cal. App. 5th at 1159

13  (citation omitted).  But even if it had, Plaintiff cannot show by clear and convincing evidence that

14  Uber had any knowledge of steps it could have taken that would have certainly "reduce[d] or

15  eliminate[d] the risk" of Plaintiff being sexually assaulted by Sherman.  *Id.*

16      Summary judgment denying punitive damages should be granted.

17                                    **<u>CONCLUSION</u>**

18      For the foregoing reasons, this Court should grant summary judgment to Uber on Plaintiff's

19  remaining negligence claim.

20  Dated:  June 30, 2022                    **PERKINS COIE LLP**

21                                      By: */s/ Julie L. Hussey*

22                                         Julie L. Hussey, Bar No. 237711
                                           JHussey@perkinscoie.com

23                                         Julian Feldbein-Vinderman, Bar No. 307838
                                           JFeldbeinvinderman@perkinscoie.com

24                                         Steven G. Williamson, Bar No. 343842
                                           SWilliamson@perkinscoie.com

25

26                                         Attorneys for Defendants Uber Technologies,
                                           Inc., Rasier, LLC, and Rasier-CA, LLC

27

28