UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-03310-JSC<br><br>**ORDER RE: UBER'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 220 |

Jane Doe brings a negligence claim against Uber and its wholly owned subsidiaries Rasier, LLC and Rasier CA, LLC (collectively "Uber") arising from an assault by a former Uber driver posing as a current Uber driver. The Court previously dismissed Plaintiff's tort claims based on ostensible agency and her common carrier negligence claim, but allowed her negligence claim to proceed under a misfeasance theory. (Dkt. No. 41.) Since that time, the California courts have issued a series of rulings regarding the scope of negligence claims under California law. *See, e.g.*, *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 209 (2021), reh'g denied (May 12, 2021); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410 (2022), reh'g denied (Aug. 24, 2022). Following the latest of these decisions, which likewise involved a claim of negligence against Uber based on injuries caused by third-party criminal acts, Uber filed the now pending motion for summary judgment arguing that Plaintiff's negligence claim is foreclosed as a matter of law. (Dkt. No. 220.) Having considered the parties' briefs and the relevant legal authority, and having had the benefit of oral argument on August 30, 2022, the Court GRANTS the motion. Plaintiff's negligence claim fails as a matter of law because Uber did not own her a duty of care.

//

//

# BACKGROUND[1]

On August 18, 2018, Plaintiff, who had been out shopping by herself all day in the San Francisco bay area, asked her boyfriend to call an Uber for her because her phone battery was dying. He did so and sent Plaintiff a message through WhatsApp with the license plate information for the Uber ride he ordered on her behalf. Plaintiff's phone ran out of battery before she received the license plate information. Shortly thereafter, a vehicle with an Uber decal pulled up to where Plaintiff was waiting and she got into the vehicle believing it was the ride her boyfriend requested. It was not. The vehicle was driven by Brandon Sherman, a former Uber driver, who had been deactivated from the Uber platform two months earlier after two separate complaints that he had sexually assaulted passengers. Sherman drove Plaintiff to a remote location, raped and strangled her. He was subsequently arrested and convicted of kidnapping, strangulation, and witness intimidation and sentenced to 11 years in prison.

# DISCUSSION

Uber insists that Plaintiff's negligence claim fails because Uber did not owe her a duty of care to protect her from injuries caused by third-party criminal acts. Because this threshold legal argument is dispositive, the Court's analysis begins and ends there.

"To establish a cause of action for negligence, the plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Brown*, 11 Cal. 5th at 213 (internal citation omitted). "Recovery in a negligence action depends as a threshold matter on whether the defendant had a duty to use due care." *S. California Gas Leak Cases*, 7 Cal. 5th 391, 397 (2019). However, the duty of care "is not universal [and] not every defendant owes every plaintiff a duty of care." *Brown*, 11 Cal. 5th 204 at 213. Rather, "[a] duty exists only if the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.* (cleaned up).

Under California law, "as a general matter, there is no duty to act to protect others from

---

[1] The underlying facts are largely undisputed, but as this is Uber's motion for summary judgment, the Court draws all reasonable inferences in Plaintiff's favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

2

1  conduct of third parties." *Delgado v. Trax Bar &* Grill, 36 Cal. 4th 224, 235 (2005). Nonetheless,
2  "[u]nder some circumstances, a defendant may have an affirmative duty to protect the plaintiff from
3  harm at the hands of a third party, even though the risk of harm is not of the defendant's own
4  making." *Brown*, 11 Cal. 5th at 215. The California Supreme Court has identified two such
5  circumstances. First, where the parties are in a "special relationship." *Id*. "Relationships between
6  parents and children, colleges and students, employers and employees, common carriers and
7  passengers, and innkeepers and guests, are all examples of special relationships that give rise to an
8  affirmative duty to protect." *Id*. at 216. Second, "where [it] is the defendant who has created a risk
9  of harm to the plaintiff, including when the defendant is responsible for making the plaintiff's
10 position worse." *Id*. at 214 (cleaned up). This second theory is known as misfeasance. However,
11 "[w]here the defendant has neither performed an act that increases the risk of injury to the plaintiff
12 nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm
13 … the defendant owes no legal duty to the plaintiff." *Id*. at 216. "This rule reflects a long-standing
14 balance between several competing interests. It avoids difficult questions about how to measure the
15 legal liability of the stranger who fails to take affirmative steps to prevent foreseeable harm, instead
16 leaving the stranger to make his or her own choices about what assistance to offer." *Id*. at 220.

17 Courts thus engage in a two-step inquiry to determine if a duty exists examining: (1)
18 whether there exists a special relationship between the parties or some other set of circumstances
19 giving rise to an affirmative duty to protect; and if so, (2) whether the policy considerations set forth
20 in *Rowland v. Christian*, 69 Cal. 2d 108 (1968)—the so-called *Rowland* factors—counsel for
21 limiting that duty. *Brown*, 11 Cal. 5th at 209.

22 **A.   Special Relationship**

23 Plaintiff contends in her opposition that she had a "special relationship" with Uber sufficient
24 to give rise to a duty of care. Any such theory under the facts here is unsupported by any California
25 law. *See Brown*, 11 Cal. 5th at 214. To the extent Plaintiff describes the "special relationship" as
26 based on her status as "an Uber rider who was a guest or invitee on its platform" (Dkt. No. 236-5 at
27 30), the Court previously rejected Plaintiff's contention that she had a common carrier/passenger
28 relationship with Uber. (Dkt. No. 29 at 12; Dkt. No. 41 at 4); *see also Jane Doe No. 1 v. Uber*

3

*Techs., Inc.*, 79 Cal. App. 5th 410, 420-21 (2022), reh'g denied (Aug. 24, 2022) (holding that Uber was not in a special relationship with the Jane Does that would "give rise to a duty to protect the Jane Does against third party assaults").

### B. Misfeasance

Plaintiff advances four theories of misfeasance: (1) Uber failed to take any steps to retrieve its decal from Sherman after he was terminated; (2) Uber "shield[ed]" Sherman from criminal investigation and prosecution" which "embolden[ed] him"; (3) Uber "ignor[ed] the data show[ing that] its riders were being assaulted due to their trust in drivers apparently affiliated with Uber" and thus failed to give them "direction and tools to reliably deliver them into safe Ubers"; and (4) Uber allowed rides to be requested on behalf of individuals who did not have a working cell phone. (Dkt. No. 237 at 27.)

Each of these theories is foreclosed by *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410. In *Doe 1*, the California Court of Appeals considered whether the plaintiffs had adequately alleged that Uber had a duty to protect riders from the criminal conduct of third-parties; in particular, men who, like Sherman here, were posing as Uber drivers and kidnapping and sexually assaulting passengers. The court considered whether the plaintiffs' allegations that "the Uber entities did not just fail to protect or warn the Jane Does, but rather: actively concealed the fake Uber scheme and instances of sexual assault reported to Uber; created a rideshare platform that encourages unsafe behavior, but marketed it as safe; offered a deficient matching system on the Uber app; and made Uber decals easy to obtain without keeping track of their use" demonstrated that Uber created an unreasonable risk of harm to others. *Id*. at 426.

In concluding that these allegations were not sufficient to state a misfeasance claim, the court held that the "crux of the difference between misfeasance and [nonactionable] nonfeasance for purposes of assessing a duty to protect is whether the third-party conduct was a necessary component of the [defendant's] conduct at issue." *Id.* at 427. The court concluded:

> The fake Uber scheme may be a foreseeable result of the Uber business model, and the Jane Does' assailants may not have been able to as easily commit their crimes against the Jane Does, were it not for the Uber app and the Uber business model. But these connections cannot establish that the harm the Jane Does suffered is a 'necessary component' of the

4

Uber entities' actions." *Id*. at 427 (quoting *Sakiyama v. AMF Bowling Centers, Inc*., 110 Cal. App. 4th 398, 408 (2003)); *see also Doe 1*, 79 Cal. App. 5th at 427 (explaining that the Uber entities are not alleged to have taken action that stimulated the criminal conduct). Further, "that a defendant's organization or business creates an opportunity for criminal conduct against a plaintiff and thereby worsens the plaintiff's position does not render such criminal conduct a necessary component of the organization's actions—even when that conduct is foreseeable. Providing such an opportunity does not constitute misfeasance triggering a duty to protect." *Id.* at 428-29.

The *Doe No. 1* court likened the plaintiffs' allegations to those in *Sakiyama v. AMF Bowling Centers, Inc*., 110 Cal. App. 4th 398 (2003). In *Sakiyama*, the court found that while it was foreseeable that "promoting and producing the all night drug infested rave to teenagers" was "sufficiently likely to result in auto accidents which would injure both rave attendees and members of the general public," AMF did not owe the plaintiffs—minors who were injured in a car accident after the rave and the estate of two minors killed in the car accident—a duty of care. *Id*. at 407. The court reasoned that "[v]irtually any consequence of an all-night party attended largely by teenagers was foreseeable," but the question was whether the resulting accident was "a necessary component" of the rave. *Id*. at 407-08. In concluding that it was not, the court compared hosting a rave to "many commonplace commercial activities" such as "bars and restaurants [which] are open late and provide patrons with the opportunity to drink alcohol, become intoxicated, and then drive" and collected cases refusing "to hold business owners and hosts in these situations liable for negligence." *Id*. at 409.

*Sakiyama* distinguished the conduct there from that alleged in *Weirum v. RKO Gen., Inc*., 15 Cal. 3d 40, 48 (1975), wherein the California Supreme Court held that a radio station could be liable for negligence after it broadcast a radio contest which encouraged listeners to search for and find a popular radio disc jockey who was traveling to various locations around Los Angeles in a conspicuous red automobile, and the first person to find the disc jockey and fulfill a particular condition would win a cash prize. *Id*. at 44. Two teenage drivers, racing to find the disc jockey, forced another car off the road, killing the driver whose estate brought wrongful death claims. *Id*. at

5

45. *Sakiyama* rejected any parallels between the two cases, focusing on the fact that liability in *Weirum* arose out of the radio station's active involvement in the dangerous activity. While there were dangers inherent in having the rave, these dangers were not encouraged by the defendant in *Sakiyama*. *Sakiyama*, 110 Cal. App. 4th at 408. To the contrary, the defendants "took numerous steps to discourage and prevent drug use. And, although the party lasted all night, the attendees were not required to stay until they were too tired to drive home," *Sakiyama*, 110 Cal. App. 4th at 408, whereas the giveaway contest in *Weirum* was "a competitive scramble in which the thrill of the chase to be the one and only victor was intensified by the live broadcasts which accompanied the pursuit." *Weirum*, 15 Cal. 3d at 48.

*Doe No. 1* drew from both *Weirum* and *Sakiyama* when it concluded that the question was not whether the fake Uber scheme was a foreseeable consequence of its business model, but whether the resulting harm was "a necessary component" of the business model. *Doe No. 1*, 79 Cal. App. 5th at 427 (citing *Melton v. Boustred*, 183 Cal. App. 4th 521, 535 (2010). *Doe No. 1* adopted *Melton's* reasoning that "the crux of the difference between *Weirum* and *Sakiyama* is this: In *Weirum*, 'hazardous driving by teenagers was a necessary component' of the conduct at issue, whereas in *Sakiyama*, 'the rave party was simply a party attended by teenagers.'" *Melton*, 183 Cal. App. 4th at 534. (internal citations omitted). *Melton* rejected a negligence claim brought by individuals who were beaten and stabbed by unknown individuals at a party at the defendant's house which had been advertised on a social networking site. *Id*. at 527. Because the defendant there "took no action to stimulate the criminal conduct" and "[t]he violence that harmed plaintiffs [] was not 'a necessary component' of defendant's MySpace party," there was "no basis for imposing a legal duty on him to prevent the harm inflicted by unknown third persons." *Id*. at 535.

This reasoning dispenses of Plaintiff's misfeasance theories. Plaintiff's first and third theories of liability—that Uber failed to retrieve the Uber decal from Sherman and that Uber has been aware of instances of riders being assaulted by Uber drivers for years, but has not given riders tools to protect themselves—were expressly considered and rejected by *Doe 1*. *See Doe No. 1*, 79 Cal. App. 5th at 426 (rejecting argument that "made Uber decals easy to obtain without keeping track of their use."); *id*. at 427 (finding that the harm alleged did not "become a necessary

1  component of the Uber business model because the Uber entities marketed the Uber app as safe to
2  use, refused to cooperate with sexual assault investigations, or concealed sexual assaults related to
3  the use of the app [because e]ven accepting such allegations as true, the Uber entities still are not
4  alleged to have "[taken] ... action to stimulate the criminal conduct") (*quoting Weirum*, 15 Cal. 3d at
5  48).

6  While Plaintiff's other two theories are slightly more nuanced than those pled in *Doe No. 1*,
7  neither her theory that Uber emboldened Sherman's actions nor her theory that Uber owed her a
8  duty of care because it allowed rides to be requested for individuals without a working cell phone,
9  support a finding that Sherman's conduct was "a necessary component" of Uber's business, or that
10 Uber stimulated Sherman's criminal conduct such that Uber owed Plaintiff a duty of care. Further,
11 Plaintiff's theory that Uber somehow emboldened Sherman by shielding him from criminal
12 prosecution for the first two reports of sexual assault ignores that Uber terminated Sherman from the
13 Uber app after the second report. Just as the defendant in *Sakiyama*, Uber took steps to reduce the
14 risk of harm. *Sakiyama*, 110 Cal. App. 4th at 408 ("AMF did not promote drug use; in fact, it took
15 numerous steps to discourage and prevent drug use."). Likewise, that Uber allowed individuals to
16 order rides for individuals without a working cell phone is untethered to the criminal conduct here;
17 that is, that individuals can order rides for others through the Uber app does not encourage, promote,
18 or relate to Sherman's criminal conduct.

19 Thus, under *Doe No. 1*, 79 Cal. App. 5th at 427, even drawing all reasonable inferences from
20 the evidence in Plaintiff's favor, Uber did not have a duty under California law to Plaintiff.

21 **C.     This Court is Bound by *Doe 1***

22 "When interpreting state law, we are bound to follow the decisions of the state's highest
23 court, and when the state supreme court has not spoken on an issue, we must determine what result
24 the court would reach based on state appellate court opinions, statutes and treatises." *Diaz v. Kubler*
25 *Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015) (cleaned up). Federal courts sitting in diversity, "will
26 ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of
27 state law, unless the federal court finds convincing evidence that the state's supreme court likely
28 would not follow it." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1124 (9th Cir. 2021)

(internal citations and quotation marks omitted).  "This is especially true when the supreme court has refused to review the lower court's decision." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021).

The Court does not find "convincing evidence" that the California Supreme Court likely would not agree with *Doe 1's* reasoning.  Plaintiff's insistence that *Brown*, 11 Cal.5th 204, 214 n.5 (2021), "reiterated the general, well-established rule that the duty of care includes a duty to protect or warn when one's actions create or increase a risk that others will be injured, whether directly or by third parties" (Dkt. No. 236-5 at 23), fails to persuade.  *Brown* instead emphasized the general "no duty to protect rule" and its limited exceptions, and held that the defendant Olympic Committee did not have a duty to protect the plaintiff children from their coach's criminal conduct.  *Brown*, 11 Cal.5th at 212-13.

*Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 717 (2001), best supports Plaintiff's argument.  There the court held that "under California law, a law enforcement officer has a duty to exercise reasonable care for the safety of those persons whom the officer stops, and that this duty includes the obligation not to expose such persons to an unreasonable risk of injury by third parties." *Id*. at 718.  That is, the duty arises where the law enforcement officer intercedes and his "affirmative conduct" puts the plaintiff in a position that makes he or she more vulnerable to a risk of injury by third parties.  *Id*. at 717.  Plaintiff argues that *Doe 1* got it wrong by holding that Uber had to have caused the criminals conduct in order to have a duty of care.  As Plaintiff correctly notes, in *Lugtu* the officer did not encourage the third party to strike the plaintiffs' vehicle; nor was the third party's conduct a necessary component of the officer's conduct.  Uber responds that *Lugtu* must be limited to the law enforcement context where the defendant—a police officer—has special authority to direct the plaintiff's conduct.  While *Lugtu* could be read to support Plaintiff's position, given its context, it is not convincing evidence that the California Supreme Court would likely disagree with *Doe 1*.

Plaintiff's reliance on *Richardson v. Ham*, 44 Cal. 2d 772, 777 (1955), and *McEvoy v. American Pool Corp.*, 32 Cal.2d 295 (1948), is equally unavailing.  Neither involved the duty to protect from third-party criminal conduct and both arose under unique factual circumstances not

8

present here. *See Richardson*, 44 Cal. 2d at 777 (holding that absent special circumstances, the owner of a motor vehicle owes no duty to remove the keys from a vehicle to protect third parties from the negligent acts of a thief); *McEvoy,* 32 Cal.2d at 295 (discussing an employer's duty to warn employees regarding the inherently dangerous nature of the chemicals that the employees carried in their vehicles).

In sum, this Court does not analyze the duty question on a blank slate. As a federal court sitting in diversity, the Court is required to follow the "on all fours" opinion of the California Court of Appeals absent convincing evidence that the California Supreme Court would not follow it. The Court does not find such convincing evidence. Accordingly, as a matter of law, Uber did not owe Plaintiff a duty of care and thus Uber is entitled to judgment in its favor on her negligence claim.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Uber's motion for summary judgment. There is no dispute that Plaintiff was the victim of a heinous crime. But California law does not provide a basis to hold Uber liable for her injuries.

Plaintiff's second motion to file under seal portions of her opposition brief and the exhibits thereto is granted as to the redactions set forth in Uber's supporting declaration. (Dkt. No. 245.)

This Order disposes of Docket Nos. 220, 231, 236.

The Court will enter judgment by separate order.

**IT IS SO ORDERED.**

Dated: September 15, 2022

JACQUELINE SCOTT CORLEY
United States District Judge

9